UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, an individual by pseudonym | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO:**     **1:25-cv-02565** |
| | ) | |
| v. | ) | **Hon. Elaine E. Bucklo** |
| | ) | **Hon. M. David Weisman** |
| **VALERY J. AHRENS**, an individual | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM**

NOW COMES Plaintiff, JOHN DOE (hereinafter, "Plaintiff" or "Doe"), by pseudonym and through his attorneys, Amundsen Davis LLC, and for his Motion for Leave to File his Complaint Using a Pseudonym, *nun pro tunc*, he asserts the following:

**MATERIAL ALLEGATIONS OF FACT**

In October of 2021, the Parties met online and began trading communications via social media, telephone, and text message. An objectively casual, long-distance connection developed between the Parties. Most of their exchanges were sexual in nature. During that time, sexually-charged audio messages and videos were exchanged. Unbeknownst to the Plaintiff, the Defendant, VALERY J. AHRENS ("Defendant" or "Ahrens"), surreptitiously recorded them without his consent.

At first, the casual nature of their remote relationship was intriguing to Doe, but it soon took a negative turn. Ahrens began sending Doe incessant, unsolicited text messages and sexually explicit videos. She would often voice her frustration when Doe failed to respond swiftly or share a mutual desire to play along. Ahrens would also send volatile and incoherent text strings reflecting her 'stream of consciousness' in the moment. Ahrens even became jealous and accusatory; she would question what other women Doe was talking to, and ask personal details about his romantic life as if he was being unfaithful. Ahrens bombarded Doe with message after message even without Doe acknowledging her or sending a response in kind.

Defendant's burgeoning obsession for Doe caused him to question her mental stability; the two had never met in person, and they knew very little about each other. Defendant's behavior became so pervasive that it materially interfered with Doe's daily personal and professional obligations. Doe politely and repeatedly insisted that Ahrens give him space, but to no avail.

It was not until John Doe explicitly cut ties with Ahrens that her behavior escalated from annoying to objectively concerning. Defendant's oppressive behavior was first discovered in June of 2022, and it has persisted to this day. Upon information and reasonable belief, Ms. Ahrens: (a) used aliases and 'burner'/VoIP phones to harass Doe and others in his close circle; (b) created fictitious social media accounts incorporating John Doe's real name to infiltrate his network; (c) leveraged the internet to publish countless libelous posts aimed at vilifying and making a mockery of John Doe as punishment for 'abandoning' her; and (d) has solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood and emotional well-being.

Ahrens exploited Facebook, Instagram, and Reddit, as well as dynamic hashtags and curated 'follows' to maximize her reach. Ahrens' likely goal was to ensure that anyone searching for "John Doe" online would stumble upon the accounts she created instead of Plaintiff's authentic ones. Once connected, the Defendant could litter third-party followers with libelous and unfounded accusations about the real Doe.

When Doe made clear he was unwilling to engage with Ahrens further, the frequency of her online attacks against Doe intensified. Ahrens continued to distort facts, omit context, and disseminate lies to make Doe appear to his network as unchaste, a sexual deviant/predator, a drug addict, a serial abuser, a liar, a fraud, a master manipulator, and a criminal. She also falsely accused Doe of bribing law enforcement officials, filing false police reports, and soliciting others to harass and intimidate his victims into silence. Each of these characterizations are patently false and actionable under Illinois law.

To further humiliate Doe, Ahrens publicized certain private, sexual, telephone exchanges she secretly recorded when the Parties were amicable. Ahrens manipulated the context to give viewers the false impression Doe was physically abusive. In reality, Doe was more than three hundred (300) miles away from Ahrens when the exchanges took place. In fact, Doe did not learn Ahrens had possession of the footage until after it was found online.

Upon information and belief, Defendant broadcast the libelous statements and private footage to *thousands* of recipients. Doe has invested countless hours and dollars on damage control. He has been vigilant in trying to: (a) remove any offending profiles he could find; (b) research and identify other social media profiles used to attack him; and (c) rehabilitate his character amongst friends, business associates, romantic partners, and others in his network. Navigating the wreckage has been mentally exhausting, overwhelming, and unmanageable.

After exhausting all other avenues, Plaintiff John Doe brings this civil action against Valery J. Ahrens pursuant to the following state law theories of recovery: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), and **Intentional Infliction of Emotional Distress** (Count IV). A copy of the Complaint at Law, filed on March 11, 2025, is attached as "**EXHIBIT A**," and incorporated by reference herein.

## LEGAL ANALYSIS

Federal Rule of Civil Procedure 10(a) requires a plaintiff to disclose his or her name in a complaint. Fed. R. Civ. P. 10(a). Certain exceptions apply, however, allowing qualifying parties to access the courts using fictitious names (e.g., "John Doe"). Fictitious names have been allowed to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses. *See Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F. 3d 869, 872 (7th Cir. 1997) (recognizing these exceptions); and *see Doe v. City of Chicago*, 360 F. 3d 667, 669-670 (7th Cir. 2004) (acknowledging the

court's discretion and duty to determine whether the circumstances "justify the departure from the normal method of proceeding in federal courts").

