**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**JOHN DOE**, an individual by pseudonym )
)
Plaintiff, )
) **CASE NO: 1:25-cv-02565**
v. ) (**HONORABLE JOHN H. THARP JR.**)
)
)
)
**VALERY J. AHRENS**, an individual )
)
Defendant. )

**SECOND AMENDED COMPLAINT AT LAW**

NOW COMES Plaintiff, JOHN DOE (hereinafter, "Plaintiff" or "Doe"), by pseudonym and

through his attorneys, Amundsen Davis LLC, and for his First Amended Complaint at Law against

Defendant, VALERY J. AHRENS (hereinafter, "Defendant" or "Ahrens"), Doe asserts the

following:

**SUMMARY OF ALLEGATIONS AND LEGAL CLAIMS**

1.      At all relevant times, the Parties lived in different states and still do today; Ahrens

lives in Iowa and the Plaintiff lives in Illinois. In October of 2021, the Parties met online and began

trading communications via social media, telephone, and text message.

2.      An objectively casual, long-distance connection developed between the Parties. Most

of their exchanges were sexual in nature but were far from romantic. At first, the casual and carnal

nature of their remote relationship – including the Defendant's unorthodox fetishes – were intriguing

to Doe.

3.      The Parties' relationship eventually took a negative turn; as the Defendant's needs

became more perverse, Doe's attraction for Ahrens declined.

4.      Ahrens began sending Doe incessant, unsolicited text messages and sexually explicit

videos. She would often voice her frustration when Doe failed to respond swiftly or share a mutual

desire to play along. Ahrens would also send volatile and incoherent text strings reflecting her 'stream

of consciousness' in the moment. Ahrens even became jealous and accusatory; she would question what other women Doe was talking to, and ask personal details about his romantic life as if he was being unfaithful. Ahrens bombarded Doe with message after message even without Doe acknowledging her or sending a response in kind.

5.    Defendant's burgeoning obsession for Doe caused him to question her mental stability; the two had never met in person, and they knew very little about each other. The Defendant's behavior became so pervasive that it materially interfered with Doe's daily personal and professional obligations. Doe politely and repeatedly insisted that Ahrens give him space, but to no avail.

6.    It was not until John Doe explicitly cut ties with Ahrens that her behavior escalated from annoying to objectively concerning.

7.    The Defendant's oppressive behavior was first discovered in June of 2022, and it has persisted to this day. Upon information and reasonable belief, Ms. Ahrens (a) used aliases and 'burner'/VoIP phones to harass Doe and others in his close circle; (b) she created fictitious social media accounts incorporating John Doe's real name to infiltrate his network; (c) she leveraged the internet to publish countless libelous posts aimed at vilifying and making a mockery of John Doe as punishment for 'abandoning' her; and she has (d) solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood and emotional well-being.

8.    Ahrens exploited Facebook, Instagram, Reddit, as well as dynamic hashtags and curated 'follows' to maximize her reach. Ahrens' likely goal was to ensure that anyone searching for "John Doe" online would stumble upon the accounts she created instead of Plaintiff's authentic ones. Once connected, the Defendant could litter third-party followers with libelous and unfounded accusations about the real Doe.

9.    Likewise, a reasonable recipient of the Defendant's fiction was meant to believe the account holder had a substantive history with Doe and intimate personal knowledge regarding the 'truths' she was spouting. In reality though, the Parties' relationship was fleeting and superficial.

2

10.     The Parties eventually met in person, but it was not until well after the offending conduct began. Ahrens traveled across state lines (from Iowa to Illinois) to lure Doe with sexual favors and convince him to commit to a more substantive relationship. In stark contrast, Doe hoped that an in-person meeting would humanize her perceptions of him. Doe's goal was to persuade Ahrens to think rationally, disable her online attacks, and agree to part ways amicably.

11.     The Illinois encounter just made matters worse. When Doe refused to engage with Ahrens sexually, the frequency of her online attacks against Doe intensified. Ahrens continued to distort facts, omit context, and disseminate lies to make Doe appear to his network as unchaste, a sexual deviant/predator, a drug addict, a serial abuser, a liar, a fraud, a master manipulator, and a criminal. She also falsely accused Doe of bribing law enforcement officials, filing false police reports, and soliciting others to harass and intimidate his victims into silence. Each of these characterizations are patently false and actionable under Illinois law.

12.     To further humiliate Doe, Ahrens publicized certain private, sexual, telephone exchanges she secretly recorded when the Parties were amicable. Ahrens manipulated the context to give viewers the false impression Doe was physically abusive. In reality, Doe was more than three hundred miles away from Ahrens when the exchanges took place.

13.     Upon information and belief, the libelous statements and private footage were broadcast to *thousands* of recipients. Doe cannot reasonably measure the scope of the harm caused to him by the Defendant, nor is Doe able to fully assess the damage Ahrens did to his reputation or his earning capacity. Given the *per se* nature of the offending speech, it can reasonably be inferred that many who viewed the derogatory posts fell prey to Ahrens' vengeance-fueled storyline.

14.     Doe has invested countless hours and dollars on damage control. He has been vigilant in trying to (a) remove any offending profiles he could find, (b) research and identify other social media profiles used to attack him, and (c) rehabilitate his character amongst friends, business

associates, romantic partners, and others in his network. Navigating the wreckage has been mentally exhausting, overwhelming, and unmanageable.

15. Ahrens knew, or should have known, that her inescapable bullying, online stalking, and harassment of Doe would inflict severe emotional pain, cause a marked decrease in John Doe's esteem and mental health, and was likely to disrupt any meaningful relationship Doe had with other women or professionally.

16. After exhausting all other avenues, Plaintiff John Doe brings this civil action against Valery J. Ahrens pursuant to the following state law theories of recovery: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), and **Intentional Infliction of Emotional Distress** (Count IV).

## PARTIES

17. John Doe is a citizen of Illinois with a principal residence located within the boundaries of Cook County and the State of Illinois. Doe is a self-made entrepreneur, author, internet personality, and venture capitalist. More notably, he is a dedicated and loving father.

18. Valery J. Ahrens is a citizen and resident of Eldora, Iowa.

## JURISDICTION AND VENUE

19. At all relevant times, Ahrens used (and continues to use) multiple aliases, fleeting/spoofed telephone numbers, and fictitious social media accounts to harass, stalk, bully, denigrate, defame, and intimidate the Plaintiff in his home state, and amongst those in his network who are predominantly residents of this state.

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) where there is complete diversity between Doe (Illinois) and Ahrens (Iowa), and where the matter in controversy exceeds a damage value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

21.     This Court has personal jurisdiction over Valery J. Ahrens, and venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b)(2), where Ahrens targeted the Plaintiff in his domicile state of Illinois, and where the principal harm to Plaintiff's reputation occurred within this judicial district. In addition, Ahrens traveled across state lines -- from Iowa to Illinois -- to meet Plaintiff in person so she could lure and entrap him in his home state.

22.     Stating further, Defendant Ahrens previously retained counsel and defended companion Order of Protection proceedings in the State of Illinois, and she has availed herself of the procedural rules, the judicial process, and all accompanying rulings by the judiciary within this State. Upon information, and belief, the Defendant never challenged this State's jurisdiction over her in such proceedings.

