

FILED

KG

6/27/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**JOHN DOE**, an individual by pseudonym  )
                                          )
                    Plaintiff,            )          **CASE NO:    1:25-cv-02565**
                                          )          (**HONORABLE JOHN H. THARP JR.**)
v.                                        )
                                          )
**VALERY J. AHRENS**, an individual       )
                                          )
                    Defendant.            )


## DEFENDANT'S MOTION IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

### INTRODUCTION

This premature Rule 26(c) motion is not a good-faith discovery request. It is an attempted gag order dressed in procedural clothing.

Plaintiff has made a public persona out of being a winner, a mentor, and a man of success and discipline. That image, however, relies on suppressing the truth. Plaintiff is a known abuser who attempts to use coercion, humiliation, and fear to control the women he targets. The moment Defendant began speaking up about this abuse, Plaintiff began his campaign to punish her. First, through smear tactics, then through fabricated claims to police, and now through a sprawling series of meritless and retaliatory court actions designed to reframe himself as the victim. This motion is merely the latest in a long pattern of abuse-by-litigation.

Plaintiff's desire for a protective order in this case is not about avoiding irrelevant disclosures. There are two audio clips presently at issue. Plaintiff cobbles together baseless accusations of illegal recording, threats, harassment, and supposed evidence of Defendant's mental instability, all in a desperate attempt to reframe the evidence. In reality:

**CLIP I.** Plaintiff can be heard berating and degrading Defendant in ways that eviscerate his claims of victimhood and expose the grotesque falsity of a central allegation in his federal complaint.

**CLIP II.** Plaintiff's reliance on coercion and threats, not Defendant's, is unmistakable.

Ryan B. Jacobson, counsel for Plaintiff, was informed that a central allegation in Plaintiff's complaint is not only false, but a deranged effort by Plaintiff to recast himself as the victim of his own highly abusive conduct. After repeatedly claiming that Defendant threatened Plaintiff, Mr. Jacobson was presented with evidence that it is, in fact, Plaintiff who engages in threatening and abusive behavior. Rather than address or correct this, Plaintiff and his counsel have doubled down. They seek to suppress the very evidence that exposes the truth.

This is not an isolated incident. Plaintiff's legal abuse will become increasingly evident in subsequent filings. Even when limiting argument to the scope of this premature Rule 26(c) motion, however, it is clear that the facts do not support a protective order. This is not a good-faith effort to protect discovery integrity. It is a bad-faith attempt to suppress the truth. For that reason alone, it must be denied.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(c) permits a court to issue a protective order "for good cause shown," to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." However, the rule was never intended to serve as a preemptive gag order or a shield from reputational damage stemming from truthful, relevant evidence. It is a discovery rule. It is not a tool for narrative control

To obtain a protective order, the moving party bears the burden of demonstrating specific, particularized harm, not mere discomfort with the evidence or embarrassment over what the facts may reveal. Courts routinely reject vague, conclusory allegations of harm, especially

2

when the underlying request appears to be aimed at stifling legitimate speech or suppressing material that bears directly on the claims in the case. Under Fed. R. Civ. P. 26(c), the moving party must demonstrate good cause for a protective order by showing specific, particularized harm. See *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984).

Protective orders are not granted simply because a party finds discovery personally inconvenient or undermining of the public image one promotes, *particularly when that party voluntarily placed those issues at the center of a defamation and emotional distress claim.* Having made public and explosive allegations, Plaintiff cannot now silence Defendant from responding with evidence that contradicts him.

Here, Plaintiff makes no showing of concrete harm, let alone one that justifies court intervention. Instead, he seeks to preemptively suppress evidence. Namely, audio recordings he himself demanded, because they undermine the false narrative presented in his Complaint. Rule 26(c) does not exist to protect parties from the consequences of their own misconduct. Nor does it exist to shield litigants from the exposure of facts they would rather keep hidden. It exists to ensure fairness in discovery, not to sanitize the record or restrict access to the truth.

