UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE**, an individual by pseudonym | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO:  1:25-cv-02565** |
| | ) | (**HONORABLE JOHN H. THARP JR.**) |
| v. | ) | |
| | ) | |
| **VALERY J. AHRENS**, an individual | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM**

Plaintiff, JOHN DOE (hereinafter, "Plaintiff" or "Doe"), by pseudonym and through his attorneys, Amundsen Davis LLC, submits the following Reply in Support of his Motion for Leave to File his Second Amended Complaint (Doc #22) using a Pseudonym, *nun pro tunc*:

**ARGUMENT**

Plaintiff's claims stem from a malicious pattern of harassment by Defendant including online stalking, defamation, and the distribution of explicit private recordings. Two responses were filed in opposition to Plaintiff litigating his case by pseudonym: the first was initiated by intervenor, Eugene Volokh, a scholar well-known for his polarizing views on pseudonymous litigation and his insistence upon transparency at all costs (Doc. #9); the second was brought by Defendant Ahrens, a *pro se* litigant, who relied heavily on artificial intelligence and online advisors to craft her response.

Ahrens fails to support her brief with a single case or invest time distinguishing the authority relied on by Plaintiff. Volokh also fails to distinguish the case law cited in the Motion. Instead, he speaks generally of the "public's right of access to court proceedings," and casually likens Plaintiff's Motion as an effort to avoid "embarrassment" and consequential "economic harm." Yet, this is far from a "garden variety defamation case," as Volokh's template Motion alludes, underscored by his inapposite and generalized citation to opinions from outside jurisdictions (i.e., North Carolina,

Colorado, Texas, New York, and the District of Columbia). Importantly, Volokh ignores Plaintiff's 56-page Second Amended Complaint, which contains 267 factually-robust paragraphs to support its four distinct causes of action. These very allegations illustrate why *this* legal dispute involving John Doe is exceptional, and why unmasking him is foreseeably dangerous. The intervenor's brief places undue emphasis on the *theoretical* reasons a defamation case should proceed under the party's real names without due attention to the perpetrator, her victim, or the three years of uninterrupted nightmare she put him through.

Though Plaintiff acknowledges the requirement of 'exceptional circumstances' to justify anonymity, this Court must also balance an academic and blanket desire for transparency against exacerbating harm to a Plaintiff, like the one here, who has no alternative but the federal system to protect him from additional, avoidable harm – at least through the close of discovery.

The circumstances making this case 'exceptional' are set forth in the section titled, "Allegations Common to All Counts," Paragraphs 1 through 211 (Doc #22). The actionable conduct is divided into twenty-five incidents collectively labeled, "False Statements." Together, they culminate into claims for Defamation Per Se (Count I), False Light Invasion of Privacy (Count II), Public Disclosure of Private Facts (Count III), and Intentional Infliction of Emotional Distress (Count IV). Doe's Count III, in particular, requires well-pled facts sufficient to demonstrate Doe's reasonable expectation of privacy in connection with sensitive matters broadcast by Ahrens to the public at large without his consent. S*ee Doe v. City of Chicago*, 360 F. 3d 667, 669-670 (7th Cir. 2004) (acknowledging the court's discretion and duty to determine whether the circumstances "justify the departure from the normal method of proceeding in federal courts").

The operative facts detail a multi-year stalking campaign to haunt Doe at every turn. It was spurned by Ahrens' refusal to let Doe's sever ties, and in retaliation for his unwillingness to continue their long-distance sexualized exchanges (by phone and video call). The underlying Motion describes

the sensitive nature of the falsehoods in question, as well as the imminent risk of further retaliation, the objective impact on Plaintiff's physical and mental health, and why the occasional redaction would be woefully ineffectual.

As alleged, Ahrens' goal was to disrupt any meaningful relationship Plaintiff has with other women or professionally, and she seemingly dedicates every waking moment to accomplishing that goal. As alleged, Ahrens used (and continues to use) multiple aliases, fleeting/spoofed telephone numbers, and fictitious social media accounts to harass, stalk, bully, denigrate, and intimidate Plaintiff. Despite Volokh's characterizations, Ahrens' conduct ventures far beyond the publication of a few defamatory characterizations online to embarrass Doe to the public at large; her behavior was diabolical, premeditated, and designed to invade every aspect of the Plaintiff's life and put the fear of God in him, his family, and any romantic partner. No reasonable person in Plaintiff's shoes could endure it without suffering emotional distress.

