## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN CERASANI**, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CASE NO: 1:25-cv-02565** |
| v. | ) | (HONORABLE JOHN H. THARP JR.) |
| | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| | ) | |
| **VALERY J. AHRENS**, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

## THIRD AMENDED COMPLAINT AT LAW

NOW COMES Plaintiff, JOHN CERASANI (hereinafter, "Plaintiff" or "Cerasani"), by and through his attorneys, Amundsen Davis LLC, and for his Third Amended Complaint at Law against Defendant, VALERY J. AHRENS (hereinafter, "Defendant" or "Ahrens"), Plaintiff asserts the following:

### SUMMARY OF ALLEGATIONS AND LEGAL CLAIMS

1.      At all relevant times, the Parties lived in different states and still do today; Ahrens lives in Iowa and the Plaintiff lives in Illinois. In October of 2021, the Parties met online and began trading communications via social media, telephone, and text message.

2.      An objectively casual, long-distance connection developed between the Parties. Most of their exchanges were sexual in nature but were far from romantic. At first, the casual and carnal nature of their remote relationship – including the Defendant's unorthodox fetishes – were intriguing to Plaintiff.

3.      The Parties' relationship eventually took a negative turn; as the Defendant's needs became more perverse, Plaintiff's attraction for Ahrens declined.

4.      Ahrens began sending Plaintiff incessant, unsolicited text messages and sexually explicit videos. She would often voice her frustration when Plaintiff failed to respond swiftly or

share a mutual desire to play along. Ahrens would also send volatile and incoherent text strings reflecting her 'stream of consciousness' in the moment. Defendant's growing obsession with Plaintiff caused him to question her mental stability; the two had never met in person and they knew very little about each other.

5.    The Defendant's behavior became so pervasive that it materially interfered with Plaintiff's daily personal and professional obligations. Plaintiff politely and repeatedly insisted that Ahrens give him space, but to no avail.

6.    It was not until Plaintiff explicitly cut ties with Ahrens that her behavior escalated from annoying to objectively concerning.

7.    The Defendant's unlawful conduct was first discovered in June of 2022, and it persisted well after the first iteration of this lawsuit was filed. Upon information and reasonable belief, Ms. Ahrens (a) used aliases and 'burner'/VoIP phones to harass Plaintiff and others in his close circle; (b) she created fictitious social media accounts incorporating Plaintiff's real name to infiltrate his network; (c) she leveraged the internet to publish countless libelous posts aimed at vilifying and making a mockery of Plaintiff as punishment for 'abandoning' her; and she has (d) solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood and emotional well-being

8.    Ahrens exploited Facebook, Instagram, Reddit, as well as dynamic hashtags and curated 'follows' to maximize her reach. Ahrens's likely goal was to ensure that anyone searching for "John Cerasani" online would stumble upon the accounts she created instead of Plaintiff's authentic ones. Once connected, the Defendant could litter third-party followers with libelous and unfounded accusations about Plaintiff.

9.    Ahrens, often through aliases, misled countless third-parties into believing she had a substantive history with Plaintiff and intimate personal knowledge regarding the 'truths' she was spouting. In reality, the Parties' relationship was fleeting and superficial.

2

10.     The Parties eventually met in person, but it was not until well after the offending conduct began. Ahrens traveled across state lines (from Iowa to Illinois) to lure Plaintiff with sexual favors and convince him to commit to a more substantive relationship. In stark contrast, Plaintiff hoped that an in-person meeting would humanize her perception of him. Plaintiff's goal was to persuade Ahrens to think rationally, disable her online attacks, and agree to part ways amicably.

11.     The Illinois encounter just made matters worse. When Plaintiff refused to engage with Ahrens sexually, the frequency of her online attacks intensified. Ahrens continued to distort facts, omit context, and disseminate lies to make Plaintiff appear to his network as unchaste, a sexual deviant/predator, a drug addict, a serial abuser, a liar, a fraud, a master manipulator, and a criminal. She also falsely accused Plaintiff of bribing law enforcement officials, filing false police reports, and soliciting others to harass and intimidate his victims into silence. Each of these characterizations are patently false and actionable under Illinois law.

12.     To further humiliate Plaintiff, Ahrens publicized certain private, often sexual, telephone exchanges she secretly recorded when the Parties were on good terms. Ahrens manipulated the context to give viewers the false impression Plaintiff was physically abusive. In reality, Plaintiff was more than three hundred miles away from Ahrens when the exchanges took place.

13.     Upon information and belief, the libelous statements and private footage were broadcast to *thousands* of recipients. Plaintiff cannot reasonably measure the scope of the harm caused to him by Ahrens, nor is Plaintiff able to fully assess the damage she caused to his reputation or his earning capacity. Given the *per se* nature of the offending speech, it can be reasonably inferred that many who viewed the derogatory posts fell prey to Ahrens's vengeance-fueled storyline.

14.     Plaintiff has invested countless hours and dollars on damage control. He has been vigilant in trying to (a) flag/remove any offending profiles he could find, (b) research and identify other social media profiles used to attack him, and (c) rehabilitate his character amongst friends,

business associates, romantic partners, and others in his network. Navigating the wreckage has been mentally exhausting, overwhelming, and expensive.

15.     Ahrens knew, or should have known, that her inescapable bullying, online stalking, and harassment of Plaintiff would inflict severe emotional pain, cause a marked decrease in Plaintiff's esteem and mental health, and was likely to disrupt any meaningful relationship Plaintiff had with other women or professionally.

16.     After exhausting all other avenues, Plaintiff brings this civil action against Valery J. Ahrens pursuant to the following state law theories of recovery: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), and **Intentional Infliction of Emotional Distress** (Count IV).

## PARTIES

17.     John Cerasani is a citizen of Illinois with a principal residence located within the boundaries of Cook County and the State of Illinois. Plaintiff is a self-made entrepreneur, author, internet personality, and venture capitalist. Above all, he is a dedicated and loving father.

18.     Valery J. Ahrens is a citizen and resident of Eldora, Iowa.

## JURISDICTION AND VENUE

19.     At all relevant times, Ahrens used (and continues to use) multiple aliases, fleeting/spoofed telephone numbers, and fictitious social media accounts to harass, stalk, bully, denigrate, defame, and intimidate the Plaintiff in his home state, and amongst those in his network who are predominantly residents of this state.

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) where there is complete diversity between Cerasani (Illinois) and Ahrens (Iowa), and where the matter in controversy exceeds a damage value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

21.     This Court has personal jurisdiction over Valery J. Ahrens, and venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. § 1391(b)(2), where Ahrens targeted the Plaintiff in his domicile state of Illinois, and where the principal harm to Plaintiff's reputation occurred within this judicial district. In addition, Ahrens traveled across state lines -- from Iowa to Illinois -- to meet Plaintiff in person so she could lure and entrap him in his home state.

22.     Stating further, Defendant Ahrens previously retained counsel and defended companion Order of Protection proceedings in the State of Illinois, and she has availed herself of the procedural rules, the judicial process, and all accompanying rulings by the judiciary within this State. Upon information and belief, the Defendant never challenged this State's jurisdiction over her in such proceedings.

## ALLEGATIONS COMMON TO ALL COUNTS

23.     At all relevant times, the Parties lived in different states and still do today; Ahrens lives in Iowa and the Plaintiff lives in Illinois. In October of 2021, the Parties met online and began trading communications via social media, telephone, and text message.

24.     An objectively casual, long-distance connection developed between the Parties. Their communications involved sexting, phone conversations, and video calls with a distance of more than three hundred miles between them. Most of their exchanges were sexual in nature and far from romantic.

25.     In fact, Ahrens openly admitted to Cerasani -- who she had never met in person -- that she had a sexual kink for BDSM and degradation, and that she wanted Plaintiff to play along.

26.     This variant of sexual role play is characterized by partners who assume complementary roles premised on an inequality of power. The terms *submissive* and *dominant* are often used to distinguish these roles: the dominant partner takes psychological control over the submissive. BDSM encompasses a spectrum of erotic practices, drawing its name from bondage, discipline (or domination), sadism, and masochism.

27.     Ahrens's obsession with being dominated and degraded centered largely on sexual debasement, and it ranged from wanting to feel demeaned and disrespected verbally, to being ordered (from afar) to participate in consensual sex practices most would find humiliating.

28.     At first, the casual and carnal nature of their remote relationship – including the Defendant's unorthodox fetishes – were intriguing to Plaintiff.

