```
1  STATE OF ILLINOIS  )
                      ) SS:
2  COUNTY OF COOK     )

3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              MUNICIPAL DEPARTMENT-THIRD MUNICIPAL DISTRICT
4
   THE PEOPLE OF THE              )
5  STATE OF ILLINOIS              )
                                  )
6              Plaintiff,         )
                                  )  No. 23 MC3 2784
7          vs.                    )
                                  )
8  VALERY AHRENS,                 )
                                  )
9              Defendant.         )

10

11          REPORT OF PROCEEDINGS HAD at the hearing

12  of the above-entitled cause, before the Honorable Joel

13  Greenblatt, one of the Judges of said court, on the 23rd

14  day of January, 2024.

15          PRESENT:

16          HON. KIMBERLY M. FOXX,
            STATE'S ATTORNEY OF COOK COUNTY, by
17          MS. CAROLINE KENNEDY,
            Assistant State's Attorney,
18              Appeared on behalf of the People;

19          MS. BRITTANY HOWARD,
                Appeared on behalf of the Defendant.
20                              * * * * *
21

22
   JENNIFER ZANICHELLI
23  Official Court Reporter
   Circuit Court of Cook County, Illinois
24  #084-003729
```

1

1          THE COURT: Valery Ahrens, 23 MC3 2784.

2          Counsel for the State, your name.

3          MS. KENNEDY:  Assistant State's Attorney

4    Caroline Kennedy.

5          THE COURT: Counsel for the defendant, your

6    name.

7          MS. HOWARD: Brittany Howard on behalf of Ms.

8    Ahrens.

9          THE COURT: State, are you ready to proceed in

10   the matter?

11         MS. KENNEDY: Yes, Judge.

12         THE COURT: Have you spoken to defense counsel

13   with regard towards a possible resolution short of

14   trial?

15         MS. KENNEDY: No, Judge.  It's been my

16   understanding that the defendant is not amenable to a

17   plea.  If that's incorrect, I defer to counsel.

18         THE COURT: Counselor.

19         MS. HOWARD: We were given an offer earlier on

20   in the case.

21         THE COURT: Might a 402 conference be

22   beneficial?

23         MS. HOWARD:  No, Judge.

24         THE COURT: How many witnesses do you anticipate

**2**

1    calling?

2           MS. KENNEDY: One.

3           THE COURT: State, before we proceed, there's

4    some housekeeping to do.  In looking at the complaint

5    which charges harassment through electronic

6    communication, I note that the statutory section, as

7    cited, is insufficient.  It reflects a violation of

8    Chapter 720 Act 5 Section 26.5-3(A).  However, A has six

9    subsections.

10          Which subsection is the State proceeding on?

11   Now, in reviewing the narrative in the complaint, the

12   allegation is that the defendant threatened injury.  If

13   it is a threat of injury, it appears to be Subsection A

14   5.  Please take a moment to verify that, State.

15          MS. KENNEDY: Subsection 5.

16          THE COURT: Counsel, waive reswearing,

17   re-verification?

18          MS. HOWARD:  Yes, your Honor.

19          THE COURT: Assume your witness is the named

20   complainant?

21          MS. KENNEDY: Yes.

22          THE COURT: I take it then that there is no one

23   in the courtroom who is going to testify in this matter

24   other than Mr. John Cerasani; is that correct?  Record

1  will reflect that there are no additional witnesses in

2  the courtroom.

3          Madam State's Attorney, do you wish to make

4  opening statement?

5          MS. KENNEDY: State waives.

6          THE COURT: Counsel, do you wish to make an

7  opening statement?

8          MS. HOWARD: We will waive as well.

9          THE COURT: State, call your first witness.

10              (Witness duly sworn.)

11          THE COURT: State, you may inquire of the

12  witness, please.

13              JOHN CERASANI,

14  called as a witness on behalf of the People of the State

15  of Illinois, having been first duly sworn, was examined

16  and testified as follows:

17              DIRECT EXAMINATION

18              BY

19              MS. KENNEDY:

20      Q.  Please state your name and spell your last name

21  for the Court.

22      A.  John Cerasani, C-e-r-a-s-a-n-i.

23      Q.  And, Mr. Cerasani, are you acquainted with a

24  Valery Ahrens?

**4**

```
 1      A.    Yes.

 2      Q.    How do you know Ms. Ahrens?

 3      A.    We dated about two years ago.

 4      Q.    And do you see Ms. Ahrens in court this

 5 morning?

 6      A.    Yes.

 7      Q.    Please point her out and describe an article of

 8 clothing for the Court.

 9      A.    Black blouse.

10      Q.    Where is she located?

11      A.    She's behind me at the table.

12            MS. KENNEDY: May the record reflect in-court

13 identification of the defendant by this witness.

14            THE COURT: Yes.

15 BY MS. KENNEDY:

16      Q.    Mr. Cerasani, did you have any form of

17 electronic communication with the defendant?

18      A.    Yes.

19      Q.    By what form?

20      A.    Text, Facetime, phone.

21      Q.    And on or about June 7th of 2023, you were

22 residing on Waterford in Inverness, Illinois?

23      A.    Yes.

24      Q.    On June 7th at approximately 6:45, did you
```

```
 1   receive --

 2            THE COURT: A.m. or p.m., State?

 3   BY MS. KENNEDY:

 4       Q.   At 6:45 p.m. did you receive any electronic

 5   communication from Ms. Ahrens?

 6       A.   Yes.

 7       Q.   What form of communication did you receive?

 8       A.   Text message.

 9       Q.   And how did you recognize this text message was

10   from Ms. Ahrens?

11       A.   I had previously blocked her regular cell phone

12   number.  Now she was contacting me from her Apple ID

13   e-mail address.

14       Q.   Do you recall that e-mail address?

15       A.   Miss Valery A, I believe, at live dot com.  She

16   messaged me hundreds of times from it, so I knew it was

17   from her.

18            MS. HOWARD: Objection.

19            THE COURT: Sustained.

20   BY MS. KENNEDY:

21       Q.   Prior to June 7th, specifically, June 4th, had

22   you received any electronic communication from the

23   defendant from that particular address?

24       A.   Yes.
```