The Seventh Circuit recently affirmed, "[a] substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court—may justify anonymity." *Doe v. Trustees of Indiana University*, 101 F.4th 485, 491 (7th Cir. 2024). By way of example, on remand, a District Court allowed a plaintiff to proceed as Jane Doe through discovery where she alleged a previous boyfriend had illegally distributed a video depicting them having sex. *Doe v. Smith*, 412 F. Supp. 2d 944, 945 & 947 (C.D. Ill. 2006). The Court found it was difficult for the plaintiff at the pleading stage "to do anything more than simply allege in a conclusory fashion that such circumstances exist" to allow her to proceed anonymously. *Id.* at 947. Moreover, "the Seventh Circuit specifically noted that 'perhaps anonymity still could be justified if the tape has been circulated more widely (as counsel asserted at oral argument), and disclosure would allow strangers to identify the person in the recording and thus add to her humiliation.'" *Id.* (*quoting Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005)). Thus, under these facts, it was proper to "provide the Plaintiff with the opportunity of establishing that she should be allowed to proceed anonymously." *Id.*

Here, Ahrens orchestrated a calculated attack aimed at destroying Doe's reputation. To do so, Ahrens exploited the power of the Internet, and social media in particular, to reach a wide and impressionable audience. The Defendant's false, misleading, and damaging accusations were widely publicized by Ahrens, who in turn, solicited others to republish and disseminate the same. Ahrens ultimately misled the public at large into believing the following *per se defamatory* characterizations:

(a) That Plaintiff harassed and has physically and sexually abused and assaulted multiple women, including Ahrens;
(b) That Plaintiff engages, or enlists others to engage, in threatening behavior, including stalking and harassment, to intimidate and silence his supposed victims, including Ahrens;
(c) That Plaintiff is corrupt (or otherwise engaged in corruption) in that he has (or is willing to) bribe public officials and/or work in conspiracy with crooked members of law enforcement to obstruct justice, conceal his crimes, destroy evidence, and

4

       abuse women, including Ahrens;
(d) That Plaintiff has committed numerous felonies, and that he is a serial offender and a felon;
(e) That Plaintiff is emotionally volatile, evil, unscrupulous, violent, dangerous, and unethical; and
(f) That Plaintiff is unchaste, immoral, promiscuous, that he has knowingly engaged in adultery, and that he has fornicated with numerous women without their consent, including Ahrens.

Ahrens also broadly publicized out-of-context and extremely sensitive sexualized exchanges between the Parties aimed at humiliating Doe amongst those within his network and beyond.

      Ahrens has exploited Facebook, Instagram, Reddit, and dynamic hashtags to maximize her reach, and to fool Plaintiff's network into believing they were connecting and/or communicating with a derivative of John Doe's influencer accounts. Ahrens used Doe's actual, full name in the Instagram handles to ensure anyone searching Plaintiff online would stumble upon the accounts and the corresponding, actionable messages. Likewise, Ahrens used the account to solicit 'followers' and to 'follow' other accounts, who likely suspected that the account owner was John Doe himself or someone acting on his behalf (instead of an adversary).

      It is also believed that Ahrens methodically studied Doe's every move online using surreptitious accounts. She also paid careful attention to anyone who 'followed' or 'liked' Doe's pages or posts, and then used her fictitious "John Doe" accounts to message and/or engage with them. Whenever possible, Ahrens would steer the subject to one or more of the accounts she created and flooded them with libelous speech about Doe. Similarly, Ahrens would target, research, and then follow several of Doe's business prospects to interfere with Doe's livelihood and frustrate realistic, revenue-based opportunities. This was especially impactful given Doe's role as an influencer in the lucrative gambling and casino industries.

      The Defendant has been relentless in her efforts to discredit and destroy the reputation of the Plaintiff, and she continues to publish defamatory statements and broadcast private recordings, as well as some that are inherently hidden and undiscoverable. Despite Doe ending their relationship more

than thirty (30) months ago, Ahrens seems intent on spending the rest of her days on this Earth terrorizing John Doe and punishing those who associate with him casually, romantically, or professionally.

To that end, it is expected that Ahrens would weaponize this litigation and its related filings to exacerbate the harm already caused to Doe in the eyes of his friends, family members, and business associates. Doe is highly likely to suffer additional harassment, ridicule, embarrassment, or some other adverse outcome if his identity is paired with the Complaint's detailed allegations and the evidence necessary to demonstrate liability on Ahrens' part.

Ultimately, the veracity of Ahrens' social media posts will be a critical component of Plaintiff's action and Ahrens' defense thereof; Plaintiff's ability to pursue these claims without further damaging his good name necessarily depends upon being able to proceed by pseudonym (through discovery, at a minimum). *See Smith*, 412 F. Supp. 2d at 947; *see also, generally*, *Doe. v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) ("[a]llegations of sexual assault are quintessential instances of highly sensitive, personal matters that involve disclosure of information of the utmost intimacy"). Plaintiff seeks leave to proceed using the pseudonym, "John Doe," subject to future reconsideration.

The Northern District has permitted litigants to proceed anonymously where allegations are especially shocking, of a sexual nature, or of the "utmost intimacy," leaving open the possibility of revisiting the anonymous designation at a later stage. *See Doe v. Trp Acquisition, Inc.*, 2016 WL 3671505 at *2 (allowing plaintiff to *temporarily* proceed anonymously noting that "the underlying facts could be shocking and very embarrassing to her" and resolving to possibly revisit the issue at a later stage noting, "the Court is unable to conclude with any certainty that anonymity is inappropriate").

In light of these circumstances and in keeping with precedent, the Plaintiff here asks that he be permitted to proceed anonymously through the completion of discovery at which point, this issue may be revisited.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, respectfully requests leave to file the attached Complaint at Law (Doc #1) using the pseudonym, "John Doe" in place of the Plaintiff's real name, that such leave be granted *nunc pro tunc*, and with recognition that the anonymous designation may be revisited at the close of discovery.

Respectfully submitted,

By:     */s/Ryan B. Jacobson*
        Attorney for Plaintiff,
        **JOHN DOE**

Ryan B. Jacobson, Esq. (No. 6269994)
AMUNDSEN DAVIS LLC
150 N. Michigan Avenue
Suite 3300
Chicago, Illinois 60601
Direct: (312) 894-3252
rjacobson@amundsendavislaw.com