## ALLEGATIONS COMMON TO ALL COUNTS

23.     At all relevant times, the Parties lived in different states and still do today; Ahrens lives in Iowa and the Plaintiff lives in Illinois. In October of 2021, the Parties met online and began trading communications via social media, telephone, and text message.

24.     An objectively casual, long-distance connection developed between the Parties. Their communications involved sexting, phone conversations, and video calls with a distance of more than three hundred miles between them. Most of their exchanges were sexual in nature but were far from romantic.

25.     In fact, Ahrens openly admitted to John Doe -- who she had never met in person -- that she had a sexual kink for BDSM and degradation, and that she wanted Doe to play along.

26.     This variant of sexual role play is characterized by partners who assume complementary roles premised on an inequality of power. The terms *submissive* and *dominant* are often used to distinguish these roles: the dominant partner takes psychological control over the submissive. BDSM encompasses a spectrum of erotic practices, drawing its name from bondage, discipline (or domination), sadism, and masochism.

5

27.     Ahrens' obsession with being dominated and degraded centered largely on sexual debasement, and it ranged from wanting to feel demeaned and disrespected verbally, to being ordered (from afar) to participate in consensual sex practices most would find humiliating.

28.     At first, the casual and carnal nature of their remote relationship – including the Defendant's unorthodox fetishes – were intriguing to Doe.

29.     The Parties' relationship eventually took a negative turn. As time went on, the persistency and nature of Ahrens' sexual demands became unbearable and disconcerting to Doe. Doe began to realize -- a bit too late -- that Ahrens had deep-rooted psychological issues, which were seemingly manifested in being dominated, degraded, and validated by a complete stranger. As the Defendant's needs became more perverse, Doe's attraction for her declined.

30.     Ahrens began sending Doe incessant, unsolicited text messages and sexually explicit videos. She would often voice her frustration when Doe failed to respond swiftly or share a mutual desire to play along. Ahrens would also send volatile and incoherent text strings reflecting her 'stream of consciousness' in the moment. Ahrens even became jealous and accusatory; she would question what other women Doe was talking to, and ask personal details about his romantic life as if he was being unfaithful. Ahrens bombarded Doe with message after message even without Doe acknowledging her or sending a response in kind.

31.     Defendant's burgeoning obsession for Doe caused him to question her mental stability; the two had never met in person, and they knew very little about each other. The Defendant had zero appreciation for social and personal boundaries and, like an addictive drug, the less access she had to Doe, the more she craved his attention.

32.     The Defendant's behavior became so pervasive that it materially interfered with Doe's daily personal and professional obligations. Doe politely and repeatedly insisted that Ahrens give him space, but to no avail.

6

33.     Doe attempted to sever the Parties' relationship in February of 2022. Doe made it crystal clear that he did not want to continue their relationship or work through their differences, and he insisted that Ahrens stop contacting him.

34.     To ensure a clean break, Doe blocked Ahrens' phone number; Ahrens continued to reach out -- sometimes dozens of times a day -- using spoofed phone numbers and 'burner phones.'" Ahrens refused to move onward with her life or handle the rejection tactfully.

35.     It was not until John Doe explicitly cut ties with Ahrens that her behavior escalated from annoying to objectively concerning. Ahrens embarked on a retaliatory harassment campaign aimed at punishing Doe for 'prematurely' terminating their relationship. It is difficult to discern whether Ahrens was more obsessed with their lustful banter, or the idea of converting Doe into a committed, romantic partner.

36.     Ahrens created her first Instagram account using the handle @███████isanarcissist. Upon information and belief, Ahrens created the @███████isanarcissist account in March of 2022; however, she did not begin posting until June of 2022 after she discovered Doe was in a romantic relationship with another woman.

37.     At first, Ahrens characterized Doe as a womanizer, a narcissist, and a "player," but over the next two and a half years, the Defendant's attacks intensified. Ahrens falsely accused Doe of having DUI convictions, drug abuse, bribery, perjury, filing false police reports, corruption with public officials, and both physical and sexual assault.

38.     The Defendant's oppressive behavior has persisted to this day. Upon information and reasonable belief, Ahrens (a) used aliases and 'burner'/VoIP phones to harass Doe and others in his close circle; (b) she created fictitious social media accounts incorporating John Doe's real name to infiltrate his network; (c) she leveraged the internet to publish countless libelous posts aimed at vilifying and making a mockery of John Doe as punishment for 'abandoning' her; and she has (d)

solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood and emotional well-being

39.     Ahrens exploited Facebook, Instagram, Reddit, as well as dynamic hashtags and curated 'follows' to maximize her reach. Ahrens' likely goal was to ensure that anyone searching for "John Doe" online would stumble upon the accounts she created instead of Plaintiff's authentic ones. Once connected, the Defendant could litter third-party followers with libelous and unfounded accusations about the real Doe.

40.     Likewise, a reasonable recipient of the Defendant's fiction was meant to believe the account holder had a substantive history with Doe and intimate personal knowledge regarding the 'truths' she was spouting. In reality though, the Parties' relationship was fleeting and superficial.

41.     The Parties eventually met in person, but it was not until well after the offending conduct began. Ahrens traveled across state lines (from Iowa to Illinois) to lure Doe with sexual favors and convince him to commit to a more substantive relationship. In stark contrast, Doe hoped that an in-person meeting would humanize her perceptions of him. Doe's goal was to persuade Ahrens to think rationally, disable her online attacks, and agree to part ways amicably.

42.     The Illinois encounter just made matters worse. When Doe refused to engage with Ahrens sexually, the frequency of her online attacks against Doe intensified. Ahrens continued to distort facts, omit context, and disseminate lies to make Doe appear to his network as unchaste, a sexual deviant/predator, a drug addict, a serial abuser, a liar, a fraud, a master manipulator, and a criminal. Ahrens feigned being Doe's abuse victim to garner sympathy from strangers and a sea of #metoo radicals looking for a scapegoat. She also falsely accused Doe of bribing law enforcement officials, filing false police reports, and soliciting others to harass and intimidate his victims into silence. Each of these characterizations are patently false and actionable under Illinois law.

43.     To further humiliate Doe, Ahrens publicized certain private, sexual, telephone exchanges she secretly recorded when the Parties were amicable. Ahrens manipulated the context to

give viewers the false impression Doe was physically abusive. In reality, Doe was more than three hundred miles away from Ahrens when the exchanges took place.

44.     Upon information and belief, the libelous statements and private footage were broadcast to *thousands* of recipients. Doe cannot reasonably measure the scope of the harm caused to him by the Defendant, nor is Doe able to fully assess the damage Ahrens did to his reputation or his earning capacity. Given the *per se* nature of the offending speech, it can reasonably be inferred that many who viewed the derogatory posts fell prey to Ahrens' vengeance-fueled storyline.

45.     Despite Doe ending their relationship more than thirty months ago, Ahrens seems intent on spending the rest of her days on this Earth terrorizing John Doe and punishing those who associate with him casually, romantically, or professionally.