Plaintiff fails to demonstrate good cause. His motion transparently seeks to restrict speech and exclude damaging evidence, and his request must be denied.

## PLAINTIFF DEMANDED THE RECORDING AS A TOOL OF CONTROL; NOW CLAIMS IT WAS AN ILLEGAL ACT AGAINST HIM

Plaintiff not only knew the recording he references in his federal complaint existed; he demanded it. He explicitly told Defendant to find a way to record their FaceTime interactions because he could not record the audio on his end. He made clear that it was "no good to him later" if he could not hear Defendant's pain and suffering. This was not a private conversation secretly captured in violation of the law. It was a coerced recording, made at Plaintiff's own

direction, for the express purpose of allowing him to relive the psychological abuse he was inflicting.

Now that this recording directly contradicts the false narrative he is pushing in this lawsuit, Plaintiff, and his lawyer, invoke the Illinois Eavesdropping Act. *No federal civil litigant gets to weaponize a state criminal statute by proclamation*. Plaintiff's say-so is not a substitute for state prosecution, due process, or legal merit. This is not a genuine legal claim. It is a threat. *He hopes to intimidate Defendant and discredit the very evidence he demanded she create*. The hypocrisy is staggering.

More importantly, the statute does not apply. Defendant was in Iowa at the time, which is a one-party consent state. Illinois law does not control the actions of someone outside its jurisdiction. Courts have repeatedly rejected the idea that Illinois' stricter consent requirements can be imposed on out-of-state individuals engaged in otherwise lawful conduct.

Plaintiff knows this. He has already tried, and failed, to use this theory in an attempt to have Defendant criminally charged. He knew she was in Iowa. He knew he had asked for the recording. Despite that, he contacted law enforcement to pursue charges under the Illinois Eavesdropping Act. His attempt failed. This argument has already been rejected, and its reappearance here is simply another example of Plaintiff's abusive pattern of legal manipulation.

*There are no unlawful recordings.* There is only deeply disturbing evidence that prove Plaintiff's malicious lies are just that. Lies. That he now pretends to be the victim of a recording he orchestrated, while seeking to bury it through procedural maneuvering, speaks volumes ahis character and his real motive behind this lawsuit.

## I. AUDIO  PROVES THAT A CENTRAL CLAIM IN PLAINTIFF'S CASE IS NOT ONLY FALSE, BUT GROTESQUE

Plaintiff's complaint alleges that Defendant secretly recorded him during what he describes as "phone sex." That claim is false. The recording Plaintiff references was not sexual in nature. It was a FaceTime call in which Plaintiff screamed at Defendant to eat Alpo dog food and to smash it against her face repeatedly. Plaintiff shouted instructions at her to do it hard enough for him to hear the impact. When she hesitated, he berated her with verbal abuse, calling her a "dumb bitch" and a "fucking whore." After she complied, he abruptly hung up, leaving her distraught and sobbing on her bathroom floor. Minutes later, he called back and asked if she wanted to help him "get ready" for sex he had planned. When she said no, he hung up again.

There is nothing sexual about the "dog food" incident. No reasonable listener could interpret it as anything other than degrading, dehumanizing, and sadistic. Defendant never wanted to revisit the recording. She only located it because Plaintiff later lied, again, in one of his many state court cases, claiming the incident never occurred. When Plaintiff's legal abuse escalated again into the venue of this federal court, Defendant was forced to revisit it again to obtain the audio necessary to defend herself.

The audio now at issue in this motion is not the "dog food" recording itself. It is a separate clip that was sent to Plaintiff's attorney by Defendant's former counsel. In that recording, Plaintiff is clearly heard screaming at Defendant to adjust the camera angle. He is not being recorded without his knowledge. He is issuing commands. He is controlling the scene. He wants the call filmed in a specific way so he can see what he wants to see.

This clip is not a "threat." It is not harassment. It is *exculpatory evidence.* It directly disproves Plaintiff's central claim that the recording was made surreptitiously and without his

consent. The idea that Plaintiff was secretly recorded during a private sexual moment is not only

false, it is part of a broader pattern of intentional deceit.