Also alleged, private and sexual communications between the Parties were secretly recorded by Ahrens without Plaintiff's consent. *See Doe v. Smith*, 412 F. Supp. 2d 944, 945 & 947 (C.D. Ill. 2006); *Doe v. Smith*, 429 F. 3d 706, 710 (7th Cir. 2005). Ahrens' false publicity reached thousands of unsuspecting third parties and were fraught with false claims of rampant drug use, bribery, sexual assault, gender violence, and emotional abuse.

Even after the litigation was served, and once her prior lawyer withdrew, Ahrens' gloves came off. She threatened to publicize intimate details of their phone and video calls to extort a voluntary dismissal. Upon information and reasonable belief, Ahrens even disguised herself as a disinterested 'third-party' who contacted Plaintiff directly hoping to encourage him to drop the lawsuit. Ahrens then tried to circumvent Doe's anonymous designation by providing companion docket numbers knowing they would alert outsiders to his real identity. This prompted a Motion to Seal, which was granted. Soon thereafter, Ahrens exploited the unlawful recordings she made by transcribing them

into responsive pleadings, which prompted an emergency motion for a protected order (which was granted in part). Using his real name, Ahrens recently connected with members of Doe's social circle to convince them Doe was a serial abuser using the justice system to punish a 'survivor' and soliciting their support. Even in her Response to this very Motion, Ahrens knowingly misled the Court with cherry-picked screenshots from Doe's social media account to cast him in a false and unflattering light.

Despite this Court's repeated warnings and rulings, Ahrens publicized Plaintiff's real name and photo online in early July, and she has openly voiced her disdain for the undersigned attorney on the Internet in tandem with an unsuccessful complaint against counsel's law license to the Attorney Registration and Disciplinary Committee (ARDC).

Make no mistake, Ahrens' goal is to exact revenge against anyone whose interests are adverse to hers; and, without an officer of the court to serve as an ethically-bound intermediary, there will be no guardrails preventing Ahrens from using the proceedings to punish Doe further. The unveiling of John Doe will embolden Ahrens to disseminate every public filing and discovery response filed or exchanged in this litigation. She will hide behind the litigation privilege and craft pleadings designed to inflict greater mental distress and deter Plaintiff from continuing to seek redress in this tribunal.

These circumstances are exceptional and warrant the Court's discretion. Plaintiff is a private individual who enjoys a reasonable expectation of privacy notwithstanding his activity on social media. He is not a public figure for 'all purposes,' and no authority has been cited to suggest otherwise. While transparency is a pillar of the federal judicial system, the public interest in knowing the person behind John Doe is minimal where the litigation involves purely private disputes. Likewise, Defendant Ahrens would suffer no prejudice if Plaintiff was able to proceed as a "John Doe" through the close of discovery.

4

All Plaintiff asks at this juncture is that he be permitted to proceed anonymously until the completion of discovery. *See Doe v. Trp Acquisition, Inc.*, 2016 WL 3671505 at *2 (allowing plaintiff to *temporarily* proceed anonymously and agreeing to revisit the issue at a later stage). If, after the close of discovery, the Court finds insufficient evidence to support anonymity, it can order amendment of the complaint and contemporaneous removal of the "John Doe" moniker. Conversely, it would be unjust to require Plaintiff to wait until *after* discovery to show concrete evidence of retaliation, physical/psychological harm, or prove that the safety of Doe and his family is in jeopardy.

**WHEREFORE**, the Plaintiff, **JOHN DOE**, respectfully requests leave to file Plaintiff's Second Amended Complaint (Doc #22) using the pseudonym, "John Doe" in place of the Plaintiff's real name, that such leave be granted *nunc pro tunc*, and with recognition that the anonymous designation may be revisited at the close of discovery.

Respectfully submitted,

*/s/ Ryan B. Jacobson*
*Attorney for Plaintiff*
Ryan B. Jacobson, Esq. (6269994)
Danessa P. Watkins, Esq. (6314234)
AMUNDSEN DAVIS, LLC
150 North Michigan Avenue
Suite 3300 Chicago, Illinois 60601
(312) 894-3200
rjacobson@amundsendavislaw.com
dwatkins@amundsendavislaw.com