29.     The Parties' relationship eventually took a negative turn. As time went on, the persistency and nature of Ahrens's sexual demands became unbearable and disconcerting to Plaintiff. Plaintiff began to realize -- a bit too late -- that Ahrens had deep-rooted psychological issues. These issues were apparently manifested in being dominated, degraded, and validated by a complete stranger. As the Defendant's needs became more perverse, Plaintiff's attraction for her declined.

30.     Ahrens began sending Plaintiff incessant, unsolicited text messages and sexually explicit videos. She would often voice her frustration when Plaintiff failed to respond swiftly or share in her enthusiasm. Ahrens would reply with volatile and sometimes incoherent text strings reflecting her 'stream of consciousness' in the moment. Ahrens even became jealous and accusatory; she would question Plaintiff about other women he spoke to and inquired into his romantic life as if he was being unfaithful.

31.     Defendant's burgeoning obsession for Plaintiff caused him to question her mental stability; the two had never met in person, and they knew very little about each other. The Defendant had zero appreciation for social and personal boundaries and, like an addictive drug, the less access she had to Plaintiff, the more she craved his attention.

32.     The Defendant's behavior became so pervasive that it materially interfered with Plaintiff's daily personal and professional obligations. Plaintiff politely and repeatedly insisted that Ahrens give him space, but to no avail.

33.     Plaintiff attempted to sever the Parties' relationship in February of 2022. Plaintiff made it clear that he did not want to continue their relationship, and he insisted that Ahrens stop contacting him.

34.     To ensure a clean break, Plaintiff blocked Ahrens's phone number. Ahrens nevertheless continued to reach out -- sometimes dozens of times a day -- using spoofed phone numbers and 'burner phones."  Ahrens refused to sever ties amicably or manage the rejection tactfully.

35.     Ahrens embarked on a retaliatory harassment campaign aimed at punishing Plaintiff for 'prematurely' terminating their relationship. It was difficult to discern whether Ahrens was more obsessed with their lustful banter, or the idea of turning Plaintiff into a committed, romantic partner.

36.     Ahrens created her first "troll account" on Instagram using the handle @johncerasaniisanarcissist. A "troll account" (also known as a "fake account," "sockpuppet account," or "hate account") is a fake or anonymous social media account created to provoke, antagonize, or abuse others, rather than to engage in good-faith communications. Troll accounts violate the terms of service of most social media platforms when used for targeted harassment, bullying, or inauthentic behavior. In some instances, the behavior can rise to a level of cyber harassment or cyberstalking, which is what occurred here. Upon information and belief, the account was created in March of 2022, but Ahrens did not begin posting until June of 2022 after she discovered Plaintiff was in a romantic relationship with another woman.

37.     At first, Ahrens characterized Plaintiff as a womanizer, a narcissist, and a "player," but over the next two and a half years, Defendant's attacks intensified. Ahrens falsely accused Plaintiff of drug abuse, bribery, perjury, filing false police reports, corruption with public officials, having felony DUI convictions, and both physical and sexual assault.

38.     The Defendant's oppressive behavior persists, even to this day. Upon information and reasonable belief, Ahrens (a) used aliases and 'burner'/VoIP phones to harass Plaintiff and others in his close circle; (b) she created fictitious social media accounts incorporating Plaintiff's real name to infiltrate his network; (c) she leveraged the internet to publish countless libelous posts aimed at vilifying and making a mockery of Plaintiff as punishment for 'abandoning' her; and she has (d) solicited and conspired with others to disrupt and compromise Plaintiff's reputation, livelihood and emotional well-being

39.     Ahrens exploited Facebook, Instagram, Reddit, as well as dynamic hashtags and curated 'follows' to maximize her reach. Ahrens's likely goal was to ensure that anyone searching for "John Cerasani" online would stumble upon the accounts she created instead of Plaintiff's authentic ones. Once connected, the Defendant could litter third-party followers with libelous and unfounded accusations about Plaintiff.

40.     Ahrens, often through aliases, misled countless third-parties into believing she had a substantive history with Plaintiff and intimate personal knowledge regarding the 'truths' she was spouting. In reality, the Parties' relationship was fleeting and superficial.

41.     The Parties eventually met in person, but it was not until well after the offending conduct began. Ahrens traveled across state lines (from Iowa to Illinois) to lure Plaintiff with sexual favors and convince him to commit to a more substantive relationship. In stark contrast, Plaintiff hoped that an in-person meeting would humanize her perception of him. Plaintiff's goal was to persuade Ahrens to think rationally, disable her online attacks, and agree to part ways amicably.

42.     The Illinois encounter just made matters worse. When Plaintiff refused to engage with Ahrens sexually, the frequency of her online attacks intensified. Ahrens continued to distort facts, omit context, and disseminate lies to make Plaintiff appear to his network as unchaste, a sexual deviant/predator, a drug addict, a serial abuser, a liar, a fraud, a master manipulator, and a criminal. Ahrens feigned being Plaintiff's abuse victim to garner sympathy from strangers and a sea of

#metoo radicals looking for a scapegoat. She also falsely accused Plaintiff of bribing law enforcement officials, filing false police reports, and soliciting others to harass and intimidate his victims into silence. Each of these characterizations are patently false and actionable under Illinois law.

43.     To further humiliate Plaintiff, Ahrens publicized certain private, often sexual, telephone exchanges she secretly recorded when the Parties were on good terms. Ahrens manipulated the context to give viewers the false impression Plaintiff was physically abusive. In reality, Plaintiff was more than three hundred miles away from Ahrens when the exchanges took place.

44.     Upon information and belief, the libelous statements and private footage were broadcast to *thousands* of recipients. Plaintiff cannot reasonably measure the scope of the harm caused to him by Ahrens, nor is Plaintiff able to fully assess the damage she caused to his reputation or his earning capacity. Given the *per se* nature of the offending speech, it can be reasonably inferred that many who viewed the derogatory posts fell prey to Ahrens's vengeance-fueled storyline.

45.     Despite Plaintiff ending their relationship more than 3 and ½ years ago, Ahrens seems intent on spending the rest of her days on this Earth terrorizing Plaintiff and punishing those who associate with him casually, romantically, or professionally.

46.     Plaintiff has invested countless hours and dollars on damage control. He has been vigilant in trying to (a) flag/remove any offending profiles he could find, (b) research and identify other social media profiles used to attack him, and (c) rehabilitate his character amongst friends, business associates, romantic partners, and others in his network. Navigating the wreckage has been mentally exhausting, overwhelming, and expensive.

47.     Plaintiff first sent the equivalent of a 'cease and desist' letter, followed by a letter to the Defendant's father hoping to alleviate the situation; both were ignored.

48.     Plaintiff sought an Order of Protection against Ahrens -- first *pro se*, then with retained counsel -- believing it could provide swift and effective relief without the greater hardship and expense of federal litigation. On August 16, 2023, Plaintiff presented his Petition for an Emergency Order of Protection; after satisfying his initial burden, the court granted the Order, rendering it immediately effective and enforceable.

49.     The harassment continued unabated. On September 6, 2023, following Plaintiff's report to local law enforcement, Ahrens was arrested and formally charged with Harassment through Electronic Communication. She was released on bond pending prosecution.

50.     Ahrens retained counsel and repeated her falsehoods to secure his sympathy. That attorney subsequently filed a detailed, 33-page Motion to Vacate the Emergency Order of Protection, re-packaging and publicizing Ahrens's original false narrative in a more cohesive and damaging format and paired with exhibits. Ahrens was able to weaponize the legal process to amplify her smear campaign.

51.     It became evident that Defendant, a resident of Iowa, preferred to devote her time and resources to challenging the OP proceedings in Illinois instead of simply leaving Plaintiff alone and moving onward with her life.

52.     The Order of Protection was eventually dismissed on jurisdictional and technical grounds; still, Plaintiff was cautiously optimistic that involving the court system would make Ahrens reconsider whether her actions were worth the consequences.

<u>ACTIONABLE FALSE AND/OR PRIVATE PUBLICATIONS</u>

53.     Plaintiff's optimism was short-lived. In her pursuit to stay relevant in Plaintiff's life, Ahrens created new troll accounts and escalated her libelous and threatening posts within a year of the filing of the original iteration of this lawsuit.

54.     Ahrens used Plaintiff's actual, full name in her Instagram 'handles' to ensure anyone searching for "John Cerasani" online would stumble upon the accounts and the corresponding,

actionable messages. Likewise, Ahrens used the troll accounts to stalk and solicit 'followers,' and to 'follow' other accounts. It is likely that these third-parties suspected the person they 'followed' or that was 'following' them was the Plaintiff himself (or someone acting on his behalf and with his permission).