6

1          MS. HOWARD:  Objection, foundation.

2          THE COURT: Overruled.

3          MS. KENNEDY: I have what's been marked People's

4    Exhibit A.  I have what's been marked People's Exhibit

5    A, which I am showing to the complaining witness.

6    BY MS. KENNEDY:

7          Q.   Sir, do you recognize that?

8          A.   Yes.

9          Q.   What is that?

10         A.   It's a text message screen shot of a text

11   message from Valery to me.

12         Q.   Does that fairly -- is that a true and accurate

13   copy of the text message you received from Miss Valery A

14   on June 4, 2023?

15         A.   Yes.

16         MS. KENNEDY: At this time I move to admit

17   People's Exhibit A.

18         THE COURT: Any objection?

19         MS. HOWARD: Yes, Judge.

20         THE COURT: Basis?

21         MS. HOWARD:  He's only testified to a text from

22   June 7th.  I don't know what the relevance is from June

23   4th.

24         THE COURT: Your voice is trailing off.

**7**

1          MS. HOWARD:  There was only testimony from June

2     7th.  There's no reference to any text from June 4th.

3          THE COURT: He just testified that he got a text

4     on June 4th from that same Apple --

5          MS. KENNEDY: It goes to the identification of

6     the defendant as to the person sending the message.

7          THE COURT: He just testified about June 4th.

8          MS. HOWARD: As far as the exhibit goes, I only

9     heard testimony about a text he received June 7th.

10          THE COURT: Please cover that area for counsel.

11     BY MS. KENNEDY:

12          Q.   Did you receive a text message on June 4, 2023

13     from the defendant?

14          A.   Yes.

15          Q.   What address?

16          A.   Specifically Miss Valery A at live dot com.

17          Q.   How did you recognize that address as belonging

18     to her?

19          A.   I regularly get text messages from her.

20          MS. KENNEDY: At this time I move to admit

21     Exhibit A.

22          THE COURT: Any objection?

23          MS. HOWARD: Object to relevance.

24          THE COURT: Exhibit A will be received over the

**8**

1    objection of the defendant.

2    BY MS. KENNEDY:

3         Q.   Mr. Cerasani, I am directing your attention to

4    June 7th of 2023.

5              Did you receive any messages from the defendant

6    on that date?

7         A.   Yes.

8         Q.   Do you recall what form those messages were in?

9         A.   Text messages.

10        Q.   Do you recall from what address those text

11   messages were sent?

12        A.   Miss Valery A at live dot com.

13             MS. KENNEDY: I have what's been marked People's

14   Exhibit B.  Showing to counsel.

15   BY MS. KENNEDY:

16        Q.   Mr. Cerasani, People's Exhibit B.

17             Do you recognize that document?

18        A.   Yes.

19        Q.   What is it?

20        A.   Screen shot of a text message from Valery to

21   me.

22        Q.   What is the address indicated on the text

23   message?

24        A.   Miss Valery A at live dot com.

1      Q.   Is this an accurate copy of the screen shot of

2   that message?

3      A.   Yes.

4           MS. KENNEDY: Judge, at this time I will move to

5   admit People's Exhibit B for the witness to publish the

6   message.

7           THE COURT: Any objection?

8           MS. HOWARD: No objection.

9           THE COURT: Exhibit B will be received without

10  objection.

11  BY MS. KENNEDY:

12     Q.   If you could please read that.

13     A.   He is out of the black hole, a dark hole.  IDD.

14  Something about a fucking hole.  If you are involved

15  with Sal and his hole, I will murder you and you will

16  deserve it.  That is how to make a threat.  Quit telling

17  her to conduct phone check time hash tag Sal wife.

18  Fucker.

19     Q.   Do you know who Sal is?

20     A.   Yes.

21     Q.   Who is Sal?

22     A.   I had a relationship with his separated, slash,

23  ex-wife.  It had absolutely nothing to do with Valery.

24          MS. HOWARD:  Objection.

1          THE COURT: Sustained.

2   BY MS. KENNEDY:

3      Q.   To your knowledge, is that the Sal that the

4   defendant is referencing in this text?

5      A.   I believe so.

6      Q.   How did you feel when you received this

7   message?

8      A.   Scared.

9          MS. KENNEDY: Judge, I have what's been marked

10  as People's Exhibit C.  It's a pleading filed by the

11  defendant in case number 23 OP 30759.  It is a court

12  document.  Judge, I ask the Court to take judicial

13  notice of this self-authenticating document,

14  specifically, allegations on page 23, as well as the

15  defendant's sworn affidavit which was part of the

16  pleading.