46.     Doe has invested countless hours and dollars on damage control. He has been vigilant in trying to (a) remove any offending profiles he could find, (b) research and identify other social media profiles used to attack him, and (c) rehabilitate his character amongst friends, business associates, romantic partners, and others in his network. Navigating the wreckage has been mentally exhausting, overwhelming, and unmanageable.

47.     Plaintiff first sent the equivalent of a 'cease and desist' letter, followed by a letter to the Defendant's father hoping to alleviate the situation; both were ignored.

48.     Doe then pursued an Order of Protection against Ahrens, first acting *pro se*, but then retaining independent counsel. Doe hoped the OP process would give him some modicum of relief, and also be less arduous and expensive than commencing federal, civil proceedings. On August 16, 2023, Doe presented his Petition for an Emergency Order of Protection; after meeting his initial burden, the Order was allowed and enforceable.

49.     Doe reported Ahrens' ongoing behavior to local law enforcement, and on September 6, 2023, the Defendant was arrested and charged with one count of "Harassment through Electronic Communication." She was released on bond.

50.    Ahrens employed her own attorney, and, on information and belief, she reiterated her fictions to enlist his sympathy and use his legal prowess against the 'tyranny of her abuser.' The attorney soon filed a detailed, 33-page Motion to Vacate the Emergency Order of Protection, which was littered with exhibits that publicized Ahrens's original false narrative in a more cohesive format. Ahrens used her licensed practitioner as a shield to do her bidding, and to help her double-down on her smear campaign in a responsive pleading.[1]

51.    It became apparent to Doe that the Defendant, a resident of Iowa, preferred to invest time and money challenging an Order of Protection enforceable in Illinois, rather than simply leave him alone and move on with her life.

52.    The Order of Protection was eventually dismissed on jurisdictional and technical grounds; still, Doe was cautiously optimistic that involving the court system would make Ahrens reconsider whether her retaliatory campaign against him was worth the consequences.

<u>ACTIONABLE FALSE AND/OR PRIVATE PUBLICATIONS</u>

53.    Doe's optimism was short-lived. In her pursuit to stay relevant in Doe's life, Ahrens created new fictitious accounts and escalated her libelous and threatening posts *within a year of the filing of this lawsuit.*

54.    Ahrens used Doe's actual, full name in the Instagram handles to ensure anyone searching Plaintiff online would stumble upon the accounts and the corresponding, actionable messages. Likewise, Ahrens used the John Doe accounts to solicit 'followers' and to 'follow' other accounts. It is likely these third parties suspected that the account owner was John Doe himself or someone acting on his behalf (instead of an adversary).

55.    Upon information and belief, Ahrens methodically studied Doe's every move online using surreptitious accounts. She also paid careful attention to anyone who 'followed' or 'liked' Doe's pages or posts, and then used her fictitious "John Doe" accounts to message and/or engage with

---

[1] Neither Doe nor his attorneys cast any aspersions for Ahrens' pervious counsel, nor are they capable of weighing in on the lawyer's perception of Ahrens' credibility before republishing the falsehoods in his Motion to Vacate.

them. Whenever possible, Ahrens would steer the subject to one or more of the accounts she created and flooded them with libelous speech about Doe.

56.     Similarly, Ahrens would target, research, and then follow several of Doe's business prospects to interfere with Doe's livelihood and frustrate realistic, revenue-based opportunities. This was especially impactful given Doe's role as an influencer in the lucrative gambling and casino industries.

57.     Ahrens also began to harass and threaten women Doe became acquainted with after stalking Doe's engagement with women online. The Defendant would then fixate on that woman and research her every move before chastising her physical appearance in a public forum, classify her as one of Doe's 'whores,' and then flood her with republished, defamatory accusations she has been making about Doe since he ended their relationship in 2022.

58.     Ahrens knew, or should have known, that her inescapable bullying, online stalking, and harassment of Doe would inflict severe emotional pain, cause a marked decrease in John Doe's esteem and mental health, and was likely to disrupt any meaningful relationship Doe had with other women or professionally.

59.     The Defendant seems to relish in making the Plaintiff feel powerless and incapable of silencing her threats. Ahrens' newfound desire to exact 'dominance' over John Doe's life seems oddly reminiscent of the very kink that Ahrens confided in Doe when they first met online.

### Instagram - @███████isweakasswaterfall

### False Statement #1

60.     On or about July 3, 2024, Ahrens exploited an Instagram account she created, @███████isweakasswaterfall, for the singular purpose of harassing, defaming, and intimidating John Doe. Using this account, Ahrens digitized and posted a private audio message surreptitiously saved by Ahrens for future exploitation (collectively, "False Statement No. 1").

61.     John Doe had a reasonable expectation that this private, sexualized audio message would remain private between two, consenting adults and not edited and later republished *en masse* to countless individuals and organizations in Doe's network -- especially without accurate context. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

62.     Not only was the call recorded without Doe's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place instead of on the phone from hundreds of miles away. It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to do something against her will.

63.     The Defendant knew this characterization was patently false, and further, she knew she was misleading listeners by omitting context that would materially distort the consensual nature of the exchange and ultimately trick them into forming inaccurate conclusions.

64.     Moreover, the Defendant supplied false context by referring to Doe as a "psychopath" and a "sadist," and she insists that Doe is trying to silence her from speaking the "truth" (versus an unverifiable opinion or perception).

65.     According to the Diagnostic and Statistical Manual of Mental Disorders (DSM), a "psychopath" is linked to a set of behaviors that correspond with "Antisocial Personality Disorder (ASPD)," and necessarily include a pervasive pattern of disregard for, and violation of the rights of, others, often manifesting as a lack of remorse, empathy, and impulsive or aggressive behavior. A "sadist" is someone who enjoys inflicting pain on others, oftentimes in a sexual sense.

66.     False Statement No. 1 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

12



67.   In   January 2025,   the   Defendant   created   a   new   Instagram   page,
@███████israncidfarting, which was designed to harass and defame the Plaintiff online and to the
public at large:



68.    To maximize the reach and impact of her false statements, and to inflict the most
damage she could to Doe's reputation, Ahrens connected with numerous other Instagram accounts
including casinos, influencer channels, nightlife venues/promoters, celebrities and public figures, as
well as another Instagram page of Ahrens created for the same purpose, @thereal██████truth.
See, for example:



13



**False Statement #2**

69.     The Defendant used unflattering AI depictions of Doe coupled with the following provably false characterizations concerning Doe, as well as a private, surreptitiously-recorded audio message, all of which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 2"):



70.     Ahrens used the broad reach of this social media platform to digitize and widely disseminate the private audio message surreptitiously saved and maintained by Ahrens when the Parties were amicable. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

71.     The audio clip embedded within the post is substantively edited, it omits material context, and it was posted to mislead visitors and lend false credibility to Ahrens' false claims.

14

72.     John Doe had a reasonable expectation that this private, sexualized message would remain private between two, consenting adults and not edited and later republished *en masse* to countless individuals and organizations in Doe's network without accurate, supporting context.

73.     Not only was the call recorded without Doe's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place instead of on the phone from hundreds of miles away. It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to do something against her will.

74.     The Defendant knew this characterization was patently false, and further, she knew she was misleading listeners by omitting context that would materially distort the consensual nature of the exchange and ultimately trick them into forming inaccurate conclusions.