The accusation that an audio clip was sent to harass Plaintiff or threaten his attorney is

baseless. Defendant did not send it. Her former attorney did. It was submitted to correct a

demonstrably false narrative in Plaintiff's complaint. There is nothing inappropriate about

alerting opposing counsel that a central factual claim in their federal filing is provably false.

Rather than address the content of the recording, Plaintiff's attorney responded by

escalating the accusation. He now insinuates, without evidence, that Defendant somehow

"forced" her former attorney to threaten him. That claim is as implausible as it is inflammatory.

Notably, Mr. Jacobson did not submit the email in which he asked Defendant to resend

the audio her attorney had already provided. If Mr. Jacobson truly viewed the clip as threatening,

his request that Defendant resend it to him is logically incoherent. The more likely explanation is

that Mr. Jacobson hoped to receive a version sent from Defendant's own email address, so that he

could reframe Defendant as the source of an alleged threat—because claiming that she

manipulated a reputable attorney into conveying a threat is difficult to sustain. Even if Plaintiff's

attorney felt uncomfortable receiving evidence that contradicted his client's claims, that

discomfort does not transform legal communication into a threat—let alone a 'threat by proxy,' a

term more suited to fiction than to federal litigation.

Mr. Jacobson continues to assert that the recording was illegally obtained. It was not. He

has submitted an affidavit attesting to false assertions. The content of the audio file—Plaintiff

loudly instructing Defendant to adjust the camera—confirms this. There was no secret or illegal

recording. Again, what this audio actually proves is that a central claim in Plaintiff's case is

false. The truth is documented, and Plaintiff and his lawyer, Ryan B. Jacobson, are now asking this Court to suppress it under the pretext of a protective order.

## II. CONTRARY TO HIS CLAIMS, THE SECOND RECORDING CAPTURES PLAINTIFF THREATENING DEFENDANT

The second audio clip now at issue is yet another example of Plaintiff's ongoing effort to weaponize the legal system to support a false and shifting narrative. When no threat, danger, or harassment exists, Plaintiff attempts to twist innocuous communications. When even that fails, he fabricates alleged misconduct altogether.

Defendant views any communication or interaction with Plaintiff as dangerous. His goal is never resolution. It is control. Through both his litigation tactics and personal conduct, he has made clear that he views the courtroom as simply another venue for his pattern of manipulation and coercion. When he loses control of the narrative, he repositions himself as the victim. This pattern is not new. It is entrenched.

Defendant has never threatened, nor been accused of threatening, anyone else in her life. Yet, Plaintiff repeatedly tries to recast her as dangerous. In a long, and growing, list of court filings, Plaintiff has proclaimed himself to be the victim of harassment, stalking, an overseas surveillance operation, texts he fabricated, a murder plot, an arson threat, sexual assault, and the bizarre accusation that Defendant somehow caused a car to turn around in his driveway. He has even claimed that she manipulated the husbands of women he has affairs with into following him. None of these accusations are grounded in reality. Plaintiff's claims defy logic not by accident, but by design. They are calculated projections rooted in delusion and intended to reverse the roles of abuser and victim.

Defendant is well aware of Plaintiff's fixation on the idea of "threats." She would be reckless to say anything that could be remotely misinterpreted. She has gone out of her way to avoid giving Plaintiff or his counsel any material they could weaponize.

In her final communication with her former attorney, he informed her that Plaintiff's counsel, Ryan B. Jacobson, had just contacted him, again. This time, Ryan B. Jacobson was claiming that Defendant had threatened to expose Plaintiff as a pedophile and was also attempting to extort him. These accusations were not only patently false, but clearly part of a broader effort to escalate tensions and manipulate the litigation process. Rather than continue to retain an attorney to respond to lengthy, repeated, defamatory phone calls, Defendant has chosen to proceed pro se for the time being. She understood that opposing counsel's strategy appeared to involve exhausting her legal resources by repeatedly calling her attorney, defaming her, falsely accusing her of crimes, and attempting to shape the case through intimidation and narrative control.