55.     Upon information and belief, Ahrens methodically studied Plaintiff's every move online using surreptitious accounts. She also paid careful attention to anyone who 'followed' or 'liked' Plaintiff's pages or posts, and then used her fictitious "John Cerasani" accounts to engage with them. Whenever possible, Ahrens would steer the targeted person to one or more of the trolling accounts she created, and then she flooded them with libelous speech about Plaintiff.

56.     Similarly, Ahrens would target, research, and then follow several of Plaintiff's business prospects to interfere with his livelihood and frustrate realistic, revenue-based opportunities. This was especially impactful given Plaintiff's role as an influencer in the lucrative gambling and casino industries.

57.     Ahrens also began to harass and threaten women Plaintiff became acquainted with after stalking his interactions with these women online. The Defendant would then fixate on that woman and research her every move before chastising her physical appearance in a public forum, classify her as one of Plaintiff's 'whores,' and then inundate her with republished, defamatory accusations she had been making about Cerasani since he ended their relationship in 2022.

58.     Ahrens knew, or should have known, that her inescapable bullying, online stalking, and harassment of Plaintiff would cause him severe emotional pain, a marked decrease in his esteem and mental health, and was likely to disrupt any meaningful relationship Plaintiff had with other women or professionally.

59.     Ahrens's sudden fixation on asserting her 'dominance' over Plaintiff's life was disturbingly reminiscent of the very kink she shared with Cerasani when they first met online.

**Instagram - @johncerasaniisweakasswaterfall**

**False Statement #1**

60.     On or about July 3, 2024, Ahrens weaponized a troll account created on Instagram, @johncerasaniisweakasswaterfall, to harass, defame, and intimidate Plaintiff. Using this account, Ahrens digitized and published a private audio message she recorded without Plaintiff's knowledge or consent (collectively, "False Statement No. 1").

61.     Plaintiff had a reasonable expectation that this sexualized audio message would remain private between two, consenting adults.  Plaintiff did not expect Ahrens record their exchange, alter the context, and then republish it *en masse* to individuals and organizations in Plaintiff's network. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

62.     Not only was the call recorded without Plaintiff's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place (instead of on the phone from hundreds of miles away). It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to participate against her will.

63.     The Defendant knew she was misleading listeners by omitting/providing context that would materially distort the truth of what actually transpired (including the consensual nature of their exchange). By doing so, Ahrens knew she would induce her audience to draw false and defamatory conclusions.

64.     For example, the Defendant supplied false context by referring to Plaintiff as a "psychopath" and a "sadist," and she insisted that Plaintiff was trying to silence her from speaking the "truth" (versus an unverifiable opinion or perception).

65.     According to the Diagnostic and Statistical Manual of Mental Disorders (DSM), a "psychopath" is associated with Antisocial Personality Disorder (ASPD) and is characterized by a

pervasive pattern of disregard for, and violation of, the rights of others. It is often accompanied by a lack of remorse/empathy and impulsive or aggressive behavior. A "sadist" is one who derives pleasure from inflicting pain on others, frequently in a sexual context.

66. False Statement No. 1 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### Instagram - @johncerasaniisrancidfarting

67. In <u>January 2025</u>, Ahrens weaponized another troll account on Instagram, @johncerasaniisrancidfarting, which was designed to harass and defame the Plaintiff online and to the public at large:



68. To maximize the reach and impact of her false statements, and to inflict the most damage she could to Plaintiff's reputation, Ahrens connected with numerous other Instagram accounts including casinos, influencer channels, nightlife venues/promoters, celebrities and public figures, as well as another Instagram troll account created by Ahrens for the same purpose, @therealjohncerasanitruth. See, for example:



**False Statement #2**

69. Upon information and reasonable belief, Ahrens broadly publicized unflattering, artificially-generated depictions of the Plaintiff, coupled with provably false characterizations and a private, surreptitiously-recorded audio message. This publication occurred within a year of the filing of the original lawsuit (collectively, "False Statement No. 2"):



70.     The audio clip embedded within the post was materially edited and stripped of critical context. Ahrens's goal was to mislead listeners and lend false credibility to her inflammatory claims. Plaintiff did not expect Ahrens to record their exchange, alter the context, and then republish it *en masse* to individuals and organizations in Plaintiff's network.

71.     Plaintiff had a reasonable expectation that this sexualized audio message would remain private between two, consenting adults. Ahrens's conduct was premeditated in that she secretly recorded and saved the message when the Parties were on good terms in case she needed to exploit it later, which she did.

72.     Beyond violating Plaintiff's reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

73.     Not only was the call recorded without Plaintiff's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place (instead of on the phone from hundreds of miles away). It also misled the listener into believing some

15

physical, sexual act occurred between the Parties in person, and that Ahrens was forced to participate against her will.

74. The Defendant knew she was misleading listeners by omitting/providing context that would materially distort the truth of what actually transpired (including the consensual nature of their exchange). By doing so, Ahrens knew she would induce her audience to draw false and defamatory conclusions.

75. Reasonably construed, False Statement No. 2 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of being corrupt, bribing a law enforcement official, concealing evidence in conspiracy with the police, filing a false police report, committing perjury, and being a sexual predator. Ahrens also false labels herself one of Plaintiff's victims and a "survivor."

76. The post contains assertions of false facts, and not opinions, which are underscored by Ahrens's supporting hashtags, *inter alia*, #predator, #abuser, #truth, #truthbetold, #truthalwayscomesout, #believesurvivors, #perjury, and #falsepolicereports.

77. In Illinois, predatory conduct against women is addressed through multiple statutes, including those prohibiting criminal sexual assault, sexual harassment, and abuse. Criminal sexual assault occurs when an act of sexual penetration is committed through force or threat of force, or when the victim is unable to consent. "Abuse" is broadly defined to include physical, sexual, emotional, economic, psychological, and technological harm. Depending on the circumstances, such conduct may constitute a felony punishable by incarceration.

78. Under Illinois law, specifically 720 ILCS 5/26-1(a)(4), a person commits the offense of filing a false police report when they knowingly make a false statement to law enforcement regarding the commission of a crime. Depending on the circumstances, a violation of this statute may constitute a felony punishable by incarceration.

79.     In Illinois, bribery of a law enforcement official is a Class 2 felony under 720 ILCS 5/33-1. A conviction may result in imprisonment, substantial fines, and other criminal penalties. Such conduct also violates federal anti-corruption statutes designed to preserve governmental integrity, transparency, and fairness.

80.     Perjury is defined in 720 ILCS 5/32-2 of the Illinois Criminal Code, which makes it a Class 3 felony to make knowingly false statement under oath or affirmation.

81.     Conspiracy with a law enforcement official can violate federal and state laws. 18 U.S.C. § 241 prohibits conspiring to injure, threaten, or intimidate someone based on their constitutional rights.

82.     Likewise, concealing evidence is a crime in Illinois and is considered an obstruction of justice. Under 720 ILCS 5/31, it is illegal to obstruct justice by destroying, concealing, altering, or disguising evidence. It is also illegal to obstruct justice by planting false evidence or providing false information. A violation is punishable by imprisonment for one to three years.

83.     False Statement No. 2 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

## False Statement #3

84.     Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Plaintiff within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 3"):



85.     Reasonably construed, False Statement No. 3 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of filing a false police report in violation of 720 ILCS 5/26-1(a)(4), which is underscored by the hashtags #felonies and #legalabuse.

86.     Ahrens also referred to Plaintiff as "Cocaine John," falsely imputing to him habitual drug use and possession of a controlled substance. In Illinois, possession of as little as 15 grams of cocaine constitutes a Class 4 felony, punishable by one to three years' imprisonment and a fine of up to $25,000.

87.     Upon information and belief, False Statement No. 2 received 'likes' and 'comments' from at least one of Ahrens's other troll accounts, @therealjohncerasanianswers, which replied

"wow." The fabricated dialogue falsely suggested to the public that others were shocked and appalled by Plaintiff's criminal behavior.

88.    The creation and interplay between the Defendant's *own* troll accounts gave the public the false impression that independent users were engaged in the discussion. The artificial appearance that 'people were talking' amplified the impact of the defamatory content and underscored the lengths Ahrens was willing to go to hurt Cerasani.