17         THE COURT: The pleading designated as the

18  petition.

19         MS. KENNEDY:  Motion to vacate.

20         THE COURT: Page 23.

21         MS. KENNEDY: I move to admit that document and

22  to publish paragraph 108 on page 23 as well as the

23  defendant's certification.

24         THE COURT: Any objection?

1          MS. HOWARD:  I would object based on relevance

2    for purpose of admitting this document.

3          THE COURT: What is the relevance?

4          MS. KENNEDY: Further identify the address

5    belonging to the defendant.

6          THE COURT: The identification of the address

7    from which the texts were generated?

8          MS. KENNEDY: The June 7th text, yes.

9          THE COURT: With that understanding, I will

10   overrule the objection; and it may be received.

11         MS. KENNEDY: If you would like, I could just

12   give you those pages.

13         THE COURT:  Please.

14   BY MS. KENNEDY:

15     Q.   Mr. Cerasani, did you receive any messages from

16   June -- subsequent to June 7, 2023?

17     A.   Subsequent is after or before?

18     Q.   Yes, after.

19     A.   Yes.

20     Q.   Directing your attention to Thursday, July

21   27th, did you receive messages from the defendant from

22   that address?

23         MS. HOWARD:  Objection to relevance.

24         THE COURT: What is the relevance post the date

1    June 7th which is the date of the alleged offense?

2          MS. KENNEDY: It goes to the identification of

3    the sender of that text message.  It's specifically

4    referenced in the defendant's pleading which constitutes

5    judicial admission that she is the owner of that

6    account, Judge.

7          THE COURT: I think you have established that

8    through Exhibit C, have you not, and for his testimony

9    before with regard to Exhibit A?

10         MS. KENNEDY: Judge, this puts the pleading in

11   context.  It is additional evidence of the same fact,

12   Judge, but it is, again, just additional evidence of the

13   identification.

14         THE COURT: Of the identification of the e-mail

15   or the text owner and sender?

16         MS. KENNEDY: Yes.

17         THE COURT:  For that limited purpose, I will

18   allow it as far as contents.  I am not concerned about

19   the contents.  This is post June 7th, correct?  This is

20   July 27th.

21         THE COURT: It's a bench trial.  I am only going

22   to consider it for the purpose that you offered it.

23         You labeled this Exhibit D, correct?

24         MS. KENNEDY: Yes.

**13**

1   BY MS. KENNEDY:

2      Q.  Mr. Cerasani, you reside in Inverness.  That is

3   in Cook County, correct?

4      A.  Yes.

5         MS. KENNEDY:  Judge, at this time I have no

6   further questions.

7         THE COURT: Cross-examine.

8              CROSS EXAMINATION

9              BY

10           MS. HOWARD:

11      Q.  Mr. Cerasani, do you consider yourself a

12   celebrity?

13         MS. KENNEDY:  Objection as to relevance.

14         THE COURT: Sustained.

15   BY MS. HOWARD:

16      Q.  You own your own business?

17         MS. KENNEDY:  Objection as to relevance.

18         THE COURT: I will allow the question.

19         You may answer.

20         THE WITNESS:  Yes.

21   BY MS. HOWARD:

22      Q.  You promote your business on social media,

23   correct?

24         MS. KENNEDY:  Objection as to relevance.

**14**

```
1              THE COURT:  I will give the defendant some
2   leeway.  You best tie it up.  I will withhold ruling on
3   the objection.  Better tie it together, Counsel.
4              You may answer.
5              THE WITNESS:  Do I promote my business on
6   social media?  To a degree, I suppose.
7   BY MS. HOWARD:
8        Q.   You have over 200 followers on Instagram alone,
9   correct?
10       A.   Yes.
11       Q.   Would you say that your reputation on social
12  media is important to you?
13             MS. KENNEDY:  Objection.
14             THE COURT: Sustained.  What does this have to
15  do --
16             MS. HOWARD:  I will tie it in as his motive.  I
17  will establish it.
18             THE COURT: Goes to motive.  Whose motive?
19             MS. HOWARD:  The complaining witness's motive.
20             THE COURT: His motive to do what?
21             MS. HOWARD:  File these charges.
22             THE COURT:  I will give you some leeway.
23             Go ahead.
24             You may answer.
```

 1          THE WITNESS:  Yes.

 2   BY MS. HOWARD:

 3      Q.   At some point you discovered that Miss Ahrens

 4   created an Instagram page about you, correct?

 5      A.   Yes.

 6      Q.   And the handle for that Instagram is John

 7   Cerasani is a narcissist, correct?

 8      A.   Yes.

 9      Q.   This upsets you, correct?

10      A.   Yeah.

11      Q.   You had asked her to take it down, correct?

12          MS. KENNEDY: Objection, hearsay, foundation.

13          THE COURT:  He could answer.

14          THE WITNESS:  Yes.

15   BY MS. HOWARD:

16      Q.   You asked her a number of times to take down

17   the page, correct?

18      A.   Yes.

19          MS. KENNEDY: I renew my objection as to

20   foundation, timeframe.

21          THE COURT: Over what period of time are we

22   talking about, Counsel?