75.     Reasonably construed and in its proper context, the offending post also falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of being corrupt, bribing a law enforcement official, concealing evidence in conspiracy with the police, filing a false police report, committing perjury, and that he is a predator that physically and sexually women, including Ahrens who claims be Doe's victim and a "survivor."

76.     The post contains assertions of false facts, and not opinions, which are underscored by Ahrens' supporting hashtags, *inter alia*, #predator, #abuser, #truth, #truthbetold, #truthalwayscomesout, #believesurvivors, #perjury, and #falsepolicereports.

77.     In Illinois, predatory conduct against women is addressed through various laws, including those concerning criminal sexual assault, sexual harassment, and abuse. A person commits criminal sexual assault if they commit an act of sexual penetration and use force or threat of force, or if the victim is unable to consent. "Abuse" encompasses physical, sexual, emotional, economic, psychological, and technological abuse, and penalties range from misdemeanors to felonies depending on the circumstances.

15

78.    Under Illinois law, specifically 720 ILCS 5/26-1(a)(4), filing a false police report occurs when a person knowingly makes a false statement to law enforcement officers concerning the commission of a crime, knowing that the information is false. Given the circumstances, violation of the statute could amount to a felony and punishment to include incarceration.

79.    Bribery of a law enforcement official in Illinois is a Class 2 felony and is governed by 730 ILCS 5/33-1. A conviction for bribery can result in jail time, fines, and other penalties. Bribery also violates certain federal anti-corruption laws that aim to maintain government transparency and fairness.

80.    Perjury is defined in 720 ILCS 5/32-2 of the Illinois Criminal Code, which makes it a Class 3 felony top make knowingly false statement under oath or affirmation.

81.    Conspiracy with a law enforcement official can violate federal and state laws. 18 U.S.C. § 241 prohibits conspiring to injure, threaten, or intimidate someone based on their constitutional rights.

82.    Likewise, concealing evidence is a crime in Illinois and is considered an obstruction of justice. Under 720 ILCS 5/31, it is illegal to obstruct justice by destroying, concealing, altering, or disguising evidence. It is also illegal to obstruct justice by planting false evidence or providing false information. Obstruction of justice is punishable by 1–3 years in prison.

83.    False Statement No. 2 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #3

84.    Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Doe within a year of the filing of this lawsuit (collectively, "False Statement No. 3"):

16



85.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of filing a false police report in violation of 720 ILCS 5/26-1(a)(4), which is underscored by the hashtags #felonies and #legalabuse.

86.    Ahrens also refers to the Plaintiff as "Cocaine ▇▇▇▇," which falsely ascribes the connotation that Doe is a habitual drug user and in possession of a controlled substance. Even an arrest for possession of less than 15 grams of cocaine is enough for a Class 4 felony conviction, which carries a sentence of 1 to 3 years in the Illinois state penitentiary and a fine of up to $25,000.

87.    Upon information and belief, False Statement No. 2 received 'likes' and 'comments' from at least one of Ahrens' other accounts, @thereal▇▇▇▇ answers, which responds, "wow," to suggest there is genuine discourse between more than one person.

88.    The creation and interplay between the Defendant's own accounts gives the false impression of an engagement between users over the libelous speech and is indicative of the lengths Ahrens' will go to spotlight the deliberate falsehoods she shares online.

17

89. False Statement No. 3 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #4

90. Upon information and reasonable belief, Ahrens also published the following provably false characterizations concerning Doe within a year of the filing of this lawsuit (collectively, "False Statement No. 4"):



91. Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of orchestrating bot attacks of "accounts [Doe] doesn't like," including "manipulating platforms" to silence his adversaries. Ahrens labels Doe's conduct as not just "pathetic," but also "criminal." She underscores her characterization of Doe with the hashtags, #exposed and #accountability to lend truth to her assertions.

92. Bot attacks refer to malicious activities carried out on network systems using automated programs (bots or scripts). These bots can simulate human user behavior and automatically perform various tasks such as scanning for vulnerabilities, sending spam emails, brute-forcing passwords, and more.

93.     The purpose of bot attacks is to gain illegal benefits, disrupt the normal operation of network systems, or steal sensitive information. These attacks are often conducted on a large scale using automation, allowing attackers to target a significant number of victims within a short period, thereby increasing the success rate of the attack. Bot attacks pose a serious security threat to individuals, organizations, and the entire network ecosystem.

94.     In addition, the Defendant again refers to Doe as "Cocaine       ," as a "pathological liar," and it includes reference to Doe "lying" to the court about evidence while on a "crime spree," and got the "FBI involved." This post, again, implicates Doe with possession of a controlled substance, perjury, concealing evidence and being unsubjects to a federal criminal investigation or indictment.

95.     False Statement No. 4 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #5

96.     Upon information and reasonable belief, Ahrens used unflattering AI depictions of Doe and his then-girlfriend, coupled with the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 5"):



19

97.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of directing bot attacks, of which the Feds are likely aware.

98.    The post is supported by numerous and explicit hashtags suggesting Doe is mentally unfit and incompetent, and that he has violated another's civil rights and has committed crimes. Those hashtags include, *inter alia*, #sociopath, #psychopath, #addicts, #civilrightsviolations, #aggravatedharassment, #personalitydisorders, #flipafakecointodecidewhichcrimestocommityay and others.

99.    In their proper context, the above hashtags implicate Doe with criminal civil rights violations, such that he interfered and deprived another of certain liberties and rights afforded to them under the Constitution and/or federal law. Likewise, in Illinois, aggravated harassment, a Class 3 felony, involves intimidation or stalking, with penalties ranging from 2 to 10 years in prison.

100.    False Statement No. 5 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #6

101.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 6"):



102.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of orchestrating bot attacks, filing false police reports, abusing cocaine and women, being on the FBI's radar and subject to an imminent federal indictment.

103.    False Statement No. 6 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #7

104.    Upon information and reasonable belief, Ahrens used unflattering AI depictions coupled with the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 7"):



105.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of creating a fraudulent social media account to stalk a celebrity, filing false police reports, and using/abusing cocaine and women.

106.    False Statement No. 7 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

21

### False Statement #8

107.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 8"):



108.     The Defendant creates a fictitious billboard with emboldened language that states, in all capital letters, "▮▮▮▮▮▮ FILES FALSE POLICE REPORTS!" To avoid any confusion. The image/post is paired with the hashtags, #thatisacrime, #afelonyactually, #somultiplefeloniesnow, #multiplemultiplefelonies, and others.

109.     Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Section 720 ILCS 5/26-1(a)(4), makes it a felony to file a false police report; violation of the statute may result in incarceration.

110.     False Statement No. 8 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #9

111.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 9"):



112.    Contained therein is a screenshot of a text exchange between two unknown parties; at least one of the participants is believed to be Ahrens, though it is entirely possible both of the participants are Defendant to give the false impression of a legitimate conversation.

113.    The creation and interplay between the Defendant's own accounts gives the false impression of an engagement between users over the libelous speech and is indicative of the lengths Ahrens' will go to spotlight the deliberate falsehoods she shares online.

114.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of being conspiring with and bribing law enforcement officials, filing false police reports to silence women who speak out about his abuse and crimes, and that he has committed perjury.