Ryan B. Jacobson's remark that he hoped Defendant had paid her lawyer a large retainer is revealing. Before counsel could even familiarize himself with Plaintiff's trail of prior and pending cases, he was confronted with unsolicited accusations, warnings of possible criminal exposure, boasts of Ryan B. Jacobson's (default) legal victories, and hints at a potential NDA. The purpose was transparent: drown Defendant's legal representation in chaos and paint her as a threat before any facts could be addressed.

Defendant's email communications with Mr. Jacobson were her first direct contact with him. Her email means exactly what it says. In the audio Plaintiff now claims was threatening, Plaintiff can instead be heard threatening Defendant. It is perhaps unsurprising that the audio in question was not attached to Mr. Jacobson's affidavit.

As  the following transcript shows, it is Plaintiff who made threats — including threats to involve Defendant's father and to ensure that "the rest of [her] life" would be permanently altered. This is not a matter of interpretation. The threats are explicit. Defendant provided this audio to Plaintiff's attorney, who has continued to falsely assert that Defendant made threats, despite full knowledge of the recording's contents.

Below is a verbatim transcript of the audio that was provided to Ryan B. Jacobson.

---

**Plaintiff**:  *You've cost me and my family a lot of money, and you and your family are gonna be payin' me for it now.  And your dad is gonna be dragged right through this whole thing and hear every freakin' detail and hopefully see the videos that you sent me. If it comes to that.*

*All right?*

*So you have really made your own bed here. And there's really no way out of it. I told you to propose somethin'. You still haven't proposed somethin'.*

*Okay?*

*Anything else?*

**Defendant**:  *This is why I feel I can't—because I keep getting accused of stuff I didn't do.*

**Plaintiff**:  *All right. Well. You should really talk to your fuckin' lawyer. And avoid what's about to happen to you. Because this is gonna alter the rest of your life.*

(*Plaintiff hangs up, call ends).*

---

This transcript directly contradicts Plaintiff's narrative. His statements are not vague or conditional. They are designed to instill fear and force Defendant into compliance. Plaintiff's request to bar this recording from discovery is not a protective measure. It is an effort to shield a key piece of evidence that exposes his retaliatory motive and abusive tactics.

Of particular concern is Plaintiff's ongoing obsession with Defendant's father. Her father is a 75-year-old man who has never met Plaintiff. He is a primary caretaker for Defendant's younger brother, who has a severe disability. The full extent of Plaintiff's disturbing fixation on her father—particularly his repeated threats involving revenge porn—is best reserved for appropriate future filings. For now, it is enough to say that Defendant meant what she said in her email. It would indeed be helpful if any attorney could explain to Plaintiff that his threats directed at her father are deeply inappropriate and legally counterproductive.

If Mr. Jacobson believes it is appropriate to repeatedly, and baselessly, accuse Defendant of making threats in emails, emergency hearings, and repeated phone calls to her former lawyer, then he must accept that Defendant is entitled to provide actual evidence demonstrating that she made no such threats—and that it is, in reality, his client who is fond of issuing threats.

In her communications, Defendant went out of her way to make her intent clear: she did not, and does not, intend to threaten anyone. That correspondence was also excluded from Ryan B. Jacobson's affidavit. Defendant will submit additional emails, so that the Court may assess the full and accurate context.

*Defendant does not issue threats*. Not to Plaintiff. Not to his attorneys. Not to anyone. What she does is respond to false accusations with evidence. After two years of necessity, she has become well-versed in doing so. It is that evidence—not threats—that Plaintiff cannot tolerate. Plaintiff now asks the Court to perform the judicial equivalent of making the evidence disappear.

## PLAINTIFF'S COUNSEL SUBMITTED AN IMPROPER AFFIDAVIT AND IS NOW A MATERIAL FACT WITNESS

Attorney Ryan B. Jacobson submitted an affidavit accusing Defendant of threatening him and his client and of possessing "illegal recordings." These are false and defamatory

accusations—each concerning highly disputed factual issues at the heart of this motion. By submitting this sworn testimony, Mr. Jacobson has made himself a material fact witness. He is no longer functioning solely as counsel, but as an evidentiary source of the very claims before the Court.