89.    False Statement No. 3 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### False Statement #4

90.    Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Plaintiff within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 4"):



91.     Reasonably construed, False Statement No. 4 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of orchestrating bot attacks of "accounts [Cerasani] doesn't like," including "manipulating platforms" to silence his adversaries. Ahrens labels Plaintiff's conduct as not just "pathetic," but also "criminal." She reinforces her characterization of Plaintiff by appending the hashtags, #exposed and #accountability to lend false credibility to her assertions. The characterizations are patently false.

92.     Bot attacks are malicious activities executed on network systems through automated programs ("bots" or "scripts"). These bots can mimic human behavior and perform tasks such as scanning for vulnerabilities, sending spam, brute-forcing passwords, and other unauthorized actions.

93.     The purpose of a bot attack is to obtain unlawful benefits, disrupt normal network operations, or steal sensitive information. These attacks are often executed on a large scale through automation; attackers can target numerous victims in a short span of time. Bot attacks pose a serious security threat to individuals, organizations, and the broader network ecosystem.

94.     The Defendant also referred to Plaintiff as "Cocaine John," as a "pathological liar," and it included reference to Plaintiff "lying" to the court about evidence while on a "crime spree." Ahrens also claimed Plaintiff's criminal behavior triggered the FBI's involvement. This post implicates Plaintiff with possession of a controlled substance, perjury, concealing evidence, and being subjected to a federal criminal investigation and/or indictment. The characterizations are also patently false.

95.     False Statement No. 4 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #5**

96.     Upon information and reasonable belief, Ahrens broadly publicized unflattering, artificially-generated depictions of the Plaintiff and his then-girlfriend, coupled with provably false characterizations. The following false statements were published within a year of the filing of the original lawsuit (collectively, "False Statement No. 5"):



97.     Reasonably construed, False Statement No. 5 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of directing bot attacks, in which "the Feds" are likely aware.

98.     The defamatory content is reinforced by numerous, explicit hashtags indicating Plaintiff has committed crimes, is mentally unfit and incompetent, and has violated another's civil rights. Those hashtags include, *inter alia*, #sociopath, #psychopath, #addicts, #civilrightsviolations, #aggravatedharassment, #personalitydisorders, #flipafakecointodecidewhichcrimestocommityay, and others.

99.     In context, the above hashtags falsely implicate Plaintiff in criminal civil rights violations, suggesting that he interfered with and deprived another of liberties and rights guaranteed under the Constitution and/or federal law.  Likewise, under Illinois law, aggravated harassment -- a Class 3 felony -- encompasses intimidation or stalking and carries penalties ranging from two to ten years' imprisonment. Moreover, Ahrens's reference to Cerasani as both a "psychopath" and a "sociopath" falsely imputes a diagnosis of ASPD, along with traits consistent with a lack of remorse or empathy and impulsive or aggressive behavior. The characterizations are patently false.

100.     False Statement No. 5 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

<u>**False Statement #6**</u>

101.     Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Plaintiff within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 6"):



102. Reasonably construed, False Statement No. 6 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it accuses Plaintiff of orchestrating bot attacks, filing false police reports, abusing cocaine and women, being under FBI investigation, and facing imminent federal indictment. Moreover, Ahrens's reference to Cerasani as a "psychopath" and a "stalker" falsely imputes a diagnosis of ASPD, along with traits consistent with a lack of remorse or empathy and impulsive or aggressive behavior. The characterizations are patently false.

103. False Statement No. 6 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #7**

104. Upon information and reasonable belief, Ahrens broadly publicized unflattering, artificially-generated depictions of the Plaintiff, coupled with provably false characterizations. The following false statements were published within a year of the filing of the original lawsuit (collectively, "False Statement No. 7"):



105. Reasonably construed, False Statement No. 7 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of

creating a fraudulent social media account to stalk a celebrity, filing false police reports, and using/abusing cocaine and women.

106.    False Statement No. 7 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### False Statement #8

107.    Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Plaintiff within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 8"):



108.    Defendant created a fictitious billboard bearing the emboldened, all-capitalized statement: "JOHN CERASANI FILES FALSE POLICE REPORTS!" To reinforce her intended meaning, Ahrens incudes hashtags including #thatisacrime, #afelonyactually, #somultiplefeloniesnow, #multiplemultiplefelonies, among others.

109.    Reasonably construed, False Statement No. 8 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Under 720 ILCS 5/26-1(a)(4),

filing a false police report occurs when a person knowingly makes a false statement to law enforcement about a crime, which, in some cases, constitutes a felony punishable by incarceration.

110.     False Statement No. 8 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

<strong><u>False Statement #9</u></strong>

111.     Upon information and reasonable belief, Ahrens also published the following, provably false characterizations concerning Plaintiff within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 9"):



112.     Contained therein is a screenshot of a text exchange between two parties. Upon information and belief, the dialogue was fabricated by Ahrens to appear as if two independent persons were engaged in a legitimate text exchange about Plaintiff. Ahrens even refers to "V" (aka

Valery) to mislead visitors into believing someone other than the Defendant participated in creating the post. Once republished, the above screenshot falsely suggested to the public that third-parties were shocked and appalled by Plaintiff's criminal behavior. The artificial appearance that 'people were talking' amplified the impact of the defamatory content and underscored the lengths Ahrens was willing to go to hurt Cerasani.

113.    Reasonably construed, False Statement No. 9 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicated Plaintiff of conspiring with and bribing law enforcement officials, filing false police reports to silence women who speak out about his abuse and crimes, and committing perjury. These characterizations are patently false.

114.    Conspiracy with a law enforcement official can violate federal and state laws. 18 U.S.C. § 241 prohibits conspiring to injure, threaten, or intimidate someone based on their constitutional rights. Bribery of a law enforcement official is a Class 2 felony under 720 ILCS 5/33-1. Under 720 ILCS 5/26-1(a)(4), knowingly making a false statement to law enforcement about a crime may constitute a felony punishable by incarceration. Perjury is defined in 720 ILCS 5/32-2 of the Illinois Criminal Code, which makes it a Class 3 felony to make knowingly false statement under oath or affirmation.

115.    In addition, it is alleged that he created and exploited a fraudulent social media account using "bots" to ban the accounts of people who "speak truth about his crimes and abuse of women." This accusation is patently false. The purpose of a bot attack is to obtain unlawful benefits, disrupt normal network operations, or steal sensitive information. Bot attacks pose a serious security threat to individuals, organizations, and the broader network ecosystem.

116.    False Statement No. 9 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**Instagram - @johncerasanipublicrecord**

117.    In <u>January 2025</u>, Ahrens weaponized another troll account created on Instagram, @johncerasanipublicrecord, which was designed to harass and defame the Plaintiff online and to the public at large.



118.    To maximize the reach and impact of her false statements, and to inflict maximum harm on Plaintiff's reputation, Ahrens used this troll account to engage with and 'follow' multiple celebrity accounts. She also employed dynamic hashtags. Ahrens's goal was to amplify any publicity tied to defamatory content published from this account.

**False Statement #10**

119.    Upon information and reasonable belief, Ahrens broadly publicized unflattering, artificially-generated depictions of Plaintiff and an unidentified police officer, coupled with provably false characterizations about Plaintiff. This publication occurred within a year of the filing of the original lawsuit (collectively, "False Statement No. 10"):



120.    Reasonably construed, False Statement No. 10 falsely imputes to Plaintiff the commission of "multiple crimes" sufficient to impose *per se* liability. Namely, it implicates Plaintiff of bribing a law enforcement official, concealing evidence, and filing a false police report. Ahrens reinforces the defamatory content with related hashtags, including #meatbribes, #falsepolicereports, #speaktruth, and others.

121.    In Illinois, bribery of a law enforcement official (720 ILCS 5/33-1), obstruction of justice through concealing or falsifying evidence (720 ILCS 5/31), and knowingly filing a false police report (720 ILCS 5/26-1(a)(4)) are felony offenses punishable by incarceration and substantial fines.

122.    False Statement No. 10 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

## False Statement #11

123.    Upon information and reasonable belief, Ahrens widely disseminated the following unflattering, artificially-generated depiction of Plaintiff and an unidentified  police officer, supported

by provably false characterizations. This publication occurred within a year of the filing of the original lawsuit (collectively, "False Statement No. 11"):



124. Reasonably construed, False Statement No. 11 falsely imputes to Plaintiff the commission of "multiple crimes" sufficient to impose *per se* liability. Namely, it implicates Plaintiff of filing false police reports and committing "another federal crime." To underscore her criminal implications, Ahrens uses the hashtags, #falsepolicereports and #corruption, among others.