23   BY MS. HOWARD:

24      Q.   So you met Ms. Ahrens back in 2021, correct?

1      A.   Correct.  November of 2021 through February of

2  '22-ish we were in regular contact.

3      Q.   At some point in 2022 you found out about this

4  Instagram page, correct?

5      A.   Yes.

6      Q.   Do you recall which month you found out about

7  it?

8      A.   June of '22.

9      Q.   In the months following June 2022, you asked

10  Ms. Ahrens multiple times to take this page down?

11      A.   Along with stop excessively texting me.

12      Q.   Was that a yes?

13      A.   I asked her to take things down; abused her

14  sexually and I do drugs, yes.

15      Q.   The text that was shown to you?

16          THE COURT: Which exhibit, Counsel?

17  BY MS. HOWARD:

18      Q.   People's A from June 4th of 2023.  You said

19  that was the last time you texted Ms. Ahrens, correct?

20          MS. KENNEDY:  Objection.

21          THE COURT: That mischaracterizes the testimony.

22  The objection will be sustained.

23  BY MS. HOWARD:

24      Q.   You filed for an order --

1        THE COURT: Counsel, how is this relevant?  The

2   issue before the Court is whether or not the defendant

3   committed the offense of harassment through electronic

4   communication.

5        MS. HOWARD:  It goes to his credibility.  I am

6   tying it in.

7   BY MS. HOWARD:

8        Q.   You filed a petition for stalking no contact

9   order against Ms. Ahrens, correct?

10       A.   Correct.

11       Q.   In that petition, you attached exhibits to it,

12  correct?

13       A.   Yes.

14       Q.   These exhibits included the text that you

15  reference, People's Exhibit A from June 4th, correct?

16       A.   Most likely.

17       Q.   You also wrote notes on the side of the screen

18  shots that you submitted to the Court.

19       A.   You mean the stalking order that I withdrew?

20  I'd have to see it.

21       Q.   Would seeing the petition refresh your memory?

22       A.   If you want to ask me a question.  I don't know

23  what you're referring to.

24       Q.   Would seeing it refresh your memory?

**18**

```
 1      A.   Sure.

 2      Q.   I will mark specifically -- this is Defense 1.

 3           Do you recognize that document?

 4      A.   Yes.

 5      Q.   Is that your handwriting on the side of the

 6  screen shot?

 7      A.   Yes.

 8      Q.   In your handwriting, you put last text I sent

 9  her, correct?

10      A.   Yes.

11      Q.   You dated that June 4, 2023?

12      A.   Yes.

13      Q.   June 4, 2023 was not the last time you texted

14  to her?

15      A.   If you read it, I make it very clear when the

16  last text was.  That was handwriting from a previous

17  case back in August, and you knew that when you asked me

18  that question.

19           THE COURT: Sir, just answer the question.

20  BY MS. HOWARD:

21      Q.   So the text that we are here for today was sent

22  by Ms. Ahrens on June 7th?

23      A.   Yes.

24      Q.   Isn't it true that you also received a text
```

1    message a few hours later from Ms. Ahrens that said the

2    following --

3            MS. KENNEDY: I will object to any publication

4    of a text message.

5            THE COURT: The attorney has asked if he

6    received a text later in the day on June 7th, subsequent

7    to receiving Exhibit B; is that correct?

8            MS. HOWARD:  Yes, Judge.

9    BY MS. HOWARD:

10       Q.   At 12:17 a.m. June 8th, Ms. Ahrens sent you an

11   additional text message, correct?

12       A.   Possible.  She texts me all day every day.

13       Q.   I am asking yes or no.  So yes, no or you don't

14   remember?

15       A.   I don't remember about 12:17.

16       Q.   That text message sent was not serious about

17   murder.  I know you want me to say something you could

18   actually use, by the way?

19       A.   I have no recollection of that.

20       Q.   You don't?

21           Isn't it also true, Mr. Cerasani, that on June

22   11th, you sent her another text expressing that you were

23   upset about the Instagram page?

24       A.   I don't know.  I don't have a recollection of

**20**

1  that.

2      Q.  Is it possible?

3      A.  If it involves her towards my kids or sexual

4  abuse, it's possible.

5      Q.  Isn't it also true that you threatened Ms.

6  Ahrens with revenge porn?

7      A.  No.  That is not true.

8          MS. KENNEDY:  Objection to relevance.

9          THE COURT: Overruled.  The answer may stand.

10 He said, no, that's not true.

11         Next question.

12 BY MS. HOWARD:

13     Q.  In reference to this text message about Sal,

14 isn't it true that Ms. Ahrens was trying to protect you

15 from Sal?

16     A.  Absolutely not.

17     Q.  Because you were dating his wife, correct?

18     A.  Ms. Ahrens would have no idea.  She has nothing

19 to do with the situation.

20         THE COURT: Sir, just answer the question, if

21 you're able to do so.

22         Question again, please.

23         THE WITNESS: My understanding was that they

24 were divorced.  Valery likes to say they were married.

**21**

1    I have known the woman for 20 years.

2    BY MS. HOWARD:

3        Q.   You said you were scared after you got this

4    text message?

5        A.   Yep.

6        Q.   You didn't call the police?

7        A.   I have been in touch with the police pretty

8    consistently.