115.    In addition, it is alleged that he created and exploits a fraudulent social media account using "bots" to ban the accounts of people who "speak truth about his crimes and abuse of women."

23

116.    False Statement No. 9 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.



Instagram - @▓▓▓▓publicrecord

117.    In <u>January 2025</u>, the Defendant created another Instagram page, @▓▓▓▓publicrecord, which was designed to harass and defame the Plaintiff online and to the public at large.



118.    To maximize the reach and impact of her false statements, and to inflict the most damage she could to Doe's reputation, Ahrens followed certain celebrity accounts and also used dynamic hashtags to enhance publicity.

<u>**False Statement #10**</u>

119.    Upon information and reasonable belief, Ahrens used unflattering AI depictions of Doe and an unidentified  police officer, coupled with the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 10"):

24



120.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of "multiple crimes" sufficient to impose *per se* liability. Namely, it implicates Doe of bribing a law enforcement official, concealing evidence, and filing a false police report.

121.    The post contains assertions of false facts, and not opinion, which are underscored by Ahrens' supporting hashtags, *inter alia*, #meatbribes, #falsepolicereports, #speaktruth and others.

122.    False Statement No. 10 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

**False Statement #11**

123.    Upon information and reasonable belief, Ahrens again used unflattering AI depictions of Doe and an unknown police officer, coupled with the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 11"):



124.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of "multiple crimes" sufficient to impose *per se* liability. Namely, it implicates Doe of filing false police reports and committing "another federal crime."

125.    To underscore her criminal implications, Ahrens uses the hashtags, #falsepolicereports and #corruption, among others.

126.    Corruption involves a dishonest, fraudulent, and potentially criminal act (i.e., bribery, embezzlement, extortion, etc.) of an individual using entrusted authority or power to obtain a personal gain or other unethical or illegal benefits.

127.    Ahrens also refers to the Plaintiff as "Cocaine ███████," which falsely ascribes the connotation that Doe is a habitual drug user and in possession of a controlled substance. Possession of less than 15 grams of cocaine is enough for a Class 4 felony conviction, which carries a sentence of 1 to 3 years in the Illinois state penitentiary and a fine of up to $25,000.

128.    To maximize the reach of her defamatory post, Ahrens used several hashtags identifying suburban villages and towns adjacent to where Doe resides. Ahrens even 'likes' the post using another of her fictitious accounts, @thereal█████████answers.

129.    False Statement No. 11 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### Instagram - @████████courtloser

130.    In January 2025, the Defendant created another Instagram page, @████████courtloser, which was designed to harass and defame the Plaintiff online and to the public at large:

26



131.    To maximize the reach and impact of her false statements, and to inflict the most damage she could to Doe's reputation, Ahrens followed certain public accounts, and also used dynamic hashtags to enhance publicity.

## False Statement #12

132.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations and private recordings concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 12"):



133.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of destroying evidence of his "many, many crimes."

134. Included with the post is the broadcast of a digitized, edited, private audio message surreptitiously saved by Ahrens for future exploitation. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

135. John Doe had a reasonable expectation that this private, sexualized message would remain private between two, consenting adults and not edited and later republished *en masse* to countless individuals and organizations in Doe's network without accurate, supporting context.

136. Not only was the call recorded without Doe's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place instead of on the phone from hundreds of miles away. It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to do something against her will.

137. The Defendant knew this characterization was patently false, and further, she knew she was misleading listeners by omitting context that would materially distort the consensual nature of the exchange and trick listeners into forming inaccurate conclusions.

138. False Statement No. 12 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### Instagram - @thereal█████answers

139. In <u>January 2025</u>, the Defendant created yet another Instagram page, @thereal████answers, which was designed to harass and defame the Plaintiff online and to the public at large.



140.    To maximize the reach and impact of her false statements, and to inflict the most damage she could to Doe's reputation, Ahrens followed various accounts within Doe's network, and she also used dynamic hashtags to enhance publicity of the defamatory posts.

### False Statement #13

141.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 13"):



142.    Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," "drunk driving," blaming others for his crimes, "hid[ing] his crimes," "attack[ing] and hurt[ing] women," and related "predatory" and "psychotic" behavior, which she insists "WILL escalate."

143.     Ahrens underscores her post with dynamic hashtags including #abuser, #npdsurvivors, #sociopath, #psychopath, #abuse, #liarsalwaysgetcaught, and others. The published post is also under an account titled, @thereal████████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

144.     False Statement No. 13 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

**False Statement #14**

145.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 14"):



146.     Reasonably construed and in its proper context, the offending post falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," that his "crimes WILL be exposed," and that Doe is "desperately committing more crimes trying to silence everyone who speaks the truth about him."

30

147.     Ahrens underscores her post with dynamic hashtags. The post is published under an account titled, @thereal ████ answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes within her post that Doe is "concerned about [the] TRUTH being exposed" (emphasis in original).

148.     False Statement No. 14 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

<u>**False Statement #15**</u>

149.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 15"):



150.     Reasonably construed and in its proper context, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," committing "perjury," lying to the court, filing "false police reports," "legal abuse," acting in complicity with the police, and it suggests he has a "long, and growing, criminal history" that

include "DUIs"" and "drug abuse." Ahrens goes on to state that there is evidence of his "cowardly, malicious crimes," which Doe is trying to conceal.

151.    The post is published under an account titled, @thereal██████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes within her post that Doe's efforts to "harm and silence those who speak truth," are a "criminal act of grave concern."

152.    False Statement No. 15 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #16

153.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 16"):



154.    Reasonably construed and in its proper context, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," committing "perjury," lying to the court, filing "false police reports," "legal abuse," and

acting in complicity with the police. Ahrens goes on to state that there is evidence of his "cowardly, malicious crimes," which Doe is trying to conceal.

155. The post is published under an account titled, @thereal███████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes within her post that Doe's efforts to "harm and silence those who speak truth," are a "criminal act of grave concern."

156. False Statement No. 16 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #17

157. Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 17"):



158. Reasonably construed and in its proper context, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing

"cocaine," perpetrating serial abuse including "sadistic abuse" and abuse of the legal system, that he is engaged in corruption with law enforcement officials, and that "people who don't help him to hurt women 'deserve what is coming to them.'"

159.    The post is published under an account titled, @therealanswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes within her post that Doe "is desperately trying to hide the truth. But the truth is what it is. He might as well be trying to hide the sun."

160.    False Statement No. 17 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

#### False Statement #18

161.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 18"):



162.    Reasonably construed and in its proper context, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing

34

"cocaine," that he is a "predator" with a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help," that he is a "sadistic abuser," that he is intent on finding a "deeply corrupt" police officer who will be "fully complicit," that Doe has filed "objectively false, malicious police reports," and that corrupt cops have helped Doe "delete evidence of his crimes."

163. The post is published under an account titled, @thereal answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

164. Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

165. False Statement No. 18 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #19

166. Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 19"):



167.     Reasonably construed and in its proper context, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," that he uses "law enforcement to intimidate and silence women he has abused," and that officers complicit with Doe "have been reported for misconduct."