This conduct violates well-established ethical rules. Under Rule 3.7 of the Illinois Rules of Professional Conduct, "a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on a contested issue." There is no exception here. The affidavit goes far beyond mere procedural background or fee-related matters. It asserts personal knowledge of threatening behavior and legal violations, both of which Defendant denies unequivocally.

Jacobson's choice to step into the role of fact witness is also telling. It reflects the broader pattern of this case: misrepresentation, narrative control, and improper tactics designed to prejudice the Court against Defendant. The Court should strike or disregard the affidavit, and Defendant reserves all rights to seek disqualification or other appropriate relief.

Even more concerning, Plaintiff submitted his own sworn affidavit alongside his attorney's. If Plaintiff already attested to the facts at issue, then Mr. Jacobson's affidavit was unnecessary, redundant, and improper. The only apparent reason for it's inclusion is to bolster the motion with the authority of legal counsel—an inherently prejudicial tactic. Mr. Jacobson's personal involvement in the factual narrative only underscores the impropriety of his dual role as both advocate and evidentiary witness, in violation of Rule 3.7.

## **CONCLUSION**

In this case alone, before she has even filed a formal response, Defendant has been falsely accused of criminal conduct. Her name and home address has been publicly associated with the false, malicious, and potentially dangerous claim that she has a "kink" for being sexually degraded by complete strangers. She has been falsely accused of crossing state lines to lure her abuser with sexual favors. She has been labeled "troubled" and in need of counseling by an abusive man and his attorney—neither of whom possesses even the most basic qualifications to diagnose or opine on matters of mental health.

These allegations are not just false. They are calculated. They are sadistic. They are part of a long-standing pattern in which Plaintiff attempts to invert the roles of abuser and victim and use institutional systems—such as the courts—to extend his control.

Now, from behind the shield of pseudonymity, Plaintiff files what is likely to be the first of many efforts that ultimately seek to silence Defendant from speaking or presenting evidence that refutes his false narrative.

The psychological parallels to his prior abuse are unmistakable. What began with verbal degradation has evolved into a campaign of attempted reputational and procedural degradation through public litigation. Plaintiff seeks to isolate Defendant, to reframe her as unstable, and to subject her to a legal process in which he dictates the terms and punishes resistance.

At its core, this motion is not about protecting Plaintiff from harm. It is about replicating the power dynamic that allowed him to abuse Defendant in the first place—only now with the authority of a court order behind it. Defendant has the right to her voice. She has the right to respond to false and deeply damaging claims. This motion must be denied.

## **PRAYER FOR RELIEF**

WHEREFORE, for the reasons stated above, Defendant respectfully requests that this

Honorable Court grant the following relief:

1. Deny Plaintiff's Motion for Protective Order in it's entirety; and

2. Decline to impose any restrictions that would prevent Defendant from defending
   herself against Plaintiff's allegations, including through the use of evidence that
   directly contradicts his claims, or from speaking publicly in response to Plaintiff's
   ongoing misuse of the courts and pattern of false accusations.

Defendant further asks the Court to recognize Plaintiff's documented history of using

emergency, ex parte, and preemptive motions to suppress speech and control the narrative.

Defendant respectfully requests that the Court reject any attempts by Plaintiff to weaponize

protective orders for that purpose.

Defendant also requests any additional relief this Court deems just and proper.

Respectfully submitted,

/s/ *Valery Ahrens*
Valery Ahrens
Pro Se Defendant
32148 237th Street
Eldora, IA  50627
312-805-1143
missvalerya@live.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Valery Ahrens, a pro se litigant, hereby certify that on June 27, 2025 I emailed a copy of the foregoing to Plaintiff's attorneys, Brandon B. Jacobson and Danessa P. Watkins.