125. In Illinois, bribery of a law enforcement official (720 ILCS 5/33-1) and knowingly filing a false police report (720 ILCS 5/26-1(a)(4)) are felony offenses punishable by incarceration and substantial fines.

126. Corruption, which is alleged by hashtag, involves a dishonest, fraudulent, and potentially criminal act (i.e., bribery, embezzlement, extortion, etc.) of an individual using entrusted authority or power to obtain a personal gain or other unethical or illegal benefits.

127. Ahrens also referred to Plaintiff as "Cocaine John," falsely imputing to him habitual drug use and possession of a controlled substance. In Illinois, possession of as little as 15 grams of

cocaine constitutes a Class 4 felony, punishable by one to three years' imprisonment and a fine of up to $25,000.

128.    To maximize the reach of her defamatory post, Ahrens used several hashtags 'tagging' suburban villages and towns located adjacent to where the Plaintiff lives. Ahrens even 'likes' the False Statement No. 11 using Ahrens's other troll accounts, @therealjohncerasanianswers.

129.    False Statement No. 11 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### Instagram - @johncerasanicourtloser

130.    In January 2025, the Defendant created another troll account using Instagram, @johncerasanicourtloser, which was designed to harass and defame the Plaintiff online and to the public at large:



131.    To maximize the reach and impact of her false statements, and to inflict maximum harm on Plaintiff's reputation, Ahrens used this troll account to engage with and 'follow' multiple third-party accounts. She also employed dynamic hashtags. Ahrens's goal was to amplify any publicity tied to defamatory content published from this account.

**False Statement #12**

132.     Upon information and reasonable belief, Ahrens widely disseminated the following provably false characterizations about Plaintiff, along with a private, surreptitiously-recorded audio message. Ahrens even refers to "V" (aka Valery) to mislead visitors into believing someone other than the Defendant participated in creating the post. This publication occurred within a year of the filing of the original lawsuit (collectively, "False Statement No. 12"):



133.     Reasonably construed, False Statement No. 12 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of destroying evidence of his "many, many crimes."  Destroying evidence is a crime in Illinois and is considered an obstruction of justice. Under 720 ILCS 5/31, it is illegal to obstruct justice by destroying, concealing, altering, or disguising evidence. It is also illegal to obstruct justice by planting

false evidence or providing false information. A violation is punishable by imprisonment for one to three years.

134.    In addition, the audio clip embedded within the post was materially edited and stripped of critical context. Ahrens's goal was to mislead listeners and lend false credibility to her inflammatory claims. Plaintiff did not expect Ahrens to record their exchange, alter the context, and then republish it *en masse* to individuals and organizations in Plaintiff's network.

135.    Plaintiff had a reasonable expectation that this sexualized audio message would remain private between two, consenting adults. Ahrens's conduct was premeditated in that she secretly recorded and saved the message when the Parties were on good terms in case she needed to exploit it later, which she did. Beyond violating Plaintiff's reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

136.    Not only was the call recorded without Plaintiff's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place (instead of on the phone from hundreds of miles away). It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to participate against her will.

137.    The Defendant knew she was misleading listeners by omitting/providing context that would materially distort the truth of what actually transpired (including the consensual nature of their exchange). By doing so, Ahrens knew she would induce her audience to draw false and defamatory conclusions.

138.    False Statement No. 12 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**Instagram - @therealjohncerasanianswers**

139.    In <u>January 2025</u>, the Defendant created yet another troll account using Instagram, @therealjohncerasanianswers, which was designed to harass and defame the Plaintiff online and to the public at large.



140.    To maximize the reach and impact of her false statements, and to inflict maximum harm on Plaintiff's reputation, Ahrens used this troll account to engage with and 'follow' multiple third-party accounts. She also employed dynamic hashtags. Ahrens's goal was to amplify any publicity tied to defamatory content published from this account.

**False Statement #13**

141.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of the original Complaint at Law (collectively, "False Statement No. 13"):



142.     Reasonably construed, False Statement No. 13 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," "drunk driving," blaming others for his crimes, "hid[ing] his crimes," "attack[ing] and hurt[ing] women," and related "predatory" and "psychotic" behavior, which she insists "WILL escalate."

143.     Ahrens reinforces her post with dynamic hashtags including #abuser, #npdsurvivors, #sociopath, #psychopath, #abuse, #liarsalwaysgetcaught, and others. False Statement No. 13 is also published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

144.     False Statement No. 13 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #14**

145.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of the original Complaint at Law (collectively, "False Statement No. 14"):



146.     Reasonably construed, False Statement No. 14 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," that his "crimes WILL be exposed," and that Plaintiff is "desperately committing more crimes trying to silence everyone who speaks the truth about him."

147.     Ahrens reinforces her post with dynamic hashtags. False Statement No. 14 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized within her post that Plaintiff is "concerned about [the] TRUTH being exposed" (emphasis in original).

148.     False Statement No. 14 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #15**

149.     Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of the original Complaint at Law (collectively, "False Statement No. 15"):



150.     Reasonably construed, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," committing "perjury," lying to the court, filing "false police reports," "legal abuse," acting in complicity with the police, and it suggests he has a "long, and growing, criminal history" that include

"DUIs"" and "drug abuse." Ahrens boldly asserts there is evidence of his "cowardly, malicious crimes," which Plaintiff is desperate to conceal.

151.  False Statement No. 15 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized within her post that Plaintiff's efforts to "harm and silence those who speak truth," are a "criminal act of grave concern."

152.  False Statement No. 15 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #16**

153.  Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of the original Complaint at Law (collectively, "False Statement No. 16"):



154.    Reasonably construed, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," committing "perjury," lying to the court, filing "false police reports," "legal abuse," acting in complicity with the police, and it suggests he has a "long, and growing, criminal history" that include "DUIs"" and "drug abuse." Ahrens boldly asserts there is evidence of his "cowardly, malicious crimes," which Plaintiff is desperate to conceal.

155.    False Statement No. 16 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized within her post that Plaintiff's efforts to "harm and silence those who speak truth," are a "criminal act of grave concern."

156.    False Statement No. 16 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #17**

157.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of the original Complaint at Law (collectively, "False Statement No. 17"):



158.    Reasonably construed, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," perpetrating serial abuse including "sadistic abuse" and abuse of the legal system, that he is engaged in corruption with law enforcement officials, and that "people who don't help him to hurt women 'deserve what is coming to them.'"

159.    False Statement No. 17 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized within her post that Plaintiff "is desperately trying to hide the truth. But the truth is what it is. He might as well be trying to hide the sun."

160.    False Statement No. 17 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #18**

161.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 18"):



162.    Reasonably construed and in its proper context, the offending image and corresponding post created/authored by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," that he is a "predator" with a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help," that he is a "sadistic abuser," that he is intent on finding a "deeply corrupt" police officer who will be "fully complicit," that Plaintiff has filed "objectively false, malicious police reports," and that corrupt cops have helped Plaintiff "delete evidence of his crimes."

163.     False     Statement     No.     18     is     published     using     a     troll     account     titled,
@therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that
she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is
vouching for the veracity of her assertions.

164.     Likewise, Ahrens emphasized her intentions to defame Plaintiff to the public at large:
"ALL of [Plaintiff's] efforts to weaponize what is now multiple cops and multiple courts will be
documented, reported, and publicized."

165.     False Statement No. 18 consists of multiple false and defamatory assertions of fact
that are not entitled to First Amendment protection and are neither privileged, capable of an
innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #19**

166.     Upon information and reasonable belief, Ahrens posted the following provably false
characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's
original  Complaint at Law (collectively, "False Statement No. 19"):



167. Reasonably construed, False Statement No. 19 falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," that he uses "law enforcement to intimidate and silence women he has abused," and those officers complicit with Plaintiff "have been reported for misconduct."

168. Ahrens's comments posted adjacent to the image she created falsely characterizes Plaintiff as a "predator" and "sadistic abuser," who enjoys a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help," that he wants a "deeply corrupt" police officer who will be "fully complicit," that Plaintiff has filed "objectively false, malicious police reports," and that corrupt cops have helped Plaintiff "delete evidence of his crimes."

169. False Statement No. 19 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation and is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

170. Likewise, Ahrens emphasized her intentions to defame Plaintiff to the public at large: "ALL of [Plaintiff's] efforts to weaponize what is now multiple cops and multiple courts will be documented, reported, and publicized."