9            THE COURT: Did you call the police that day?

10           THE WITNESS:  I may have.

11           THE COURT: Next question.

12   BY MS. HOWARD:

13       Q.   Did you go to the police station after she sent

14   that text?

15       A.   Yes.

16       Q.   That same day or the next day?

17       A.   I don't know what day it was.  But it was

18   around.

19       Q.   You didn't go to the police about Ms. Ahrens

20   until August of 2023, correct?

21       A.   Incorrect.

22       Q.   You didn't sign this complaint for this text

23   message until September, correct?

24       A.   The Inverness police were waiting for her to

1  come into town to arrest her.

2      Q.  I think the question was:  You didn't sign the

3  complaint for this text message until September of 2023;

4  yes or no?

5      A.  Do I have to answer that?

6      Q.  Yes.

7      A.  That's the first opportunity they had to arrest

8  her so, yes.

9      Q.  And you also filed for an order of protection

10  in Cook County in August of 2023?

11      A.  Correct.

12          MS. KENNEDY: Objection.

13          THE COURT: Sustained.

14  BY MS. HOWARD:

15      Q.  All this time of knowing Ms. Ahrens, she lived

16  in Ottawa?

17      A.  Correct.

18      Q.  You lived in Illinois?

19      A.  Correct.

20      Q.  You only met once in person, correct?

21      A.  Correct.

22      Q.  You and Ms. Ahrens were never in a romantic

23  relationship, correct?

24      A.  Incorrect.

1      Q.   You dated exclusively?

2      A.   That was the understanding I had.

3      Q.   Did you ever tell her that her only purpose was

4  to entertain you?

5           MS. KENNEDY: Objection.

6           THE COURT: Overruled.  He may answer.

7           THE WITNESS:  At the request of your client,

8  yes.

9           MS. HOWARD:  Nothing further.

10                REDIRECT EXAMINATION

11                BY

12                MS. KENNEDY:

13      Q.   Mr. Cerasani, you did report to the police June

14  7th the text from the defendant where she stated she was

15  going to murder you?

16      A.   Yeah.

17      Q.   Did you work with any officers regarding this

18  incident?

19      A.   Yes.

20      Q.   Did you work with the officers including other

21  incidents or allegations that you were making as well?

22      A.   Many.

23           MS. HOWARD:  Objection.

24           THE COURT: Counsel, where are you going?

**24**

 1   Sustained.

 2   BY MS. KENNEDY:

 3        Q.   Why was there a delay between the incident on

 4   June 7th and your signing the complaint?

 5        A.   So my understanding it was explained to me is

 6   the detective --

 7             MS. HOWARD: Objection, hearsay.

 8             THE COURT: Sustained.  Wait for a question.

 9   BY MS. KENNEDY:

10        Q.   When you first went to report this text

11   message, were you offered a complaint at that time, to

12   sign a complaint?

13        A.   No.

14             MS. KENNEDY:  Judge, I have nothing further.

15             THE COURT: Anything on re-cross based on that?

16             MS. HOWARD:  No.

17             THE COURT: You may be excused, sir.  Thank you.

18                      (Witness excused.)

19             THE COURT: State, call your next witness.

20             MS. KENNEDY: State has no further witnesses.

21   State's exhibits having been admitted, State rests?

22             MS. KENNEDY:  Yes.

23             MS. HOWARD:  At this time I make motion for

24   directed finding.

**25**

```
1              THE COURT: Do you wish to argue?

2              MS. HOWARD:  No, Judge, rest on the evidence.

3              THE COURT: At this stage of the trial

4    entertaining the defendant's motion for a finding of

5    acquittal at the close of the State's case, it's

6    incumbent upon the Court to view the evidence in the

7    light most favorable to the non-moving party.  In this

8    case, that would be the People.

9              The People's obligation at this juncture is to

10   have proven each of the allegations or each of the

11   elements of the charged offense beyond a reasonable

12   doubt.  Viewing the evidence adduced to this point, in

13   the light most favorable to the State, I do find that

14   they have presented a constitutionally sufficient case;

15   and, accordingly, the motion will be denied.

16             Counsel, do you wish to call any witnesses?

17             MS. HOWARD:  If I could have one brief moment.

18             Motion to exclude.

19                  (Witness duly sworn.)

20

21

22

23

24
```

1                         VALERY AHRENS,

2    called as a witness, having been first duly sworn, was

3    examined and testified as follows:

4                         DIRECT EXAMINATION

5                         BY

6                         MS. HOWARD:

7        Q.   Good morning.  Could you please state and spell

8    your last name for the court reporter.

9        A.   My name is Valery Ahrens, last name

10   A-h-r-e-n-s.

11       Q.   Ms. Ahrens, you had the opportunity to listen

12   to John Cerasani testify here in court today, correct?

13       A.   Correct.

14       Q.   Were you two in a dating relationship?

15       A.   No.

16       Q.   How would you describe it? Did you two formally

17   go out on dates?

18       A.   No.  He said he would never date me.

19       Q.   Was he ever your boyfriend?

20       A.   Never.

21       Q.   Did you ever date exclusively?

22       A.   He said I wasn't good enough for him to date,

23   never took me on a date.  Never called me his

24   girlfriend.  None of that.

**27**

1      Q.   In reference to this text message that's at

2    issue today from June 7, 2023, do you remember sending

3    that text message?