168.     Ahrens' comments posted adjacent to the image she created falsely characterizes Plaintiff as a "predator" and "sadistic abuser" who enjoys a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help," that he wants a "deeply corrupt" police officer who will be "fully complicit," that Doe has filed "objectively false, malicious police reports," and that corrupt cops have helped Doe "delete evidence of his crimes."

169.     The post is published under an account titled, (@thereal████████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

170.     Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

171.     False Statement No. 19 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #20

172.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 20"):

36



173.    Reasonably construed and in its proper context, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," that he uses "law enforcement as a tool to reinforce his power," that he weaponizes the law to exact personal vendettas, and Ahrens cautions anyone associated with Doe that they will suffer "damage to [their] reputation," because his "unethical behavior can tarnish [their] professional record, erode community trust, and expose [them] to disciplinary action or legal consequences."

174.    Ahrens' comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser," who enjoys a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help." It goes on to say that Doe wants a "deeply corrupt" police officer who will be "fully complicit," that Doe has filed "objectively false, malicious police reports," and that corrupt cops have helped Doe "delete evidence of his crimes."

175.    The post is published under an account titled, @thereal███████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

176. Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

177. False Statement No. 20 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

**False Statement #21**

178. Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 21"):



179. Reasonably construed and in its proper context, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," and that "[many] survivors report harassment, false allegations, and other retaliatory tactics when they defy [Doe]." Ahrens cautions readers that their "involvement would perpetuate their victimization."

38

180.    Ahrens' comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Doe "delete evidence of his crimes."

181.    Moreover, the Defendant uses dynamic hashtags to enhance publicity of the post and maximize the harm to Doe in the public eye, including #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

182.    The post is published under an account titled, @thereal███████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

183.    False Statement No. 21 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #22

184.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 22"):



185.    Reasonably construed and in its proper context, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," that helping Doe "misuse[s] the justice system could constitute misconduct, obstruction of justice, or abuse of power."

186.    Ahrens' comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Doe "delete evidence of his crimes."

187.    Moreover, the Defendant uses dynamic hashtags to enhance publicity of the post and maximize the harm to Doe in the public eye, including #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

188.    The post is published under an account titled, @thereal███████answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

189.    False Statement No. 22 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #23

190.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 23"):



191.     Reasonably construed and in its proper context, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of using and possessing "cocaine," and that "[o]fficers who assist abusers like Cocaine [Doe] risk being named in complaints, investigations, and lawsuits." The post goes on to say, "[i]f you suspect [Doe's] requests are retaliatory or unethical, document everything and report it to you superiors or internal affairs."

192.     Ahrens' comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Doe "delete evidence of his crimes."

193.     Moreover, the Defendant uses dynamic hashtags to enhance publicity of the post and maximize the harm to Doe in the public eye, including #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

194.     The post is published under an account titled, @thereal        answers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

195.    Likewise, Ahrens emphasizes her intentions to defame Doe to the public at large: "ALL of [Doe's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

196.    False Statement No. 23 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

### False Statement #24

197.    On or about January 11, 2025, using Instagram account, @thereal          truth, the Defendant digitized and widely disseminate a private audio message surreptitiously saved and maintained by Ahrens when the Parties were amicable (collectively, "False Statement No. 24").

198.    John Doe had a reasonable expectation that this private, sexualized audio message would remain private between two, consenting adults and not edited and later republished *en masse* to countless individuals and organizations in Doe's network without accurate, supporting context. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

199.    Not only was the call recorded without Doe's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place instead of on the phone from hundreds of miles away. It also misleads the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to do something against her will.

200.    The Defendant knew this characterization was patently false, and further, she knew she was misleading listeners by omitting context that would materially distort the consensual nature of the exchange and trick listeners into forming inaccurate conclusions.

42

201.    False Statement No. 24 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

<u>Reddit - @SuccotashMajor5107</u>

### False Statement #25

202.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Doe, which were published within a year of the filing of this lawsuit (collectively, "False Statement No. 25"):



203.    Reasonably construed and in its proper context, the offending post created/authored by Ahrens (despite framing it in the third person) falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Doe of terrorizing/harassing women who speak out about his abuse, and that he uses fraudulent online accounts to do so.

204.    In Illinois, harassment by electronic means, as defined in 720 ILCS 5/26.5-3, involves using electronic communication to knowingly make obscene comments or to threaten, harass, intimidate, or annoy another person. This includes actions like sending threatening messages, using social media to harass, or making repeated unwanted phone calls. Harassment by electronic means is a Class 4 felony in Illinois, carrying a potential prison sentence of 1 to 3 years and fines of up to

$25,000. It is, in essence, exactly the crime that Ahrens has been perpetrating against Doe for more than three years.

205.     Ahrens underscores the veracity of her statements by using a fictitious third person to suggest that Doe is trying to silence "a friend of a friends [of hers]." She claims to "know a lot" (i.e., have personal knowledge), and she implores the Reddit audience to search his name to find out "the truth about [Doe]," and to help the supposed victim to make "the truth public."

206.     False Statement No. 25 contains multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

<u>COMBINED FALSE AND/OR PRIVATE PUBLICATIONS</u>

207.     Upon information and belief, the Defendant republished the statements and private information/recordings contained in False Statement Nos. 1 through 25 to third parties exploiting the reach and speed of the internet and through social media (collectively, "False Statements").

208.     The Defendant knew (or should have known) that the manner and extent of her publication of the False Statements would render Plaintiff powerless and incapable of mitigating the damage done to his image and valued relationships.

209.     The Defendant has been relentless in her efforts to discredit and destroy the reputation of the Plaintiff, and she continues to widely disseminate defamatory statements and private recordings, as well as some that are inherently hidden and undiscoverable. Plaintiff's investigation continues.

210.     The Plaintiff has no way of knowing who saw and/or believed some or all of the False Statements made by Defendant about Plaintiff, nor can he truly assess the identity, scope and sheer number of people who were impacted by Ahrens' falsehoods.

211.    After exhausting all other avenues, John Doe filed the instant lawsuit to defend his reputation, challenge the veracity of the accusations made by an unstable woman he met online, and to put an end to Ahrens' escalating and unexplainably vindictive behavior. Doe brings this civil action against Ahrens pursuant to the following state law theories of recovery: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), and **Intentional Infliction of Emotional Distress** (Count IV).

## COUNT I
## DEFAMATION PER SE

212.    The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 211, as if fully restated in this Paragraph 212 of Count I.

213.    Doe is a self-made entrepreneur, author, internet personality, and venture capitalist. More notably, he is a dedicated and loving father.

214.    Knowing this, Ahrens orchestrated a calculated attack aimed at destroying Doe's reputation. To do so, Ahrens exploited the power of the Internet, and social media in particular, to reach a wide and impressionable audience.

215.    Ahrens embarked on a retaliatory harassment campaign aimed at punishing Doe for 'prematurely' terminating their relationship. To inflict the most damage, Ahrens intended to ruin Plaintiff's reputation and materially disrupt his personal and professional relationships and business ventures.

216.    The Defendant on her own, and at times complicit with others, fabricated a web of lies to destroy everything Plaintiff worked his entire life to achieve, and to interfere with the expansive personal and professional network it took him several decades to establish.