**Dated:** June 27, 2025                    **By:** *<u>/s/ Valery Ahrens</u>*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**JOHN DOE**, an individual by pseudonym   )
                                         )
                       Plaintiff,   )         **CASE NO:**    **1:25-cv-02565**
                                       )   (**HONORABLE JOHN H. THARP JR.**)
v.                                    )
                                       )
**VALERY J. AHRENS**, an individual   )
                                       )
                    Defendant.   )

## <u>DECLARATION OF VALERY AHRENS</u>

Pursuant to 28 U.S.C. § 1746, I, Valery J. Ahrens, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief. If called to testify, I could and would testify competently to the facts stated herein:

1. I am the Defendant in the above-captioned case. I submit this affidavit in support of my Opposition to Plaintiff's Motion for Protective Order.

2. Plaintiff's motion falsely suggests that I have threatened him and his attorney, Ryan B. Jacobson. I have not. I have never threatened Plaintiff, nor have I threatened his legal counsel. I categorically reject these claims.

3. The emails attached as Exhibit A are true and correct copies of my correspondence with Plaintiff's attorney, Ryan B. Jacobson. These messages contain no threats. They do, however, include a link to a recorded audio file that I provided in response to Plaintiff's allegation that I threatened him. I made every effort to be respectful and direct. My intent was to correct the record. Not to threaten anyone.

4. The audio referenced in those emails captures Plaintiff making explicit threats. He threatens that my father will be "dragged" through litigation and forced to listen to humiliating details. He stated that "there's really no way out of it" and warned me that what is coming will "alter the rest of [my] life."

5. A transcript of that recording is included in my motion. It is a true and accurate transcription of what Plaintiff said on that call.

6. This recording is not an isolated incident. It is representative of a disturbing pattern. Plaintiff repeatedly uses threats and intimidation—particularly threats of revenge porn—as tools of coercion. He has falsely claimed that he is the victim in this situation, when the reality is the opposite.

7. I provided the audio to Plaintiff's attorney to demonstrate the truth. In return, Plaintiff has sought to suppress it, misrepresent it, and accuse me of criminal conduct. He has previously attempted to have me criminally charged for recording interactions that he demanded I record. Those charges were never pursued during any of his many cases at the state level because they lacked merit.

8. I submit this affidavit to confirm that I did not make threats, and to ensure that the Court has an accurate, sworn account of what occurred. I respectfully request that the Court deny Plaintiff's motion.

9. Out of respect for the Court's current docket and the fact that Plaintiff is proceeding under a pseudonym, I have made every effort to redact or withhold any identifying information about Plaintiff in the materials submitted alongside this affidavit. While I believe this pseudonymity is deeply unfair and inconsistent with

the public nature of the allegations Plaintiff has chosen to make, I will address that

separately in my forthcoming motion opposing pseudonymity. My compliance

here should not be construed as agreement with Plaintiff's right to conceal his

identity while actively defaming mine.

*Further declarant sayeth naught.*

      **PURSUANT TO 28 U.S.C. § 1746, I, VALERY AHRENS, DECLARE
UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
CORRECT.**

Executed on: June 27, 2025

          */s/ Valery Ahrens*
          **VALERY AHRENS**

GMAIL Document 4_41 Pane: 060717D Page 19 of 19 P  
Valery Almera  
To: Jacobsen, Brian; Watkins, Demaris  
11/27/2019 11:16 PM

Hi Ryan,

As I'm sure you realize, I won't be turning over discovery at this stage. The timing and framing of your request for my client's documents makes it clear that your discovery request has an improper purpose: "harassing" energy. So having seen this, I can't entirely fault you for deciding to get a head start on trying to untangle his lies.

I imagine you'll be busy enough preparing to defend your claim that audio of the energy verbally abusing, cheating himself etc and scheming at me to eat Aljo somehow qualifies as "phone sex."

As you and any reasonable observer can hear, I was never "secretly" recorded. He audibly demands adjustments to the camera. A central allegation in your public lawsuit is demonstrably false. He knows that. And you know it.