171. False Statement No. 19 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #20**

172. Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 20"):



173.    Reasonably construed, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," that he uses "law enforcement as a tool to reinforce his power," that he weaponizes the law to exact personal vendettas, and Ahrens cautions anyone associated with Plaintiff that they will suffer "damage to [their] reputation," because his "unethical behavior can tarnish [their] professional record, erode community trust, and expose [them] to disciplinary action or legal consequences."

174.    Ahrens's comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser," who enjoys a "long history of abusing women and threatening them not to call the police on him to report his abuse and seek help." It goes on to say that Plaintiff wants a "deeply corrupt" police officer who will be "fully complicit," that Plaintiff has filed "objectively false, malicious police reports," and that corrupt police officers have helped Plaintiff "delete evidence of his crimes."

43

175.    False Statement No. 20 is published using the troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

176.    Likewise, Ahrens emphasized her intentions to defame Plaintiff to the public at large: "ALL of [Plaintiff's] efforts to weaponize what is now multiple cops and multiple courts will be documented, reported, and publicized."

177.    False Statement No. 20 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #21**

178.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 21"):



179. Reasonably construed, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," and that "[many] survivors report harassment, false allegations, and other retaliatory tactics when they defy [Plaintiff]." Ahrens cautions readers that their "involvement would perpetuate their victimization."

180. Ahrens's comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Plaintiff "delete evidence of his crimes."

181. Moreover, the Defendant reinforces her libelous content with dynamic hashtags crafted to enhance publicity of the post and maximize the harm to Plaintiff; these include #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

182. False Statement No. 21 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized her intentions to defame Plaintiff to the public at large: "ALL of [Plaintiff's] efforts to weaponize what is now multiple cops and multiple courts will be documented, reported, and publicized."

183. False Statement No. 21 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #22**

184. Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 22"):



185. Reasonably construed, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," that helping Plaintiff "misuse[s] the justice system could constitute misconduct, obstruction of justice, or abuse of power."

186. Ahrens's comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Plaintiff "delete evidence of his crimes."

187. Moreover, the Defendant reinforces her libelous content with dynamic hashtags crafted to enhance publicity of the post and maximize the harm to Plaintiff; these include #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

188. False Statement No. 22 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions. Likewise, Ahrens emphasized her intentions to defame

Plaintiff to the public at large: "ALL of [Plaintiff's] efforts to weaponize what is no multiple cops and multiple courts will be documented, reported, and publicized."

189.   False Statement No. 22 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### False Statement #23

190.   Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 23"):



191.   Reasonably construed, the offending image created by Ahrens falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of using and possessing "cocaine," and that "[o]fficers who assist abusers like Cocaine John risk being named in complaints, investigations, and lawsuits." The post goes on to say, "[i]f you

suspect [Plaintiff's] requests are retaliatory or unethical, document everything and report it to you superiors or internal affairs."

192.     Ahrens's comments posted adjacent to the image unreasonably characterize Plaintiff as a "predator" and "sadistic abuser" who has filed "objectively false, malicious police reports," and that corrupt police officers have helped Plaintiff "delete evidence of his crimes."

193.     Moreover, the Defendant reinforces her libelous content with dynamic hashtags crafted to enhance publicity of the post and maximize the harm to Plaintiff; these include #predator, #legalabuse, #pathologicalliar, #truthalwayscomesout, and #litigationabuse.

194.     False Statement No. 23 is published using a troll account titled, @therealjohncerasanianswers, which indicates that Ahrens is speaking with personal knowledge, that she has done a diligent investigation, that she is in possession of irrefutable evidence, and that she is vouching for the veracity of her assertions.

195.     Likewise, Ahrens emphasized her intentions to defame Plaintiff to the public at large: "ALL of [Plaintiff's] efforts to weaponize what is now multiple cops and multiple courts will be documented, reported, and publicized."

196.     False Statement No. 23 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

**False Statement #24**

197.     On or about January 11, 2025, weaponized a troll account created on Instagram, @therealjohncerasanitruth, to harass, defame, and intimidate Plaintiff. Using this account, Ahrens digitized and published a private audio message she recorded without Plaintiff's knowledge or consent (collectively, "False Statement No. 24").

198.     Plaintiff had a reasonable expectation that this sexualized audio message would remain private between two, consenting adults.  Plaintiff did not expect Ahrens record their

exchange, alter the context, and then republish it *en masse* to individuals and organizations in Plaintiff's network. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

199.    Not only was the call recorded without Plaintiff's consent, but it also misled the listener into believing the Parties were in the same room when the conversation took place (instead of on the phone from hundreds of miles away). It also misled the listener into believing some physical, sexual act occurred between the Parties in person, and that Ahrens was forced to participate against her will.

200.    The Defendant knew she was misleading listeners by omitting/providing context that would materially distort the truth of what actually transpired (including the consensual nature of their exchange). By doing so, Ahrens knew she would induce her audience to draw false and defamatory conclusions.

201.    False Statement No. 24 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

### Reddit - @SuccotashMajor5107

### **False Statement #25**

202.    Upon information and reasonable belief, Ahrens posted the following provably false characterizations concerning Plaintiff, which were published within a year of the filing of Plaintiff's original Complaint at Law (collectively, "False Statement No. 25"):



SuccotashMajor5107 · 10mo ago

This guy is psychotic! He tries to terrorize women who speak out about him and his crazy abuse.

I know a lot because he has been filing CRAZY crap in various courts trying to silence a friend of a friend of mine for the past year. She's fighting back.

This gal has an Insta account but he keeps trying to shut that down. Search by his name on there. To find her (and the truth about him), scroll past fake accounts he made to try to hide/bury hers. (John Cerasani is a rich man, the GOAT, etc. very obvious).

If anyone wants to know more or can help her, even to help make the truth public, I can provide contact info. Or give her a follow on Insta and I think she usually replies. He has fake accounts, crazy women, and cops he tries to befriend and do 'business' with harassing her constantly though, so she has to vet her DMs.

⇧ 2 ⇩    ⤷ Share    ···

203.    Reasonably construed, the offending post created/authored by Ahrens (despite framing it in the third person) falsely imputes to Plaintiff the commission of multiple crimes sufficient to impose *per se* liability. Namely, it implicates Plaintiff of terrorizing/harassing women who speak out about his abuse, and that he uses fraudulent online accounts to do so.

204.    In Illinois, harassment by electronic means, as defined in 720 ILCS 5/26.5-3, involves using electronic communication to knowingly make obscene comments or to threaten, harass, intimidate, or annoy another person. This includes actions like sending threatening messages, using social media to harass, or making repeated unwanted phone calls. Harassment by electronic means is a Class 4 felony in Illinois, carrying a potential prison sentence of 1 to 3 years and fines of up to $25,000. Ironically, this is the same crime perpetrated by Ahrens against Cerasani for more than three years.

205.    Ahrens attempted to bolster the perceived truth of her statements by inventing a fictitious third-person to verify that Plaintiff was attempting to silence "a friend of a friend" of hers. This fabricated individual purports to "know a lot" (i.e., has personal knowledge) and urges the Reddit audience to search for Plaintiff's name online to learn the "the truth about [Cerasani]," and to assist the fictitious victim in making "the truth public."

50

206.     False Statement No. 25 consists of multiple false and defamatory assertions of fact that are not entitled to First Amendment protection and are neither privileged, capable of an innocent construction, nor susceptible to treatment as non-actionable opinion.

COMBINED FALSE AND/OR PRIVATE PUBLICATIONS

207.     Upon information and belief, Ahrens republished the statements and private information/recordings contained in False Statement Nos. 1 through 25 to third parties, exploiting the reach and speed of the internet and social media (collectively, the "False Statements"). False Statement Nos. 1, 2, 12 and 24 are collectively referred to as, the "Private Recordings."

208.     Ahrens knew or should have known that the scope and manner of her publication of the False Statements would render Plaintiff powerless to mitigate the damage to his reputation and valued relationships.

209.     Upon information and reasonable belief, Ahrens continues to widely disseminate the False Statements, which include the Private Recordings, as well as other offending speech that is inherently hidden and undiscoverable. Plaintiff's investigation continues.

210.     Plaintiff has no means of determining who saw or believed some or all of Defendant's False Statements, nor can he accurately gauge the identity, scope, or number of individuals affected by her falsehoods.