4      A.   Yes.

5      Q.   Why did you send that text message?

6      A.   Several reasons.  I was getting a lot of

7    strange and concerning anonymous messages, so I started

8    to suspect that maybe they were from Sal.

9      Q.   Who is Sal?

10     A.   Sal, the husband of Officer DiFranco. He's the

11   husband of Kim DiFranco who John was having an affair.

12   Officer DiFranco was irate about it.  I had lost contact

13   with Sal for several months and then he sort of

14   reappeared and started texting me again and said that he

15   was --

16          MS. KENNEDY: I will object to the narrative.

17          THE COURT: Agreed.  Sustained.  One question,

18   one answer, please.

19   BY MS. HOWARD:

20     Q.   When you told Mr. Cerasani you would murder

21   him, what did you mean?

22     A.   I definitely didn't mean that I was going to

23   murder him.  It was a figure of speech.  I was trying to

24   convey to him that I had started to suspect that he had

**28**

1    lied about being out of contact with Officer DiFranco's

2    wife.

3         Q.   So is it fair to say you were concerned about

4    Mr. Cerasani?

5              MS. KENNEDY: Objection, leading.

6              THE COURT: I will give it a little leeway.

7    Overruled.  She may answer.

8              THE WITNESS:  Concerned about him, the whole

9    situation.  Concerned that I had been lied to for

10   months.  Concerned that Sal possibly been distraught

11   these past few months when I thought that he had

12   probably gotten back together with his wife.

13   BY MS. HOWARD:

14        Q.   Were you concerned that Sal might do something

15   to Mr. Cerasani?

16             MS. KENNEDY: Objection as to leading.

17             THE COURT: Sustained.

18   BY MS. HOWARD:

19        Q.   Did you send John a text in the early morning

20   of June 8th?

21        A.   I don't remember the 8th.

22        Q.   A few hours after that text message?

23        A.   I believe so.

24        Q.   Did this message reference the initial text

**29**

1   message about murder?

2           MS. KENNEDY: Objection, Judge, foundation.

3   There's a text message.  There's been no text message in

4   evidence.

5           THE COURT: That's correct; nothing yet.  So I

6   am going to sustain the objection.

7   BY MS. HOWARD:

8       Q.  How is John saved in your phone; what's his

9   contact?

10      A.  John Cerasani.

11      Q.  Did you at some point take screen shots of your

12  messages with John?

13      A.  Yes.  I take screen shots of all of them.

14      Q.  Did you take screen shots of messages you sent

15  in the early morning of June 8th?

16      A.  I am sure I did at some point.

17      Q.  I will show you what will be Defense 2.

18          Showing you what's been marked as Defense 2.

19  Do you recognize this?

20      A.  Yes.

21      Q.  What are you looking at?

22      A.  Text messages from me to him.

23      Q.  What date is reflected on these text messages?

24      A.  June 7th and June 8th.

1      Q.   Would that be of 2023?

2      A.   Yes.

3      Q.   Is this a fair and accurate depiction of the

4   text thread June 7th and June 8, 2023?

5      A.   Yes.

6           MS. HOWARD:  Your Honor, at this time I seek to

7   publish.

8           THE COURT: Any objection?

9           MS. KENNEDY: Just as to relevance, Judge.

10          THE COURT: The exhibit will be received over

11   the objection of the State.

12   BY MS. HOWARD:

13     Q.   Ms. Ahrens, if you could read this text message

14   June 8th, 12:17 a.m.?

15     A.   Was not serious about murder.  I know you want

16   me to say something you could actually use.  BTW means

17   by the way.  I was told heads up.  Watch out for you to

18   try a stupid plan with him recently though.

19     Q.   Why did you feel the need to send this message

20   to John?

21     A.   I had started to suspect he was trying to imply

22   that the messages I sent him were threats, and I would

23   never threaten him or anyone; and I wanted to make it

24   clear that it definitely wasn't -- he had implied

31

1   something else I had said earlier was a threat as well.

2   I said that wasn't a threat.  He would say random

3   messages.

4       Q.  Did you and John continue to text after June

5   7th?

6       A.  I believe so, yes.

7       Q.  Did John ever send any messages that he was

8   scared about the text you sent him?

9       A.  No.

10          MS. KENNEDY: Objection.

11          THE COURT: Overruled.  The answer may stand.

12  BY MS. HOWARD:

13      Q.  What was your answer?

14      A.  No.

15      Q.  During the course of your correspondence with

16  Mr. Cerasani, did you reside in Iowa?

17      A.  Yes, I did.

18          THE COURT: Cross-examine.

19          MS. KENNEDY: Yes, Judge.

20                      CROSS EXAMINATION

21                      BY

22                      MS. KENNEDY:

23      Q.  Ms. Ahrens, you testified that you never had a

24  relationship with John Cerasani?

1      A.    Correct.

2      Q.    That's because he refused to date you and be

3  your boyfriend and never took you out; is that correct?

4      A.    In part.

5      Q.    That was your testimony when your lawyer asked

6  you; is that correct?

7      A.    That's part of why.

8      Q.    Did you want to date him?

9      A.    No.

10      Q.    So, nevertheless, you had a long-term

11  correspondence with him via text message and other

12  communications?