217.    The Defendant's False Statements were crafted in such a way to inspire sympathy and condemnation; Ahrens knew or should have expected that, upon reviewing or hearing her false or misleading remarks about the Plaintiff, Doe's contacts would denounce their affiliation, and adversaries would exploit the false publicity to serve their own purposes.

45

218. The Defendant's damaging accusations were widely publicized by Ahrens, who in turn, solicited others to republish and disseminate the same false, misleading, or otherwise defamatory speech to maximize the harm to Plaintiff's reputation and well-being.

219. By publicizing the False Statements, Ahrens misled the public at large into believing the following *per se defamatory* characterizations:

(a) That Plaintiff harassed and has physically and sexually abused and assaulted multiple women, including Ahrens;

(b) That Plaintiff engages, or enlists others to engage, in threatening behavior, including stalking and harassment, to intimidate and silence his supposed victims, including Ahrens;

(c) That Plaintiff is corrupt (or otherwise engaged in corruption) in that he has (or is willing to) bribe public officials and/or work in conspiracy with crooked members of law enforcement to obstruct justice, conceal his crimes, destroy evidence, and abuse women including Ahrens;

(d) That Plaintiff has committed numerous felonies, and that he is a serial offender and a felon;

(e) That Plaintiff is emotionally volatile, evil, unscrupulous, violent, dangerous, unchaste, and unethical; and

(f) That Plaintiff is unchaste, immoral, promiscuous, that he has knowingly engaged in adultery, and that he has fornicated with numerous women without their consent, including Ahrens.

220. Any reasonable reader/viewer would discern that the False Statements were about and concerning John Doe.

221. Ahrens knowingly lied, manipulated facts, and distorted reality when she publicized the False Statements about the Plaintiff to third parties via the internet and on social media.

222. The False Statements contain multiple assertions of false and defamatory statements of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

223. Reasonably understood, the Defendant's offending statements constitute *per se* defamation where her false publicity amounted to (a) an implication that Plaintiff is guilty of reprehensible and indictable criminal conduct; and (b) a false impression that Plaintiff is unchaste, immoral, promiscuous, and has knowingly engaged in adultery.

46

224. The Defendant's publication (and republication) of the False Statements were committed with actual malice; that is, with knowledge that the statements she published were false, or alternatively, with reckless disregard for the veracity of her statements about John Doe.

225. Ahrens' fabrication and subsequent publication of the False Statements were committed with actual malice. The Defendant knew that the False Statements she made concerning the Plaintiff were false at the time they were published online, or alternatively, she acted with reckless disregard for the veracity of such statements based on, *inter alia:*

(a) Ahrens never possessed any uncontroverted, first-hand knowledge to support any or all of the False Statements before she disseminated them to the public at large;

(b) Ahrens never possessed any tangible or documentary evidence demonstrating the veracity of any or all of the False Statements before she disseminated them to the public at large;

(c) No court of competent jurisdiction, tribunal, prosecutorial authority, or governing body have ever found Plaintiff responsible or liable for any of the criminal accusations contained within the False Statements;

(d) Ahrens never thought to consult (or forewarn) Plaintiff so that she could make an informed and careful decision before giving the False Statements broad publicity on the Internet and elsewhere; and

(e) Ahrens knew or should have expected the irreversible reputational harm they would cause to Plaintiff by creating, and then publicizing, unsubstantiated gossip, unproven allegations, or blanket assumptions without evidence.

226. The Defendant also exhibited a reckless disregard for the deleterious effect these False Statements would have on Plaintiff's reputation and in the eyes of his friends and family, as well as his existing and prospective professional contacts.

227. Plaintiff knew or should have known that the false publicity she spread online was liable to be believed and/or cause consternation and concern among those who found Ahrens credible, or assumed no one would fabricate such egregious accusations against a person without firsthand knowledge to substantiate them.

228.     The Defendant was so intent on destroying Plaintiff's good name that she took painstaking efforts to make the False Statements appear credible to those hearing/seeing them -- even those close to Plaintiff who had no reason to believe this unknown woman or question Doe's ethics or morality.

229.     Ahrens crafted and used dynamic hashtags, and also tagged celebrities, public figures, industry leaders, and otherwise influential persons or organizations to maximize publicity and ensure her baseless attacks against Doe went viral and were impactful.

230.     The Defendant also knew, or with substantial certainty should have known, that these lascivious and sensationalized accusations would be good fodder for gossip mongering, especially given the Plaintiff's public persona and his online image as a playful antagonist.

231.     The Defendant has been relentless in her efforts to discredit and destroy the reputation of the Plaintiff, and she continues to widely disseminate defamatory statements and private recordings, as well as some that are inherently hidden and undiscoverable. Plaintiff's investigation continues.

232.     The Plaintiff has no way of knowing who saw and/or believed some or all of the False Statements made by Defendant about Plaintiff, nor can he truly assess the identity, scope and sheer number of people who were impacted by Ahrens' falsehoods.

233.     The actionable speech published by Ahrens invaded the Plaintiff's personal and professional circles, caused undue ridicule, and has had (and continues to have) a demonstrable, adverse impact on Plaintiff's esteemed career, as well as his physical and emotional health.

234.     The Defendant's publication of these False Statement severely impaired the Plaintiff's personal and professional reputation in the community where he lives and works, and beyond, and it resulted in distress, humiliation, embarrassment, and other demonstrable losses tied to the efforts and expense of trying to invalidate Defendant's false accusations and restore his good name. The Plaintiff

also suffered damages, including, but not limited to, attorneys' fees, lost income, and opportunities, as well as damage to his future earning capacity.

235. After exhausting all other avenues, John Doe filed the instant lawsuit to defend his reputation, challenge the veracity of the accusations made by an unstable woman he met online, and to put an end to Ahrens' escalating and unexplainably vindictive behavior from more than three hundred miles away.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count I, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff **JOHN DOE** further prays that this Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

## COUNT II
## FALSE LIGHT INVASION OF PRIVACY

236. The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 235, as if fully restated in this Paragraph 236 of Count II.

237. The False Statements contain multiple assertions of false of fact, which are devoid of First Amendment protection and cannot be safeguarded by privilege, innocently construed, or equate to non-actionable opinion.

238. Ahrens' fabrication and subsequent publication of the False Statements were committed with actual malice. The Defendant knew that the False Statements she made concerning

49

the Plaintiff were false at the time they were published online, or alternatively, she acted with reckless disregard concerning the veracity of such statements based on, *inter alia:*

(a) Ahrens never possessed any uncontroverted, first-hand knowledge to support any or all of the False Statements before she disseminated them to the public at large;

(b) Ahrens never possessed any tangible or documentary evidence demonstrating the veracity of any or all of the False Statements before she disseminated them to the public at large;

(c) No court of competent jurisdiction, tribunal, prosecutorial authority, or governing body have ever found Plaintiff responsible or liable for any of the criminal accusations contained within the False Statements;

(d) Ahrens never thought to consult (or forewarn) Plaintiff so that she could make an informed and careful decision before giving the False Statements broad publicity on the Internet and elsewhere; and

(e) Ahrens knew or should have expected the irreversible reputational harm they would cause to Plaintiff by creating, and then publicizing, unsubstantiated gossip, unproven allegations, or blanket assumptions without evidence.