The only evidence you need to understand that publicly attaching my name and home address to the claim that I have a "kink" for being sexually degraded by complete strangers is a malicious and dangerous fabrication is this: I'm telling you it's false.

I stand by my prior communications and will keep this one brief.

Best,  
Valery

P.S. If you believe you're missing something my former attorney shared, I suggest checking your correspondence history. I do not waive any rights by declining to re-send it.

Unlawful Recordings 3WGV Active PG0556564

<EXTERNAL>

Hi Ryan,

Sadly didn't tell you that you are not the first lawyer he's directed to threaten me with the Illinois Eavesdropping Act.

He also likely didn't tell you that two days after his most recent emergency order was vacated, he contacted his local police. He asked to meet, in an attempt to concoct criminal charges against me. He again referenced the Illinois Eavesdropping Act.

My lawyers telucated me that the claim was both legally and factually baseless. I reside in Iowa, a one-party consent state. Further, the recording in question was obviously legally captured (not least because... as I'll explain in a moment) and it documents conduct that he now appears to conceal.

The recording your client falsely describes as "surreptitious" is not only lawful, it is a direct contradiction of his version of events, and it documents conduct that he now appears desperate to conceal.

I am not entirely without empathy for your position. I, too, once hoped that... was telling the truth.

But I was not his lawyer.

At this point, you are knowingly advancing a false claim. Continuing to do so may expose you personally to sanctions under Rule 11, and to disciplinary action under Rules 3.1 and 8.4 of the Illinois Rules of Professional Conduct.

Best,  
Valery Almera

From: Jacobsen, Ryan  
<RyanJacobsen@lawfirm.com>  
Sent: Wednesday, June 4, 2025 9:36 PM  
To: Valery Almera <valeryalmera@live.com>  
Cc: Watkins, Demaris  
<DWatkins@lawfirm.com>  
Subject: Re: Unlawful Recordings 3WGV Active PG0556564

Your lawyer if you and this are will educated you who. Ignorance of his being is now.

On Jun 4, 2025, at 7:43 PM, Valery Almera <valeryalmera@live.com> wrote:

Hi Ryan,

Your latest email bears all the hallmarks of a person whose... has directed threat. I've come to recognize the pattern.

The allegation that I secretly recorded your client is false. The audio you reference is not recorded surreptitiously, and your client knows that.

Specifically, the audio in question is from a FaceTime call during which your client demanded I set Aljo dog food on camera. He can be heard yelling at me to adjust the camera angle so he could better view what he instructed me to do. After a compiled, he hung up. When he called back, it was to ask whether I wanted to help him cause: fully what he had scheduled at 5 p.m. When I declined, he became aggressive.

This was not "phone sex." It is evidence. It was recorded in Iowa, a one-party consent state. Even if it had been recorded without his knowledge, which it wasn't, no secretly recorded. He gave visual instructions and remained fully aware of the camera throughout. There is no credible basis to claim the recording was surreptitious.

There is, however, a term for filing false police reports and leveraging knowingly false criminal allegations to silence someone you have wronged. In reality, his instruction to reporting a fictitious crime in order to conceal an actual one, and then again later to appeal his attorney to recover a document he himself deleted from my attorney in tracking these ongoing harassment campaigns. I'm happy to share it, should it assist you in understanding the full pattern.

As for your warning, I understand exactly what it is. I stand by both the premise and its attempt at intimidation.

Valery Almera

From: Jacobsen, Ryan  
<RyanJacobsen@lawfirm.com>  
Sent: Wednesday, June 4, 2025 9:36 AM  
To: Valery Almera <valeryalmera@live.com>  
Cc: Watkins, Demaris  
<DWatkins@lawfirm.com>  
Subject: Unlawful Recordings 3WGV Active PG0556564

Ms. Almera,

I was to be brokerage concern. They contended me (in the... to it our was reporting and a evidence being that your client was unlawful recording from a... in I spoke... prior in of do that now... an in Illinois is to a to a criminal offense under the Illinois Eavesdropping Act. I...