211.     Having exhausted all other avenues, Plaintiff initiated this action to defend his reputation, challenge false accusations made by an unstable woman he met online, and put an end to Ahrens's escalating and vindictive conduct. Plaintiff asserts the following state law claims against Defendant: **Defamation *Per Se*** (Count I), **False Light Invasion of Privacy** (Count II), **Public Disclosure of Private Facts** (Count III), and **Intentional Infliction of Emotional Distress** (Count IV).

## COUNT I
## DEFAMATION PER SE

212.     The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 211, as if fully restated in this Paragraph 212 of Count I.

213.     Plaintiff is a self-made entrepreneur, author, internet personality, and venture capitalist. Above all, he is a dedicated and loving father.

214.     Ahrens, fully aware of Plaintiff's public and personal standing, orchestrated a calculated attack to destroy his reputation, exploiting the reach of the internet -- and social media in particular -- to target a wide and impressionable audience.

215.     Ahrens embarked on a retaliatory harassment campaign to punish Plaintiff for 'prematurely' ending their relationship. She fabricated a web of lies intent on destroying Plaintiff's reputation and undermine his expansive personal and professional network.

216.     Defendant's False Statements were crafted in such a way to elicit sympathy and provoke condemnation. Ahrens knew (or reasonably expected) that Plaintiff's contacts would sever ties, and that adversaries might exploit the false publicity for their own agendas.

217.     Ahrens publicized the False Statements to the public at large, and upon information and belief, she enlisted others to republish an equally false narrative to maximize the harm to Plaintiff's reputation and well-being.

218.     Through her publication of the False Statements, Ahrens misled the public into accepting the following *per se* defamatory characterizations as true:

(a)     That Plaintiff harassed and has physically and sexually abused and assaulted multiple women, including Ahrens;

(b)     That Plaintiff engages in, or directs others to engage in, threatening conduct -- including stalking and harassment -- to intimidate and silence his alleged victims, including Ahrens;

(c)     That Plaintiff is corrupt (or engages in corrupt activities) by bribing public officials and/or conspiring with corrupt members of law enforcement to obstruct justice, conceal crimes, destroy evidence, and abuse women, including Ahrens;

(d)    That Plaintiff has committed numerous felonies and is a serial offender and a felon;

(e)    That Plaintiff is emotionally volatile, evil, unscrupulous, violent, dangerous, and unethical; and

(f)    That Plaintiff is unchaste, immoral, and promiscuous, and he has knowingly committed adultery and non-consensual sexual conduct with numerous women, including Ahrens.

219.    Any reasonable reader or listener would understand that the False Statements were about and concerning Plaintiff.

220.    Ahrens knowingly lied, manipulated facts, and distorted reality when she publicized the False Statements about Plaintiff to third parties via the internet and on social media.

221.    The False Statements contain multiple false and defamatory factual assertions that are not shielded by the First Amendment and cannot be insulated by privilege, innocently construed, or considered non-actionable opinion.

222.    Reasonably understood, the Defendant's False Statements constitute *per se* defamation where her false publicity amounted to (a) an implication that Plaintiff is guilty of reprehensible and indictable criminal conduct; and (b) a false impression that Plaintiff is unchaste, immoral, promiscuous, and has knowingly engaged in adultery.

223.    Defendant's fabrication and publication of the False Statements were made with actual malice; that is, with knowledge of their falsity or, alternatively, with reckless disregard for their truth.

224.    Ahrens knew the False Statements she made concerning Plaintiff were false when she published them online, or alternatively, acted with reckless disregard for their veracity based on, *inter alia:*

(a)    Ahrens never possessed any uncontroverted, first-hand knowledge to support any or all of the False Statements before she disseminated them to the public at large;

(b)     Ahrens never possessed any tangible or documentary evidence demonstrating the veracity of any or all of the False Statements before she disseminated them to the public at large;

(c)     No court of competent jurisdiction, tribunal, prosecutorial authority, or governing body have ever found Plaintiff responsible or liable for any of the criminal accusations contained within the False Statements;

(d)     Ahrens never thought to consult (or forewarn) Plaintiff so that she could make an informed and careful decision before giving the False Statements broad publicity on the Internet and elsewhere; and

(e)     Ahrens knew or should have expected the irreversible reputational harm they would cause to Plaintiff by creating, and then publicizing, unsubstantiated gossip, unproven allegations, or blanket assumptions without evidence.

225.    The Defendant exhibited a reckless disregard for the deleterious effect these False Statements would have on Plaintiff's reputation and in the eyes of his friends and family, as well as his existing and prospective professional contacts.

226.    Plaintiff knew or should have known that the false publicity she spread online was likely to be believed and/or cause consternation among those who found Ahrens credible.

227.    No reasonable reader or listener would believe that a person, let alone Ahrens, would fabricate such egregious accusations without possessing firsthand knowledge to substantiate them.

228.    Defendant, intent on destroying Plaintiff's good name, took deliberate measures to make the False Statements appear credible -- even to those close to Plaintiff who had no reason to believe an unknown woman or question Plaintiff's ethics or morality.

229.    Ahrens crafted the False Statements, paired them with dynamic hashtags, and tagged celebrities, public figures, industry leaders, and other influential individuals and organizations to maximize publicity and ensure her baseless attacks against Plaintiff went viral and were impactful.

230.    Defendant knew, or with substantial certainty should have known, that her lascivious and sensationalized accusations would fuel gossip, particularly given Plaintiff's public persona and online image as a playful antagonist.

231.     Upon information and reasonable belief, Ahrens continues to widely disseminate the False Statements, which include the Private Recordings, as well as other offending speech that is inherently hidden and undiscoverable. Plaintiff's investigation continues.

232.     Plaintiff has no means of determining who saw or believed some or all of Defendant's False Statements, nor can he accurately gauge the identity, scope, or number of individuals affected by her falsehoods.

233.     Ahrens's actionable speech infiltrated Plaintiff's personal and professional circles, subjected him to undue ridicule, and continues to have a demonstrable adverse impact on his esteemed career, as well as his physical and emotional well-being.

234.     Defendant's publication of the False Statements severely impaired Plaintiff's personal and professional reputation within his community and beyond. It caused Plaintiff distress, humiliation, embarrassment, and tangible losses including the expense of refuting the falsehoods and restoring his good name. Plaintiff also suffered damages including, but not limited to, attorneys' fees, lost income and opportunities, and harm to his future earning capacity.

235.     Having exhausted all other avenues, Plaintiff initiated this action to defend his reputation, challenge false accusations made by an unstable woman he met online, and put an end to Ahrens's escalating and vindictive conduct.

**WHEREFORE**, the Plaintiff, **JOHN CERASANI**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count I, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff, **JOHN CERASANI**, further prays that Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

## COUNT II
## FALSE LIGHT INVASION OF PRIVACY

236.     The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 235, as if fully restated in this Paragraph 236 of Count II.

237.     The False Statements contain multiple false and defamatory factual assertions that are not shielded by the First Amendment and cannot be insulated by privilege, innocently construed, or considered non-actionable opinion.

238.     Defendant's fabrication and publication of the False Statements were made with actual malice; that is, with knowledge of their falsity or, alternatively, with reckless disregard for their truth. Ahrens knew the False Statements she made concerning Plaintiff were false when she published them online, or alternatively, acted with reckless disregard for their veracity based on, *inter alia:*

(a)     Ahrens never possessed any uncontroverted, first-hand knowledge to support any or all of the False Statements before she disseminated them to the public at large;

(b)     Ahrens never possessed any tangible or documentary evidence demonstrating the veracity of any or all of the False Statements before she disseminated them to the public at large;

(c)     No court of competent jurisdiction, tribunal, prosecutorial authority, or governing body have ever found Plaintiff responsible or liable for any of the criminal accusations contained within the False Statements;

(d)     Ahrens never thought to consult (or forewarn) Plaintiff so that she could make an informed and careful decision before giving the False Statements broad publicity on the Internet and elsewhere; and

(e)    Ahrens knew or should have expected the irreversible reputational harm they would cause to Plaintiff by creating, and then publicizing, unsubstantiated gossip, unproven allegations, or blanket assumptions without evidence.

239.    The Defendant's conduct was so extreme, outrageous, methodical, and pervasive that no person in Plaintiff's shoes would be expected to endure it.

240.    The False Statements were published by Ahrens to the public at large.

241.    Ahrens's false publicity infiltrated Plaintiff's personal and professional circles, subjected him to undue ridicule, and continues to have a demonstrable adverse impact on his esteemed career, as well as his physical and emotional well-being.