13      A.    Yes.

14      Q.    You never wanted to date him?

15      A.    No.

16      Q.    You stated that you sent the June 7, 2023

17  messages because the complaining witness had lied about

18  being with this Sal person's wife; is that correct?

19      A.    I started to suspect he had been lying.

20      Q.    So you thought he was lying to you and so you

21  threatened to murder him; is that correct?

22      A.    I would say that's incorrect.

23      Q.    You do admit, though, that you sent that text

24  message on June 7th?

33

1      A.    Yes.

2      Q.    You also testified that you sent the message on

3  June 8th because you were concerned that the complaining

4  witness might believe that that was a threat or construe

5  that as a threat?

6      A.    I was concerned he would try to construe it was

7  a threat somehow.

8      Q.    So you were concerned that he might think that

9  you threatening to murder him would be a threat?

10     A.    I was concerned that he would take my figure of

11 speech and try to say that I was actually making threats

12 towards him.

13     Q.    You didn't send that message immediately after

14 you made the murder threat; isn't that correct?

15     A.    It wasn't a murder threat.

16     Q.    You didn't send it immediately after you sent

17 the June 7th murder text; is that correct?

18     A.    Not immediately.

19     Q.    You waited a number of hours until after

20 midnight to send that text, the June 8th text?

21     A.    It appears so.

22     Q.    Is that a yes?

23     A.    Yes.

24     Q.    You stated that you were living in Iowa the

1    whole time you were corresponding with Mr. Cerasani?

2         A.    Yes.

3         Q.    Do you have a car?

4         A.    Yes.

5         Q.    Are you legally allowed to leave Iowa?

6         A.    Yes.

7              MS. KENNEDY: At this time I have no further

8    questions.

9              THE COURT: Anything on redirect?

10             MS. HOWARD: No, Judge.

11             THE COURT: You may be seated at counsel table.

12             THE COURT: Ms. Howard, you may call your next

13   witness.

14             MS. HOWARD: Defense rests.

15             THE COURT: State, any witnesses in rebuttal?

16             MS. KENNEDY:  No.

17             THE COURT: Both sides have rested.

18             Do you wish to make closing argument?

19             MS. KENNEDY: Waive opening, reserve rebuttal.

20             THE COURT: Ms. Howard, you may make closing

21   argument.

22             MS. HOWARD:  This case is not about right or

23   wrong.  This case is not about Ms. Ahrens threatening

24   Mr. Cerasani.  He took her at her word.  For this is a

1   case about a man whose ego has been bruised.

2           As you heard from the testimony, Judge, this

3   language that Ms. Ahrens used was a figure of speech.

4   Number 1, similar to if maybe a child gets in trouble.

5   My mom is going to kill me.  Of course that doesn't mean

6   that that is actually going to take place.  It's an

7   exaggeration number 1.

8           Number 2, I will highlight that the text that

9   was admitted into evidence, it was conditional.  If

10  then, if I find out something about Sal, then this will

11  happen, number 2.

12          Number 3, as you heard from Ms. Ahrens, as your

13  Honor saw, it was followed up hours after saying, I

14  wasn't serious about that.

15          THE COURT: 8:45 p.m. on June 7th was her text

16  to him.

17          MS. HOWARD:  Was the original text, correct.

18          THE COURT: Which, if you are involved with Sal,

19  et cetera, that was 8:45 p.m. on Wednesday, June 7th.

20  Ms. Ahrens text was 12:17 a.m. on June 8th.

21          MS. HOWARD:  Correct.  So mere hours after you

22  have Ms. Ahrens on her own clarifying, by the way, I

23  wasn't serious about that.  She knows the character of

24  who she's dealing with which is why she felt the need to

1  send that to clarify.  There's a difference, a huge

2  difference, between sending this clarifying text mere

3  hours versus Mr. Cerasani waiting months to even report

4  about this text message.

5          There was nothing testified to by him that he

6  took this threat seriously to his actions.  Immediately

7  after he read the text message, did he and his family go

8  into hiding?  Did he run and tell the police right then

9  and there?  Did he call 911?  Did he book a hotel?  Did

10  he ever see Ms. Ahrens pop up at his house?

11          Nothing like that was testified to.  It was a

12  mere, I was scared statement.  That in and of itself

13  should let the Court know at no point in time did he

14  ever believe this was an actual credible threat at all

15  times during their correspondence because there is a

16  severe difference between their definitions of them

17  dating.

18          She lived in Iowa.  He lived in Illinois.  I

19  think the court size difference of the two, did she say

20  how she was going to carry out this alleged threat?  I

21  am going to send people to your house.  I am going to

22  come to your house, find you and hurt you.  Nothing like

23  that was even said.  There was absolutely no evidence

24  that she had any intentions of carrying it out.

1    Furthermore, complaining witness's credibility.

2    Where are the text messages that he replied I am in

3    fear.  You just scared me when you said that.  Nothing

4    of the sort.  Just that he got it, and I will highlight.

5    He testified that he continued to send her text

6    messages after June 7th.  Again, letting this Court know

7    he didn't believe that when she texted it to him.  What

8    person would believe somebody was legitimately

9    threatening them but then continue to talk with them?

10   Why didn't he block her number?

11   She was till able to communicate with him after

12   that.  So, again, that lets me know that he did not

13   believe that this was a threat.