239. The Defendant's conduct was so extreme, outrageous, methodical, and pervasive that no person in Plaintiff's shoes would be expected to endure it.

240. The False Statements were published by Ahrens to the public at large.

241. Such false publicity invaded the Plaintiff's personal and professional circles, caused undue ridicule, and has had (and continues to have) a demonstrable, adverse impact on Plaintiff's esteemed career, as well as his physical and emotional health.

242. The Defendant's publication of these False Statement severely impaired the Plaintiff's personal and professional reputation in the community where he lives and works, and beyond, and it resulted in distress, humiliation, embarrassment, and other demonstrable losses tied to the efforts and expense of trying to invalidate Defendant's false accusations and restore his good name. The Plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

50

243.     After exhausting all other avenues, John Doe filed the instant lawsuit to defend his reputation, challenge the veracity of the accusations made by an unstable woman he met online, and to put an end to Ahrens' escalating and unexplainably vindictive behavior from more than three hundred miles away.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count II, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff **JOHN DOE** further prays that this Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

## COUNT III
### PUBLIC DISCLOSURE OF PRIVATE FACTS

244.     The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 211, with emphasis on False Statement Nos. 1, 2, 15 and 29 (collectively, the "Private Recordings"), as if fully restated in this Paragraph 244 of Count III.

245.     Illinois recognizes a common law privacy action for the "public disclosure of private facts." The tort imposes liability against a party, in this case Defendant Ahrens, for publicizing facts about the private life of a person that would be highly offensive to a reasonable person and are not of legitimate concern to the public.

246.     At the most basic level, a claim for "public disclosure of private facts" is properly stated where a defendant has unreasonably and widely publicized another's personal affairs when that

defendant knew, or with reasonable care should have known, that the sensitive information disseminated was supposed to remain confidential, or at most, shared anonymously or amongst a limited group of trusted confidantes.

247.    Unbeknownst to Plaintiff, Ahrens surreptitiously recorded intimate audio and video exchanges of a sexual nature without Doe's knowledge or consent, referred to herein as the Private Recordings. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

248.    With malice and premeditation, it is believed that Ahrens recorded these private conversations knowing she would someday use them to exploit, extort, or humiliate the Plaintiff if he was unwilling to commit to her romantically, or alternatively, if he were to unilaterally end their telephonic sexual banter.

249.    In fact, the first time Doe realized the existence of the Private Recordings was when Ahrens published them to the public at large using the internet and using certain Instagram accounts she created using John Doe's real name.

250.    The Plaintiff had a reasonable expectation of privacy in these sensitive and Private Recordings, especially those that were sexually explicit. Moreover, any partial broadcast of such recordings, without sufficient context, would materially distort any reasonable listener's/viewer's perception of the exchange between the Parties. Ahrens knew this yet published these Private Recordings with reckless disregard for the false light she would cast upon him.

251.    The Plaintiff had a reasonable expectation that private moments between the two Parties would remain private even if their relationship soured, which it did.

252.    Ahrens knew, or should have known, that public dissemination of the Private Recordings would be hurtful, embarrassing, and would otherwise subject Plaintiff to ridicule and isolation if shared on the internet to the public at large.

253. The Private Recordings cannot reasonably be construed as newsworthy or necessary to the discourse of some legitimate public concern. This is especially true where such Private Recordings were published without proper context and were instead paired with a false narrative designed to mislead listeners and demonize Doe.

254. The Defendant published the Private Recordings to various persons connected to the Plaintiff's personal and professional networks, as well as people unknown to the Plaintiff who were directed to, or inspired to follow, Defendant's offending social media pages. Ahrens exhibited a blatant disregard for the impact public disclosure of this sensitive information would cause, especially when cast in a false and inflammatory light.

255. Ahrens knew, or should have known, that her use of multiple accounts, across varying platforms, would render Doe both powerless and incapable of mitigating the harm done to his image and valued relationships.

256. The Defendant acted with malicious intent when she gave publicity to these Private Recordings, which would be construed as highly offensive and objectionable to a reasonable person.

257. Ahrens' conduct was so methodical and pervasive that no person in Plaintiff's shoes would be expected to endure it without suffering severely.

258. Such publicity invaded Plaintiff's personal and professional circles, caused him undue ridicule, and it will continue to have a demonstrable, adverse impact on Plaintiff's livelihood, as well as his physical and emotional health.

259. The Defendant's publication of these Private Recordings severely impaired the Plaintiff's personal and professional reputation in the community where he lives and works, and beyond, and it resulted in distress, humiliation, embarrassment, and other demonstrable losses tied to the efforts and expense of trying to invalidate Defendant's false accusations and restore his good name. The Plaintiff also suffered damages, including, but not limited to, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

260. After exhausting all other avenues, John Doe filed the instant lawsuit to defend his reputation, challenge the veracity of the accusations made by an unstable woman he met online, and to put an end to Ahrens' escalating and unexplainably vindictive behavior from more than three hundred miles away.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count III, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff **JOHN DOE** further prays that this Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

261. The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 260, as if fully restated in this Paragraph 261 of Count IV.

262. The Plaintiff harbors a reasonable fear for his own personal and physical safety, as well as the safety of his family and any person he is dating, in light of Ahrens' unpredictable, volatile, and unexplainably vindictive behavior following a casual and purely telephonic relationship that Doe ended unilaterally.

263.    Defendant's conduct was, at all relevant times, and continues to be, so extreme, outrageous, methodical, and pervasive that no person in Plaintiff's shoes would be expected to endure it without suffering severely.

264.    The Defendant acted with malicious intent when she repeatedly committed acts amounting to Defamation *Per Se*, cast Plaintiff in a false and objectively unflattering light to the public at large, and when she surreptitiously recorded and publicly disclosed Plaintiff's private affairs on multiple occasions.

265.    Independently, and collectively, the factual allegations set forth in support of each of the foregoing counts would be construed as extreme and outrageous and highly offensive to a reasonable person.

266.    The alleged conduct caused, and will continue to cause, the Plaintiff to suffer severe emotional distress, humiliation, embarrassment, mental suffering, nightmares, safety concerns, and likely require corresponding medical, clinical, and psychiatric intervention and care. The Plaintiff also suffered damages, including, but not limited to, reputational harm, attorneys' fees, lost income and opportunities, as well as damage to his future earning capacity.

267.    After exhausting all other avenues, John Doe filed the instant lawsuit to defend his reputation, challenge the veracity of the accusations made by an unstable woman he met online, and to put an end to Ahrens' escalating and unexplainably vindictive behavior from more than three hundred miles away.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count IV, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff **JOHN DOE** further prays that this Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

### PLAINTIFF DEMANDS TRIAL BY JURY

**Dated: April  11 , 2025**

> **Respectfully submitted,**
> **Attorneys for Plaintiff, John Doe**
>
>
> By:   /s/ Ryan B. Jacobson
>      Ryan B. Jacobson, Esq (IL Bar No. 6269994)
>      AMUNDSEN DAVIS LLC
>      150 North Michigan Avenue, Suite #3300
>      Chicago, Illinois 60601
>      Telephone: (312) 894-3252
>      *rjacobson@amundsendavislaw.com*