242.    Defendant's publication of the False Statements severely impaired Plaintiff's personal and professional reputation within his community and beyond. It caused Plaintiff distress, humiliation, embarrassment, and tangible losses including the expense of refuting the falsehoods and restoring his good name. Plaintiff also suffered damages including, but not limited to, attorneys' fees, lost income and opportunities, and harm to his future earning capacity.

243.    Having exhausted all other avenues, Plaintiff initiated this action to defend his reputation, challenge false accusations made by an unstable woman he met online, and put an end to Ahrens's escalating and vindictive conduct.

**WHEREFORE**, the Plaintiff, **JOHN CERASANI**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count II, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff, **JOHN CERASANI**, further prays that Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or

retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

**COUNT III**
**PUBLIC DISCLOSURE OF PRIVATE FACTS**

244.     The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 211, with emphasis on False Statement Nos. 1, 2, 12 and 24 (previously referred to as, the "Private Recordings"), as if fully restated in this Paragraph 244 of Count III.

245.     Illinois recognizes a common law privacy action for the "public disclosure of private facts."  The tort imposes liability against a party, in this case Defendant Ahrens, for publicizing facts about the private life of a person that would be highly offensive to a reasonable person and are not of legitimate concern to the public.

246.     At the most basic level, a claim for "public disclosure of private facts" is properly stated where a defendant has unreasonably and widely publicized another's personal affairs when that defendant knew, or with reasonable care should have known, that the sensitive information disseminated was supposed to remain confidential, or at most, shared anonymously or amongst a limited group of trusted confidantes.

247.     Unbeknownst to Plaintiff, Ahrens surreptitiously recorded intimate audio and video exchanges of a sexual nature without Plaintiff's knowledge or consent, referred to herein as the Private Recordings. Beyond violating his reasonable expectation of privacy, Ahrens runs afoul of Illinois' Eavesdropping Statute, 720 ILCS 5/14-1 et seq., which requires two-party consent.

248.     With malice and premeditation, it is believed that Ahrens recorded these private exchanges knowing she would someday use them to exploit, extort, or humiliate the Plaintiff if he was unwilling to commit to her romantically, or alternatively, if he were to unilaterally end their remote sexual banter.

249.    The Plaintiff had a reasonable expectation that private moments between the two Parties would remain private even if their relationship soured, which it did.

250.    In fact, the first time Plaintiff realized the existence of the Private Recordings was when Ahrens published them to the public at large using the internet and certain troll accounts created on Instagram using Plaintiff's name as part of the 'handle.' Ahrens altered the Private Recordings, paired them with dynamic hashtags, and tagged celebrities, public figures, industry leaders, and other influential individuals and organizations to maximize publicity and ensure her baseless attacks against Plaintiff went viral and were impactful.

251.    Plaintiff had a reasonable expectation of privacy in the sensitive and sexually explicit Private Recordings. Defendant knew that broadcasting any portion of these recordings without accurate context would materially distort a reasonable listener's or viewer's perception of the exchange. Nevertheless, Ahrens widely disseminated the Private Recordings with reckless disregard for the false and unflattering light she knew they would cast upon Plaintiff.

252.    Ahrens knew, or should have known, that public dissemination of the Private Recordings would be hurtful, embarrassing, and would otherwise subject Plaintiff to ridicule and isolation if shared on the internet to the public at large. She also knew the related publicity would fuel gossip, particularly given Cerasani's public persona and online image as a playful antagonist.

253.    The Private Recordings cannot reasonably be deemed newsworthy or of legitimate public concern, particularly where they were published without proper context and paired with a false narrative intended to mislead viewers/listeners and demonize Plaintiff.

254.    Defendant published the Private Recordings to individuals within Plaintiff's personal and professional networks, as well as to strangers directed or enticed to follow her offending social media pages. Ahrens acted with blatant disregard for the harm that public disclosure of this sensitive information would cause Plaintiff, who was cast in an objectively false and inflammatory light.

255.     Ahrens knew or should have known that her use of multiple troll accounts, across various platforms, would render Plaintiff powerless and incapable of mitigating the harm caused to his image and valued relationships. Upon information and reasonable belief, Ahrens continues to widely disseminate the Private Recordings, as well as other offending speech that is inherently hidden and undiscoverable. Plaintiff's investigation continues.

256.     The Defendant acted with malicious intent when she gave publicity to the Private Recordings, which would be construed as highly offensive and objectionable to a reasonable person.

257.     Ahrens's conduct was so extreme, outrageous, methodical, and pervasive that no person in Plaintiff's shoes would be expected to endure it.

258.     Ahrens's actionable speech infiltrated Plaintiff's personal and professional circles, subjected him to undue ridicule, and continues to have a demonstrable adverse impact on his esteemed career, as well as his physical and emotional well-being.

259.     Defendant's publication of the Private Recordings severely impaired Plaintiff's personal and professional reputation within his community and beyond. It caused Plaintiff distress, humiliation, embarrassment, and tangible losses including the expense of refuting the falsehoods and restoring his good name. Plaintiff also suffered damages including, but not limited to, attorneys' fees, lost income and opportunities, and harm to his future earning capacity.

260.     Having exhausted all other avenues, Plaintiff initiated this action to defend his reputation, challenge false accusations made by an unstable woman he met online, and put an end to Ahrens's escalating and vindictive conduct.

**WHEREFORE**, the Plaintiff, **JOHN CERASANI**,, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count III, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars

($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff, **JOHN CERASANI**, further prays that Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

261. The Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs 1 through 260, as if fully restated in this Paragraph 261 of Count IV.

262. Plaintiff reasonably fears for his own safety, as well as the safety of his family and romantic partners. Ahrens's unpredictable, volatile, and vindictive behavior is grossly disproportionate to the casual, purely telephonic relationship the Parties had before Plaintiff unilaterally ended it.

263. Independently and collectively, the factual allegations supporting Counts I, II, and III amount to conduct that is extreme, outrageous, and would be highly offensive to a reasonable person; no person in Plaintiff's shoes would be expected to endure it without consequences.

264. The Defendant acted with malicious intent when she repeatedly committed acts amounting to Defamation *Per Se*, cast Plaintiff in a false and objectively unflattering light to the public at large, and when she surreptitiously recorded and publicly disclosed Plaintiff's private affairs on multiple occasions.

265.     Ahrens's actionable conduct infiltrated Plaintiff's personal and professional circles, subjected him to undue ridicule, and continues to have a demonstrable adverse impact on his esteemed career, as well as his physical and emotional well-being.

266.     Defendant severely impaired Plaintiff's personal and professional reputation within his community and beyond. It caused Plaintiff severe emotional distress, humiliation, embarrassment, mental suffering, nightmares, safety concerns, and will likely require related medical, clinical, and psychiatric intervention and care. and tangible losses including the expense of refuting the falsehoods and restoring his good name. Plaintiff also suffered losses including, but not limited to, reputational harm, attorneys' fees, lost income and opportunities, and harm to his future earning capacity.

267.     Having exhausted all other avenues, Plaintiff initiated this action to defend his reputation, challenge false accusations made by an unstable woman he met online, and put an end to Ahrens's escalating and vindictive conduct.

**WHEREFORE**, the Plaintiff, **JOHN CERASANI**, prays that a judgment be entered against the Defendant, **VALERY J. AHRENS**, under Count IV, in an amount fair and just, but no less than Two Hundred and Fifty Thousand Dollars ($250,000.00) in compensable and presumed damages, as well as exemplary damages in the amount no less than One Million Dollars ($1,000,000.00), for her willful and contumacious disregard for the Plaintiff's emotional and physical well-being, and the foreseeable impact her conduct would have on Plaintiff's reputation and emotional well-being.

Plaintiff, **JOHN CERASANI**, further prays that Defendant, **VALERY J. AHRENS**, be enjoined from any future, similar conduct, and that she be ordered to promptly remove and/or retract any reference to or iteration of the False Statements, including the Private Recordings, made online, in writing, verbally, or in any official document. Plaintiff seeks any additional relief this Court deems appropriate and just given the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY**

**Dated: August 12, 2025**

**Respectfully submitted,**
**Attorney for Plaintiff, John Cerasani**

By:     /s/ Ryan B. Jacobson
              Ryan B. Jacobson, Esq (IL Bar No. 6269994)
              AMUNDSEN DAVIS LLC
              150 North Michigan Avenue, Suite #3300
              Chicago, Illinois 60601
              Telephone: (312) 894-3252
              *rjacobson@amundsendavislaw.com*