14   Was there any testimony that she had any

15   knowledge of where he lived, where he worked, where he

16   was traveling or anything of the sort or his families

17   whereabouts?  None at all.  This case is all about him

18   getting back at her.

19   And as the State has asked for this Court to

20   take judicial notice of feelings of a difference case, I

21   ask the Court to take judicial notice of the numerous

22   filings that Mr. Cerasani has made against my client.

23   This is not out of fear.  He's not concerned for his

24   safety or his life or his family.  He's concerned about

1    his ego.  That was the big ego.  He focussed on his

2    Instagram page.  His reputation is being tarnished that

3    he wants to use the Court and judicial system as a sword

4    to silence her.

5           He did not seek help when he got this text

6    message.  He did not report receiving this text message.

7    He's throwing everything at the wall to see what sticks

8    when it comes to this case.

9           Judge, again, Ms. Ahrens mere hours later on

10   her own doing said that was not a serious thing that I

11   said.  It was a conditional statement because she was

12   concerned for him possibly having an affair with

13   somebody that he shouldn't have been.  If I find out

14   about it, then this will happen.  It's a conditional

15   threat.  It's more so, Judge, a figure of speech.  It

16   wasn't credible in any way, shape or form.

17          Mr. Cerasani is not scared of Ms. Ahrens.  He's

18   not in fear. He was never in fear.  He's on the attack.

19          Based on that, I ask that you find her not

20   guilty.

21          THE COURT: Thank you for your argument.

22          MS. KENNEDY: I just wanted to clarify that the

23   June 7th message, the 8:45 time refers to the message

24   subsequent to that.

1          THE COURT: Where it says, I am way pissed?

2          MS. KENNEDY: Yes.

3          Mr. Cerasani testified that the I am going to

4    murder you message was earlier than that.  So according

5    to his sworn complaint at 6:45 p.m., that being said,

6    Judge --

7          THE COURT: Just so that we are clear, I do see

8    Wednesday, June 7th, 8:45 p.m. That appears to be the

9    heading of the following text which begins, I am way

10   pissed, comma, actually.

11         The complaint indicates that 645 hours he

12   received the, I will murder you text.  The State is

13   relying on that time, six hours later.

14         MS. KENNEDY:  Judge, I am just curious to know

15   how long does a murder threat have to be in place before

16   the recipient could be concerned or feel threatened?

17         Counsel is suggesting because the defendant six

18   hours later said I was kidding, that he's not entitled

19   to be concerned or afraid of that message.  Judge, you

20   have Mr. Cerasani who testified that the defendant was

21   contacting him repeatedly and continuously.  She started

22   communicating with him or texting him with this e-mail

23   address rather than the phone numbers.

24         Clearly, he does not want anything to do with

**40**

1    this defendant which she testified to herself.  So as

2    far as motive is concerned, Judge, the defendant

3    testified he would never date her.  She would never be

4    his girlfriend, and he never took her on a date.  So

5    clearly, Judge, you don't communicate with someone

6    repeatedly and without their consent or desire unless

7    you're the one who has a problem.

8         Judge, she also testified that she sent this

9    murder message because she believed the complaining

10   witness had lied about being with Sal's wife.  Judge, if

11   she wasn't concerned or didn't want a relationship with

12   him, why would she care if he was having an affair with

13   Sal's wife?

14        Clearly, we have a jealous defendant who wants

15   a relationship with this complaining witness.  He told

16   her it was over.  Nevertheless, she persisted contacting

17   him.

18        Counsel asked him about this Instagram account

19   that she put up against him.  Judge, it's perfectly

20   reasonable for Mr. Cerasani to take this threat and be

21   concerned and in fear when defendant has been doing this

22   sort of behavior and sort of obsessive behavior.

23        MS. HOWARD:  Objection.

24        THE COURT: This is argument.  The Court has

**41**

1   heard the evidence.  Overruled.

2        MS. KENNEDY:  So, Judge, again, she's saying

3   that she rectified the situation by saying I was just

4   kidding.  For at least six hours Mr. Cerasani was not

5   aware that she was just kidding.  So it's perfectly

6   reasonable for him to be concerned that someone is

7   sending a text message, I am going to murder you, that

8   is, per se, a threat.

9        It is prohibited by the statute.  She admits

10  that she sent it.  There is no doubt here, Judge, that

11  she is guilty of harassment by electronic communication.

12       THE COURT: Thank you for your arguments and

13  presentation. I will take the matter under advisement

14  for ruling one week from today, January 30th.  You may

15  zoom in at 10:30.

16            (WHICH WERE ALL THE PROCEEDINGS HAD)

17                      * * * * *

18

19

20

21

22

23

24

**42**

```
STATE OF ILLINOIS    )
                     ) SS:
COUNTY OF C O O K    )
```

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT-THIRD MUNICIPAL DISTRICT

I, JENNIFER ZANICHELLI, an Official Court Reporter in the Circuit Court of Cook County, County Department, Third Municipal District, do hereby certify that I reported in shorthand the proceedings had at the hearing of the aforementioned cause; that I thereafter caused the foregoing to be transcribed, which I hereby certify to be a true and accurate transcript taken to the best of my ability of the proceedings had before the Honorable Joel Greenblatt, Judge of said Court.

_____
    Official Court Reporter
    CSR# 084-003729

**43**